# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY A. RAIMEY, as Administrator of the Estate of Matthew Burroughs, | ) ) ) | CASE NO: 4:20-cv-00005-SL |
| | ) | JUDGE SARA LIOI |
| Plaintiff, | ) ) | **DEFENDANTS' REPLY BRIEF IN SUPPORT OF SUMMARY JUDGMENT** |
| v. | ) | |
| THE CITY OF NILES, et al., | ) | |
| Defendants. | ) | |

Now come the defendants, City of Niles, Christopher Mannella, James Reppy, Paul Hogan, and Jay Holland, and for their reply brief in support of summary judgment state as follows.

## I. DEFENDANTS HOGAN, REPPY, HOLLAND AND CITY OF NILES ARE ENTITLED TO SUMMARY JUDGMENT

First and foremost, the plaintiff has acknowledged that the plaintiff does not oppose the motion for summary judgment on behalf of Paul Hogan, James Reppy, Jay Holland, and the City of Niles. As there has been no contradictory or competing evidence presented against these defendants and the plaintiff has no opposition to summary judgment in their favor, these defendants request that the Court enter judgment in their favor against the plaintiff as to all of the allegations set forth in the complaint. Consequently, the only issues which remain are those claims against Officer Christopher Mannella. As is argued in the initial motion for summary judgment and supported by the evidentiary record and the law of the Sixth Circuit, the Court should grant summary judgment in defendant Mannella's favor as to all of the allegations set forth in the plaintiff's complaint.

## II. SUMMARY JUDGMENT REVIEW STANDARD

In a summary judgment analysis, the Court must first consider whether there are any issues of fact. If the only issues are issues of law, then summary judgment is appropriate. *Disesa v. St. Louis Community College*, 79 F. 3d 92, 94 (8th Circ. 1996). If issues of fact are raised, a court must consider whether these

issues are material to the outcome of the case. Materiality is identified by the substantive law that is to be applied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 at 248 (1986). Factual disputes that are collateral to the substantive law will not preclude summary judgment. *Id.*

There is a requirement that the dispute of fact be material, and the dispute must also be genuine. A disputed fact is considered genuine if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. *Id.* at 249. If the evidence submitted by the non-moving party is merely colorable or is not significantly probative, then summary judgment may be granted. *Id.* at 249-250.

In this case, plaintiff offers evidence only in the form of an expert report re-creating the incident and drawing certain assumptions and/or conclusions as a result of the re-creation. Plaintiff's expert takes issue with Officer Mannella's speed estimate, Mannella's perception that the vehicle was coming toward him, and his perception that Mr. Burroughs presented a threat due to his noncompliance. The evidence relied upon by the plaintiff is merely colorable or collateral but not material, in the sense that it is evidence created after the incident by a paid expert, as opposed to actual real time evidence in the form of sworn testimony from persons present or real time body camera footage of the encounter. To suggest that a plaintiff's animation and the conclusions drawn from it should be considered equivalent factual evidence to that presented by the defendant in the form of sworn testimony is simply not supported in the law pertaining to Federal Rule of Civil Procedure 56. As plaintiff has not one scintilla of actual factual evidence occurring on the date of the incident referenced in the complaint to directly contradict the testimony of Officers Mannella, Hogan and Reppy, or the clear threat presented to Officer Mannella viewed on Officer Reppy's body camera footage, then plaintiff should not proceed to trial but must have his claims disposed of on summary judgment in favor of defendant Mannella.

### III. CORRECTING THE FACTUAL RECORD

While the standard of review calls for the Court to review the facts in a light most favorable to the plaintiff when considering summary judgment, the law does not require the Court to accept blatant fabrications by the plaintiff that are entirely unsupported by the actual admissible evidence in the case. Plaintiff's entire argument opposing summary judgment is premised upon three factual assertions that are either completely unsupported by any evidence whatsoever or the subject of evidence created by the

2

plaintiff's animator expert. The defendant relies upon actual admissible evidence in the form of sworn testimony from witnesses who were at the scene, along with real-time body camera footage of the incident. Plaintiff, conversely, is relying upon a cartoon created by his paid expert animator using selectively manipulated evidence from the case.

Plaintiff's opposition to summary judgment is based upon these three alleged facts: (1) Burroughs' car was traveling one to three miles per hour and coming to a stop; (2) Mannella was not in the vehicle's path; and (3) Burroughs was complying with commands to stop. First of all, these three facts in and of themselves (even if they were true) do not negate a qualified immunity assertion by the officer at the scene. As it happens, however, these three claims by the plaintiff are entirely untrue and unsubstantiated by the actual admissible factual record.

A.   Burroughs car was traveling one to three miles per hour and coming to a stop.

Throughout the plaintiff's opposition brief, the plaintiff continuously makes reference to the fact that Matthew Burroughs was "creeping to a stop", "coming to a stop", "trying to stop", when Officer Mannella fired his weapon. Plaintiff's assertions are based solely upon speculation and the re-creation that was produced by an animator in California, Mr. Fries. Aside from the fact that Mr. Fries' report is a fiction, created by a paid expert using manipulation techniques equivalent to a digital cartoon, the actual evidence in the form of sworn affidavits from the officers present, their deposition testimony, and the body camera footage from Officer Reppy establish that the vehicle was traveling toward Officer Mannella at the time Mannella fired his weapon. Moreover, it is Officer Mannella's perception at the time, in real time, that is at the heart of the Court's consideration of whether his conduct was objectively reasonable within the context of the Niles Police Department deadly force policy.

Officer Mannella's perception was, obviously, that Matthew Burroughs intended to strike him with the vehicle and that such conduct would have injured Officer Mannella. (Mannella deposition, p. 126, lines 3 through 25). Mannella observed the front wheels of Burroughs' vehicle turning directly toward him. (Id.) Likewise, Officer Hogan had a front row seat to the encounter, as he was seated in his cruiser directly adjacent to Burroughs' vehicle. Officer Hogan observed the Burroughs' vehicle turn directly toward Officer Mannella. (Hogan deposition, p. 38). Officer Hogan observed Burroughs' vehicle continue toward Mannella and at that point he observed Mannella draw his weapon and fire. (Hogan deposition, p. 38, lines

3

2-18). There is no doubt in Officer Hogan's mind at that point that he thought Officer Mannella was going to get hit and hurt badly. (Hogan deposition, pp. 38, 39, and 52). Likewise, Officer Reppy, approaching from a entirely different angle and whose body camera footage recorded the event, perceived that Officer Mannella was about to be hit by Mr. Burroughs, thus causing Officer Reppy to draw and fire his weapon to stop the threat to Officer Mannella. Reppy observed Burroughs' vehicle turn toward Officer Mannella and appear to proceed forward. (Reppy deposition, p. 16, lines 14-25).

Much is made in the plaintiff's brief opposing summary judgment about whether Officer Mannella's perception of the speed of Burroughs' vehicle was accurate. Officer Mannella testified that, from his point of view, he thought the vehicle may have been traveling 20 to 25 miles per hour. Officer Hogan had a different perception, that the vehicle was moving slower. Officers Hogan, Mannella and Reppy all had the perception that Burroughs was moving, in real time, so quickly that Officer Mannella's life was in jeopardy and steps needed to be taken, including the use of deadly force, to stop the threat to Officer Mannella. The law does not require a police officer to instantaneously but accurately assess the speed of an oncoming vehicle.

Whether Officer Mannella's estimate of speed was accurate, or not, is irrelevant to the issue of whether his actions were objectively reasonable. If the officer perceived a threat, under the totality of the circumstances, then his actions were objectively reasonable if otherwise supported. In this case, we have three police officers from three different views all instantaneously perceiving that Matthew Burroughs' moving vehicle presented an imminent threat of bodily injury to Christopher Mannella. Consequently, the plaintiff's continued reference to the one to three miles per hour and coming to a stop evidence is not dispositive, nor is it relevant. Plaintiff has no eyewitness, sworn testimony contradicting the evidence supporting the officers' perception of imminent danger. Likewise, the means utilized by the plaintiff's expert to come up with the one to three mile per hour speed is scientifically unreliable, as his methodology is not outlined appropriately in his report. Plaintiff's expert was not present that day, nor is any witness who is relied upon by the plaintiff for his evidence that the vehicle was going one to three miles per hour. Plaintiff only has evidence fabricated by his expert, following a re-creation of the incident.

Plaintiff also claims that Matthew Burroughs was "coming to a stop". There is no way of knowing what was going through Matthew Burroughs' mind at the time he was attempting to evade police, following his assault on probation officer Zickefoose. The officers are not required to read his mind, as they are simply

4

responding to his repeated refusal to obey commands. Again, plaintiff's paid expert tries to put himself in Matthew Burroughs' mind and speculate as to what Matthew Burroughs' intentions were. Plaintiff claims he must have been coming to a stop because his vehicle stopped moving forward after he was shot by Officer Mannella. Of course, no one will ever know what was going through Matthew Burroughs' mind, as the officers can only respond to his conduct. In this instance, the officers were responding to conduct that placed Officer Mannella's life in jeopardy. Frankly, Matthew Burroughs' intent is entirely irrelevant, as the officers are lawfully entitled to respond to his conduct, regardless of his intent.

  B. Plaintiff also argues that Mannella was not in the vehicle's path.

There is direct evidence in the form of Christopher Mannella's deposition testimony, the deposition of Officer Hogan, and the deposition of Officer Reppy indicating that the Burroughs' vehicle turned directly into the path of Christopher Mannella. (Hogan deposition, pp. 38, 39, 52; Mannella deposition, pp. 126, 127; Reppy deposition, pp. 41, 16).

The evidence suggesting that Officer Mannella was not directly in the path of Burroughs' vehicle and thus not in imminent danger is opposed by plaintiff's unverified reference to a statement by witness Michael Cappy, who described Officer Mannella as being to the side of Burroughs' vehicle. Plaintiff's expert's opinion is based, in part, on Mr. Cappy's unsworn statement contained within the BCI report.

First of all, Mr. Cappy's statement is buried in the BCI report which is attached as an exhibit to the plaintiff's brief opposing summary judgment. Although the BCI report does contain forensic mapping, scene measurements and ballistic analysis supporting the conclusion that Officer Mannella's use of force was appropriate, the report should not serve as a Trojan horse for every witness statement or other factual reference contained therein as being admitted testimony for the truth of the matter asserted. If the plaintiff wanted a witness statement from Michael Cappy, he should have deposed him and brought him under oath for cross-examination. There is no way of testing what Mr. Cappy meant by the statement referenced by the plaintiff, nor is there any way of knowing where Mr. Cappy was at the time he allegedly made his observation. Again, plaintiff has no actual evidence but merely anecdotal and inadmissible hearsay evidence.

Additionally, the plaintiff repeatedly makes reference to unrefuted forensic evidence, in the form of the cartoon created by the expert animator hired by the plaintiff. Again, the characterization of the forensic evidence as unrefuted is improper. The forensic evidence is a fiction created by an expert hired by the

5

plaintiff purposely manipulating selective elements of evidence. It is refuted in every way that it could be refuted, including actual admissible evidence in the form of deposition testimony of Officers Mannella, Hogan and Reppy, along with Officer Reppy's body worn camera footage. The defendant's evidence is actual evidence of what the officers saw, heard and did in real time, as opposed to the fantastical re-creation promoted by the plaintiff and his expert.

    C.    Burroughs was complying with commands to stop.

As argued earlier, plaintiff's evidence that Matthew Burroughs was coming to a stop is rank speculation emanating from the fiction created in plaintiff's forensic animation/re-creation. The plaintiff asserts, in reliance upon his expert, that Mr. Burroughs was "either nearly stationary and coming to a complete stop or entirely stationary" at the time Officer Mannella fired. (See page 8 of the plaintiff's brief opposing summary judgment). Plaintiff has obviously no idea what was going through Matthew Burroughs' mind and admits as much by offering alternative reasons for why Burroughs failed to comply with Officer Mannella's repeated commands to stop. The idea that Burroughs was somehow attempting to comply with the officers' commands or not otherwise actively resisting because his vehicle did not strike the vehicles of the other officers is, again, total speculation. Officer Hogan and Officer Reppy have testified regarding the fast and chaotic movements of the Burroughs' vehicle within the parking lot, once Hogan and Reppy attempted to box the vehicle in. It is clear from the testimony of the officers who were present that Burroughs continued to resist attempts to subdue him or otherwise limit his movement, as his vehicle continued to move even toward the pedestrian Mannella up until the time Burroughs was fired upon.

**IV.    THE PLAINTIFF CANNOT RELY UPON HEARSAY STATEMENTS RECORDED IN THE ATTORNEY GENERAL'S BUREAU OF CRIMINAL INVESTIGATION - PROSECUTION SUMMARY.**

In his Memorandum in Opposition to the Defendants' Motion for Summary Judgment, the plaintiff attaches the Attorney General's Bureau of Criminal Investigation ("BCI") - Prosecution Summary as an exhibit. The plaintiff cites to the BCI report to in reference to the eyewitness statements of Michael Cappy. First, the plaintiff relies upon statements by Mr. Cappy found within the BCI report for the proposition that Burroughs' car was in the "stop position" at the time he was shot. (Plaintiff's Memorandum in Opposition to the Defendants' Motion for Summary Judgment p. 6). Second, the plaintiff relies upon statements made by Mr. Cappy in the BCI report in support of the allegation that Officer Mannella was standing to the side of Burroughs' vehicle when he fired his weapon. (Pl.'s Memo. Opp. p. 8).

The Court should disregard any witness statements that the plaintiff cites from the BCI report. "'It is well established that a court may not consider hearsay when deciding a summary judgment motion." *Beans v. City of Massillon,* 2016 U.S. Dist. LEXIS 180335 *1, 16 (N.D. Ohio Dec. 30, 2016), *quoting Tranter v. Orick,* 460 F. App'x 513, 514 (6th Cir. 2012). In order for a police report to be admissible as evidence, "entries from a police report must generally result from the recorder's personal knowledge or observations." *Johnson v. City of Youngstown,* 2014 U.S. Dist. LEXIS 21284 *1, 26 (N.D. Ohio Feb. 20, 2014), *citing Broomes v. Schmidt*, 1996 U.S. Dist. LEXIS 18522 (E.D. Pa. December 13, 1996). The courts have regularly found that witness statements contained within police reports do not qualify as an exception to hearsay under the public records hearsay exception. *See Beans,* 2016 U.S. Dist. LEXIS 180335 at *20, *citing Tranter,* 460 F. App'x at 515. The Northern District of Ohio in *Beans v. City of Massillon* cited to the First Circuit which found that "'[i]n line with the advisory committee note to Rule 803(8), decisions in this and other circuits squarely hold that hearsay statements by third persons . . . are not admissible under this exception merely because they appear within public records.'" 2016 U.S. Dist. LEXIS 180335 at *20, *citing United States v. Mackey,* 117 F.3d 24, 28 (1st Cir. 1997). "Second-layer hearsay contained within police reports can be admitted, however, if it falls under a separate hearsay exception or if it is not hearsay at all." *City of Youngstown,* 2014 U.S. Dist. LEXIS 21284 at *26*, citing United States v. Warren,* 42 F.3d 647, 657 n.7 (D.C. Cir. 1994).

The statements by Mr. Cappy cited in the plaintiff's memorandum are hearsay that do not fall within any exception. The statements by Mr. Cappy are being used by the plaintiff to prove the truth of the matter asserted, and the plaintiff has not alleged any hearsay exception that would apply to make the statements admissible. The plaintiff is not permitted to use a police investigation report as a means to get testimony in which would otherwise be inadmissible. If the plaintiff wanted to rely upon the statements from Mr. Cappy, then he should have deposed Mr. Cappy. All of the other witnesses in the BCI report were deposed. The hearsay impact is compounded by the fact that plaintiff's expert's opinion regarding the ultimate issue of whether Burroughs' vehicle imminently threatened Officer Mannella also relies upon Mr. Cappy's BCI statement. The plaintiff cannot introduce the BCI report solely to get into evidence the testimony of Mr. Cappy. The Court should disregard the statements by Mr. Cappy in the plaintiff's memorandum because they are inadmissible hearsay.

### V. THE CONCLUSIONS OF THE PLAINTIFF'S EXPERT REPORT (THE "FRIES REPORT") SHOULD BE DISREGARDED BECAUSE THE REPORT IS BASED UPON PRESUMPTIONS AND NOT ACTUAL FACTS.

The plaintiff attached the expert report of Jason Fries to his Memorandum in Opposition. The Fries Report uses, among other methods, 3D imaging to draw conclusions regarding the location of Officer Mannella, Officer Reppy, Burroughs' vehicle, and the location of the other police vehicles; a staged recreation to determine the speed of Burroughs' car at the time of the shooting, and assumptions regarding Officer Mannella's reaction time.

Notably absent from the Fries Report is any detailed explanation of the process or methodology used to create the 3D animation, the vehicle speed recreation, or the calculation of Officer Mannella's reaction time. "Under Rule 702 and *Daubert*, district courts are compelled to act as 'gatekeepers' to ensure the reliability and relevancy of expert testimony." *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2021 U.S. Dist. LEXIS 36950 *1, 6 (N.D. Fla. Feb. 28, 2021), *citing Rink v. Cheminova, Inc.,* 400 F.3d 1286, 1291 (11th Cir. 2005*).* "To meet the reliability requirement, an expert's opinion must be based on scientifically valid principles, reasoning, and methodology that are properly applied to the facts at issue." *Id.* at *8, *citing United States v. Frazier,* 387 F.3d 1244, 1261-1262 (11th Cir. 2004). "'Expert reports must include "how" and "why" the expert reached a particular result, not merely the expert's conclusory opinions.'" *Baker v. Chevron USA, Inc.,* 680 F.Supp.2d 865, 878 (S.D. Ohio 2010), *quoting Salgado v. General Motors Corp.,* 150 F.3d 735, 741 n.6 (7th Cir. 1998). A party "must still demonstrate that the reasoning or methodology on which their experts base their opinions is scientifically valid and properly applied to the facts in issue." *In re Heparin Prods. Liab. Litig.,* 803 F.Supp.2d 712, 727 (N.D. Ohio 2011), *citing Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 144-45 (1997). Furthermore, Evidence Rule 702 provides that an expert's testimony must be the product of reliable principles and methods. Fed. R. Evid. 702(c).

Here, the Fries Report does not provide any information regarding the scientific methodology that was used in creating the 3D animation. There is a very brief description of a laser scanning process which was conducted of the Royal Mall Apartment Complex. (Fries Report p. 4). However, there is no detailed explanation regarding how the 3D animation was created. There is no detailed explanation regarding how the expert reverse engineered the locations of the officers and Burroughs' car. (Fries Report p. 6).

Essentially, the plaintiff's expert has generated a computer animation without establishing any scientific or technical basis for how the animation was generated and how the results were obtained, and he expects the Court to accept the results without questioning the methods that were used. The plaintiff cannot present a report without any explanation whatsoever regarding how the results were obtained, and then state that the Court must rely upon the facts generated by the report. The Court should disregard any facts from the Fries Report which were derived from the 3D animation model because the Fries Report fails to provide any explanation of the methodology underlying those findings.

Similarly, the Court should disregard the findings in the Report's vehicle speed/motion analysis and the findings in the perception and reaction of Officer Mannella analysis. Again, the Fries Report fails to provide any detailed description of the methodology underlying the Report's results. The vehicle speed/motion analysis does contain a brief description of how the test was conducted, but the Fries Report does not explain whether this test is based on scientifically valid principles and methods. Any untrained individual could attempt to recreate the events leading up to the shooting, so long as they have access to the proper vehicles. However, that does not mean that such a recreation is valid and reliable for purposes of an expert report. The Fries Report must describe its methodology for its testing and provide a description that the methodology is based upon scientifically valid principles in order to satisfy the requirements of Evidence Rule 702. Similarly, the perception and reaction of Officer Mannella analysis provides no data or methodology in support of its conclusion. The analysis states that a calculation of Officer Mannella's reaction time would have to consider what other studies have shown is possible by a police officer in a similar situation. (Fries Report p. 12). However, the Report cites to only one study for the brief proposition that focus and aiming a weapon requires a longer perception and reaction time than just firing a weapon. (Fries Report p 12). That is the extent of the other studies relied upon by the Fries Report in determining a low-range reaction time for Officer Mannella. Again, the Fries Report fails to provide any methodology or scientific support in reaching its conclusion. Therefore, the Court should also disregard any conclusions from the Fries Report derived from the vehicle speed/motion analysis and the Officer Mannella perception and reaction analysis.

It is clear from the Fries report that plaintiff's expert designed a computer model in the sanitized, non-stressful confines of a lab or office, not accounting for the circumstances or the environment under which Officer Mannella was operating at the time. The circumstances giving rise to the computer model

9

which serves as the sole basis for the plaintiff's proposed facts can never replace or even rise to the same level as the real time experience of Officer Mannella. Likewise, a computer model cannot accurately replicate the specific reckless and dangerous driving movements of Mr. Burroughs, the accuracy of the speed of his vehicle as it was driven toward Officer Mannella, and cannot account for Burroughs' intent or mindset of alluding, fleeing and driving his vehicle toward Officer Mannella. The Court must accept that the computer model was designed over several hours or days to make assumptions about the officer's decision to shoot and fails to account for the split second, moment-by-moment decision that Officer Mannella had to make to shoot in order to preserve his life. The stress, the rapidly evolving dynamic circumstances, and the urgency are entirely drained away from the encounter by virtue of the fictional digital environment created by the plaintiff's expert. The vast difference between artificially manipulated evidence, freeze frames, screenshots and slowed-down video relied upon by plaintiff's is not favored in the U.S. District Courts within the Sixth Circuit. As the Court noted in *Cunningham v. Shelby County*, 994 F. 3d 761 (6th Circ. 2021), "The deputies' perspective did not include leisurely stop action viewing of the real time situation that they encountered. To rest a finding of reasonableness on a luxury that they did not enjoy is unsupported by any clearly established law and would constitute reversible error." *Cunningham*, 996 F. 3d 761 at ¶¶10-12.

Furthermore, the Fries Report relies upon presumption or speculation in order to reach many of its conclusion. "Expert testimony may not be based on mere speculation." *Rayco Mfg. v. Deutz Corp.,* 2011 U.S. Dist. LEXIS 58231 *1, 11 (N.D. Ohio May 31, 2011), *citing McLean v. 988011 Ontario, Ltd.,* 224 F.3d 797, 800-01 (6th Cir.2000). "Moreover, any assumptions made must be supported by evidence in the record." *Id., citing Sigler v. Am. Honda Motor Co.,* 532 F.3d 469, 481-482 (6th Cir.2008).

The Fries Report relies upon assumptions that are not supported by evidence in the record. For example, the Report concludes that the tight shooting pattern on the windshield of Burroughs' car suggest that the vehicle was moving very slowly. (Fries Report p. 7). However, the Report provides no evidence in the form of scientific studies or test results to support that assertion. Rather, the Report merely speculates that the car must have been moving slowly in order to achieve a similar shooting pattern. This is simply a conclusory assertion without any scientific support or support in the evidence. Similarly, the Report states that the only reason that Burroughs would need to apply the brakes on his car was if he saw Officer Mannelle near his vehicle and did not want to hit Officer Mannella. (Fries Report p. 13). There is no evidence in the

record to support this conclusion. This is not a scientific conclusion. Rather, the Fries Report merely offers speculation as to what Burroughs may have been thinking at the time of the shooting. This is an assumption that is not supported by evidence in the record. Therefore, the Court should disregard the portions of the Fries Report which rely upon speculation or assumptions.

## VI. THE FACTS SHOULD BE LIMITED TO THOSE OBJECTIVE FACTS FOUND IN THE RECORD.

The plaintiff asserts that under his facts "Burroughs' vehicle was moving very slowly and/or was stationary, and Mannella was not in the path of the car at the time he fired. (Pl's. Memo. Opp. p. 9). However, as is mentioned *supra,* the plaintiff's "facts" should be disregarded because they are not premised upon proper scientific principles and methods. The Court is not required to accept the plaintiff's facts merely because they are the non-moving party for purposes of summary judgment. "When videotape footage exists, the reviewing court need not credit the version of a party who asserts facts 'blatantly contradicted' by the videotape; rather it should view the facts in the light depicted by the videotape." *Cunningham v. Shelby Cty.,* 994 F.3d 761, 763 (6th Cir. 2021), *citing Scott v. Harris,* 550 U.S. 372, 380-81 (2007). Since "the events in this case are recorded on video, the facts are viewed in the video's light, not in a light favorable to plaintiff." *Id.* at 765. Notably, "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor,* 490 U.S. 386, 396 (1989).

Here, the plaintiff's expert report attempts to offer a version of the encounter which is not supported by scientific principles, lacks any type of defined and widely accepted methodology, and contradicts the objective evidence from the video and from the testimony of the officers on the scene. The Fries Report attempts to breakdown and hyper-analyze every aspect of the body worn camera video of Officer Reppy. However, this type of 20/20 hindsight analysis is exactly what the Supreme Court warned against in *Graham.* The video shows Burroughs' vehicle pointed in the direction of Officer Mannella and only a short distance away from Officer Mannella. Viewing the facts in light of the video and without 20/20 hindsight, Officer Mannella's actions were reasonable as judged from the perspective of a reasonable officer at the scene.

## VII. CONCLUSION

The record in this case is comprised of a significant amount of relevant, admissible evidence, in the form of sworn deposition testimony of the officers involved, supplemental affidavits from officers responding to the scene, and body worn camera footage from Officer Reppy depicting the actual period when shots were fired at the vehicle operated by Matthew Burroughs. This evidence is extremely important, as it serves as the real time record of the environment in which the officers operated and in which they were required to make split second, dynamic evaluations.

Christopher Mannella was faced with an imminent threat of bodily harm by virtue of Matthew Burroughs' continued refusal to obey his commands with respect to the operation of his vehicle. At the time Mannella fired upon Burroughs, Mannella was aware that Burroughs had already injured a fellow officer in the course of fleeing an attempted apprehension at the Municipal Building, he had fled and repeatedly resisted attempts to apprehend him by fellow Niles police officers, and he was proceeding with his vehicle pointed toward Officer Mannella without stopping or otherwise obeying his commands. As concluded by the internal investigation of the Niles Police Department, the Ohio Bureau of Criminal Investigations, and the County Prosecutor, Officer Mannella's actions fully complied with the departmental policies and procedures and did not otherwise impede any clearly established constitutional right of Matthew Burroughs. The defendants have endeavored to provide the Court with all of the evidence necessary to grant summary judgment on the basis of qualified immunity regarding all of the claims set forth in the complaint. As plaintiff has offered no opposition to the motion for summary judgment requested by defendants Hogan, Reppy, Holland, and the City of Niles, those defendants are entitled to summary judgment as a matter of law. With respect to Christopher Mannella, the only remaining defendant against whom the plaintiff has opposed summary judgment, defendant Mannella requests that this Court grant summary judgment as to all of the claims set forth in the complaint, in his favor.

Respectfully submitted,

*s/Mel L. Lute, Jr.*
Gregory A. Beck (0018260)
Mel L. Lute, Jr. (0046752)
Andrea K. Ziarko (0073755)
BAKER, DUBLIKAR, BECK,
WILEY & MATHEWS
400 S. Main Street

North Canton, Ohio 44720
e-mail: beck@bakerfirm.com
lute@bakerfirm.com
Telephone: (330) 499-6000
Telecopier: (330) 499-6423
Counsel for Defendants

## PROOF OF SERVICE

I hereby certify that on the 3rd day of September, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/Mel L. Lute, Jr.*
Mel L. Lute, Jr. (0046752)
BAKER, DUBLIKAR, BECK,
WILEY & MATHEWS