Opinions Report of Darrell L. Ross, Ph.D.
Estate of Matthew Burroughs v. City of Niles, et al., No. 4:20-cv-00005-SL

May 1, 2021

I, Darrell L. Ross, Ph.D., declare that if called upon as a witness, I would competently testify to the facts set forth herein. I declare the following:

1. That I received my Ph.D. in 1992 from Michigan State University. Since August 2010, I have been employed as a Professor, the Department Head of Sociology, Anthropology, and Criminal Justice, and the Director of the Center of Applied Social Sciences at Valdosta State University, Valdosta, GA. That from 2006 to 2010, I served as a Professor and the Director of The School of Law Enforcement and Justice Administration at Western Illinois University, Macomb, IL. I was a Professor and former Chair of the Department of Criminal Justice at East Carolina University, Greenville, NC from 1992 to 2006. Attached hereto is a current copy of my CV, a list of cases in which I have rendered an opinion within the last four years, and my fee schedule.

2. From 1985 to 1992 I served as the Technical Assistance Coordinator for the Criminal Justice Institute at Ferris State University, Big Rapids, MI. My duties included: research and training for police, corrections, security, and military personnel, locally and nationally and I also instructed academic courses. I was a certified instructor by the Michigan Commission on Law Enforcement Standards (MCOLES) and instructed the state training curriculum in the police academy at Ferris, including the mechanics of arrest, search, and subject control and restraint techniques, instructed the subject control continuum, responding to persons in crisis and responding to persons with mental disorders, physical fitness, and health and wellness.

3. From 1973 to 1985 I worked for the Michigan Department of Corrections and I was the Unit Manager/cell block manager of a psychiatric/protective custody cell block housing 500 mentally ill prisoners at the State Prison of Southern Michigan, Jackson, MI. I was a correction officer and a probation officer. Further, working for the training division as a certified instructor I provided instruction at all levels of departmental positions and jail officers throughout the state, teaching a variety of courses including, defensive tactics and subject control techniques, the use of restraints, and crisis intervention, and policy and procedures

4. I have published five books, and over 100 manuscripts, including articles, and nine book chapters/monographs. I have authored and have made hundreds of national and international conference and training presentations with a majority use of force related. I have developed and have provided numerous line level and administrative training programs for police, correctional officers, military, and security personnel throughout the United States and internationally. I have been researching, publishing, speaking at numerous conferences and training seminars to police

1

**EXHIBIT 1**

Opinions Report of Darrell L. Ross, Ph.D.
Estate of Matthew Burroughs v. City of Niles, et al., No. 4:20-cv-00005-SL

officers and administrators, instructors, death investigators, attorneys, and medical and mental health professionals on various issues of the use of force, officer involved shootings, use of force and human factors, developing policies and procedures on the use of force, use of force training issues, and developing use of force systems. I have analyzed thousands of published Section 1983 United States Supreme Court and lower court decisions on the use of deadly and non-deadly force in law enforcement, published articles on the liability trends and implications of these decisions, and routinely provide training to police officers and administrators on these decisions. I have been certified as a TASER instructor by Axon International (formerly TASER Intl.). I am also a certified law enforcement instructor by the GA POST. I am a member of seven professional associations.

5.    I have expertise from training, education, and experience, and possess specialized technical and scientific knowledge of: police use of force standards, policies, procedures, and practices, and responses to subject resistance, subject control techniques, use of force equipment and force options, and officer use of force training. I continue to attend training sessions on varying aspects of the use of force and human factors. Regularly I provide training and consulting services to police and correctional agencies and review and edit use of force policies and procedures. I am a board member of the Integrated Use of Force Options Training Organization (IL). Since 1987 I have served on the Pressure Point Control Tactics Management, Inc. Advisory Board (PPCT). As board member I have assisted in researching and developing the teaching curriculum and instructing these subject control and restraint techniques to thousands of police and correction officers, federal officers, private security personnel, all branches of the military, and instructors nationally and internationally. I have also been a member of the UGA Chancellor's Campus Police Executive Committee.

6.    I have served as a consultant and or trainer for the: National Institute of Justice, Michigan Commission on Law Enforcement Standards, Board of Regents University System of GA Campus Police Chiefs, GA Chief's Association, MS Chiefs' Association, Topeka, KS PD, Battle Creek, MI PD, MI Sheriff's Association, Illinois Law Enforcement Training and Standards Board, IL State Police, North Carolina Justice Academy, Federal Law Enforcement Training Center, Integrated Force Options (IFO), Alaska Peace Officers Training Commission, Pennsylvania Law Enforcement Training and Education Commission, State of Florida Police Training Commission, Florida Department of Corrections, State of Wyoming Police Training Commission, American Corrections Association, National Institute of Corrections, Michigan Department of Corrections, Michigan Department of Corrections Jail Division, North Carolina

Opinions Report of Darrell L. Ross, Ph.D.
Estate of Matthew Burroughs v. City of Niles, et al., No. 4:20-cv-00005-SL

Department of Corrections, Corrections Corporation of America, States Attorney's General Office in 6 states, U.S. Attorney's General Office in Florida, Federal Bureau of Prisons, Australia Government, Hong Kong Correctional Services, other agencies across the United States, and all branches of the military to mention a few (see CV for further reference).

7. My opinions are based on my knowledge, research, training, and experience of these practices, training various criminal justice, military, and private security personnel, and from reviewing the following case documents:

  ➢ Plaintiff's Complaint;
  ➢ Defendants' responses to plaintiff's first set of interrogatories and requests for production of documents;
  ➢ Defendants' supplemental responses to plaintiff's first set of interrogatories and requests for production of documents;
  ➢ Defendants' responses to plaintiff's first set of interrogatories and requests for production of documents (Hogan);
  ➢ Defendants' responses to plaintiff's first set of interrogatories and requests for production of documents (Mannella);
  ➢ Defendants' responses to plaintiff's first set of interrogatories and requests for production of documents (Reppy);
  ➢ Depositions of officers: Christopher Manella, James Reppy; Paul Hogan; and Tony Nichols;
  ➢ Arrest warrant for Mr. Burroughs;
  ➢ Dispatch call audio;
  ➢ Interview transcript of Probation Officer Todd Zickefoose by BCI;
  ➢ Interview transcript of Lt. Dan Adkins by BCI;
  ➢ Interview transcript of officer Daniel Myers BCI;
  ➢ Interview transcript of Tara Elkins BCI;
  ➢ Personnel files of officers Christopher Manella; Paul Hogan; & James Reppy;
  ➢ Niles Police Department General Orders, 3-1, 3-2, 3-3, 3-4, & Body Worn Camera Policy;
  ➢ Prosecuting Attorney Dennis Watkins, News Release Report;
  ➢ Body Worn Camera video of James Reppy;
  ➢ BCI Video Synchronized and Video Half-Speed;
  ➢ Municipal Court Building Lobby video;

Opinions Report of Darrell L. Ross, Ph.D.
Estate of Matthew Burroughs v. City of Niles, et al., No. 4:20-cv-00005-SL

> ➤ Incident scene photos ad Photos of the Ford Fusion
> ➤ Scene Sketches;
> ➤ Police Report;
> ➤ Results of Alcohol Test;
> ➤ Witness Statements: Kellie Burke; Stephanie Brunstetter; Michael Cappy; Todd Nichols; and Todd Zickefoose;
> ➤ Captain Tony Johnson Internal Review Report;
> ➤ Firearms Review Board Report by Lt. Cox;
> ➤ BCI Special Agent Cory Momchilov's Investigation Report;
> ➤ BCI Special Agent Justin Soroka's Report;
> ➤ Crash Data Retrieval;
> ➤ Field Death Report;
> ➤ Dispatched Call Summary and Call for Service Summary;
> ➤ Paramedic Report;
> ➤ Plaintiff's exports reports: Barry Brodd and Jason Fries; and
> ➤ Ohio Collaborative Community-Police Advisory Board: Law Enforcement Certification 2021 Public Report

8.  I understand that the estate of Mr. Burroughs has filed a civil action alleging that the named law enforcement officers used excessive force during the contact with him. I have been requested to provide an opinion regarding the response by these officers, the Niles, Ohio Police Department policies relevant to the incident, and the officers' training.

I reserve the privilege to amend and/or supplement my opinions should additional discovery documents become available. Each opinion may be further developed through research, investigation, during deposition, and/or at trial. All of the opinions expressed in this report are in direct regard to the underlying incident and are expressed to a reasonable degree of professional certainty and/or probability.

9.  Further, my opinions are not intended to intrude upon the Court's realm but they are solely to provide background and explanation as to how law enforcement officers are trained, instructed, guided, and held accountable in their use of force in performance of their duties and I how I have instructed thousands of officers. The use of force standards, information, and guidance are used by law enforcement agencies, policy makers, and governmental officials to gauge the appropriateness of an officer's use of force. My opinions expressed in this report are focused on

4

Opinions Report of Darrell L. Ross, Ph.D.
Estate of Matthew Burroughs v. City of Niles, et al., No. 4:20-cv-00005-SL

whether a reasonable, trained, and experienced law enforcement officer, such as the named
officers use of force was appropriate given the totality of the circumstances that they encountered.

10.    Opinion 1        *Administrators of the Niles Police Department (NPD) have developed and
implemented operational policies*

An important function for police administrators is to provide their officers with relevant policies
and procedures. Policies are means in which an organization provides guidance and reasonable
decision making of employees. Policies cannot cover every conceivable situation an officer will
confront and must allow for the totality of circumstances and reasonable decisions to be
considered when discretionary decisions and actions of employees are involved.

I have reviewed the following General Orders of the NPD: GO 3-1, *Response to Resistance and
Aggression* (June 1, 2018); GO 3-2, *Weapons* (May 1, 2017); and GO 3-3, *Weapon Use, Security,
Storage, and Safe Handling* (May 1, 2017).

Opinion
GOs 3-1 and 3-3 guide officers in the appropriate response to various types of subject resistance.
This is an important issue as officers are provided with numerous force options in which to
consider based on varying types of subject resistance which may potentially be encountered by an
officer. Not all situations can be handled with one or two force options and officers need varying
reasonable force options to select from when confronting a resisting subject. In many
confrontations a subject may interact with an officer in a compliant mode and within a split-
second elevate his resistance to a physical attack or a deadly force attack against an officer
without warning. Therefore, I teach police administrators to develop their use of force policies to
encompass the totality of the confrontation circumstances, environmental variables, subject
variables, types of subject resistance, response time issues, and to provide officers with various
force options with which to respond to a subject's type of resistance.

In my opinion, administrators from NPD have established and implemented written policies
which set forth rules of conduct and policies directing officer decisions and actions when
determining use of force measures. GO 3-1 and 3-3 operationalizes the *Graham v. Connor* (1989)
standard of objective reasonable force and is consistent with recognized and accepted police
procedures. Collectively, these policies provide a systematic process for guiding officers in the
appropriate response to various types of subject resistance that they may encounter.

Opinions Report of Darrell L. Ross, Ph.D.
Estate of Matthew Burroughs v. City of Niles, et al., No. 4:20-cv-00005-SL

In my opinion GO 3-1, Response to Resistance and Aggression, comports with contemporary law enforcement practices, including:

➢ Guiding an officer's use of force in response to the resistance offered by the violator; to use force in accordance with the objective reasonableness standard in light of the facts and circumstances confronting the officer; and based on the perception of the on-scene officer and not from 20/20 hindsight;

➢ Guiding officers to use force under appropriate circumstances and prohibiting the use of excessive or unwarranted use force,

➢ Guiding an officer to use force in self-defense, defense of others, to affect an arrest, or to prevent a prisoner's escape;

➢ Guiding an officer's use of objectively reasonable force through an Action Response Force Continuum which identifies differentiating types subject resistance and authorizing varying use of force measures including: Physical Control techniques, Less-Lethal Force equipment, and Deadly Force;

➢ Providing definitions of associated use of force terms;

➢ Describing the parameters for the reasonable use of deadly force and firearms and less-than deadly use of force;

➢ Describing the use of deadly weapons;

➢ Guiding officers to seek medical attention for an arrestee who sustained an apparent injury;

➢ Identifying training and qualification;

➢ Requiring a supervisor to respond to the use of force incident and submit a report,

➢ Requiring officers and supervisors to submit a written report,

➢ Describing the department's response to the use of deadly force;

➢ Describing the firearms' review board's responsibility; and

➢ Conducting an administrative review of the incident

Further, GO 3-3, guides an officer in the use of deadly force, the use of firearms, and restrictions including:

➢ Guiding an officer to use verbal warnings when practical;

➢ Guiding an officer to shoot to stop the threat;

➢ Shooting at or from a moving vehicle;

➢ Using force to destroy an animal; and

➢ Other situations to discharge a firearm

Opinions Report of Darrell L. Ross, Ph.D.
Estate of Matthew Burroughs v. City of Niles, et al., No. 4:20-cv-00005-SL

In my opinion NPD administrators have fulfilled their responsibility by providing their officers with the written policies and procedures necessary to guide their performance in the field. These policies were operational prior to the incident. Because not all situations can be handled with one or two force options officers are provided with numerous force options to consider based on the varying types of subject resistance. In my opinion, the administrators of NPD have established written policies and procedures which authorizes appropriate force measures to consider based on innumerable incident variables, which guide officer decision making, actions, and responsibilities. As I would expect, NPD administrators have purposely addressed the important issue of guiding officers in the reasonable use of force.

Niles PD administrators have been criticized for failing to develop their policies in accordance with a "national standard." First, a national professional standard on the use of force is non-existent. However, the United States Supreme Court established the objective reasonableness standard in their decision in *Graham v. Connor*, 490 U.S. 386 (1989) which is applied to claims of excessive force during an arrest and seizure. Second, there are many professional associations and accrediting entities which consult and provide model practices on developing policies and procedures. Third, law enforcement administrators may voluntarily decide to incorporate language from professional associations into their policies as they believe are appropriate but they are not required to do so.

What is important is that law enforcement administrators develop their policies in accordance with state standards. In 2015, the Ohio Office of Criminal Justice Services (OCJS) established The Community Police Advisory Board to establish minimum law enforcement standards on varying subjects. The Board created minimum standards on the use of force, including deadly force, for all law enforcement agencies in Ohio. The Board also created a certification and re-certification process. The standards provide the structure for developing agency policies. The use of force standard reflects the United States Supreme Court's decision in *Graham v. Connor* (1989) and *Tennessee v. Garner* (1985). As I would expect, administrators of the NPD have developed their use of force policies in compliance with the OCJS' requirements. These policies have been reviewed and have passed the certification and re-certification process by the OCJS in 2017 and continuing through 2021 (see Law Enforcement 2021 Public Report, pg. 177).

Opinions Report of Darrell L. Ross, Ph.D.
Estate of Matthew Burroughs v. City of Niles, et al., No. 4:20-cv-00005-SL

11.    Opinion 2    *Administrators of NPD have provided their officers with training commensurate with their law enforcement duties*

Consistent with the United States Supreme Court's decision in *City of Canton v. Harris*, 489 U.S. 378 (1989) NPD officers have received ongoing training commensurate with their duties. Administrators of the department have made a conscious and proactive choice and as a matter of practice to provide their officers with basic academy training, FTO training, and in-service training in order to perform their assigned duties.

Officer Paul Hogan

Deposition Testimony

During officer Hogan's deposition he testified that he had been trained that a vehicle can be used as a deadly weapon, that it doesn't matter if the vehicle is going fast or slow, it has weight to it, and that if rolls over you you're going to be injured or killed (Dep. Pgs. 51-52).

Training Records

A review of officer Hogan's training showed that he completed the required basic training academy on October 26, 2007 (OPOTA). He has completed in-service training relevant to this incident including: use of force policy review, practical application and test; firearms re-qualification and weapons test; use of force and force decision making; lethal force; judgment firearm simulator; active shooter; officer survival; winning armed confrontations; United States Supreme Court decisions; tactical patrol; vehicle stops; and traffic stops.

Officer James Reppy

During officer's Reppy's deposition he testified that he had been trained that a vehicle can be used as a deadly weapon and that it would be against policy and training to shoot into a stationary car (Dep. Pgs. 8-9).

Reppy Training Records

Officer Reppy completed the training academy on June 24, 2010. He completed the FTO program at NPD in 2013. Officer Reppy completed the following training prior to the incident date: firearms re-qualification and use of force policy review and practical application of force.

Officer Christopher Mannella

During his deposition officer Mannella responded to questions about his training and testified
that: he has been trained that a car can be used as a deadly weapon; trained to stop and approach a
vehicle; trained on the use of the Body Worn Camera (BWC); he has been trained to shoot to stop
the threat; he completed firearms training and was taught by the Ohio Police Officer Training
Council to shoot three rounds, assess, and stop firing when the threat is stopped; and he informed
the NPD firearms instructor the he fired three rounds like he was trained (Dep. Pgs. 7-8, 14, 22,
55, 100, 109, 127, 154-155).

Training Records

Officer Mannella completed the following training prior to the incident date: firearms re-
qualification; the use of force policy review and practical application of force; and active shooter
training.

Opinion

Based on my review of the aforementioned documents administrators of the NPD have made a
conscious choice to provide their officers with basic law enforcement training and by practice
annual training is provided to the officers in order for them to keep abreast of their law
enforcement duties. Concomitantly, NPD administrators have provided training in department
policies which forms the foundation for the training.

The combination of the training provided, with the relevant policies identified, adequately
prepared the officers to appropriately respond to the call and the circumstances created by Mr.
Burroughs. Officers Mannella, Reppy, and Hogan had completed annual firearms qualification
prior to the incident (October, 2018). In my opinion the officers followed their use of force
training within the totality of circumstances when they confronted Mr. Burroughs, which is
described in more detail in the following opinions. Overall, the policies reviewed and the training
assessed illustrate that NPD's administrators have more than adequately provided and prepared
their officers with operational policies and commensurate training in order for them to perform
their law enforcement duties. These components manifestly show that that there is no evidence of
a training or policy deficiency at the NPD, the training and policies comply with accepted law
enforcement practices, and the policies also comply with the State of Ohio standards.

Opinions Report of Darrell L. Ross, Ph.D.
Estate of Matthew Burroughs v. City of Niles, et al., No. 4:20-cv-00005-SL

12.     *Opinion 3      Mr. Burroughs created the need for the officers' response*

Mr. Burroughs was observed on January 2, 2019, at about 2:24 pm, at the Niles Municipal Court Building attempting to pay off a fine for a Driving Under Suspension charge. A warrant had been issued for the arrest of Mr. Burroughs on a charge of an Assault and Aggravated Menacing (see Arrest Warrant; issued by Judge Shaker; 12/18/18). Mr. Burroughs had failed to appear in court to resolve the matter.

Bailiff Les Nagy observed Mr. Burroughs in the lobby of the Court Building standing at the counter and knew there was an outstanding warrant. Nagy contacted probation officer Todd Zickefoose for assistance. Zickefoose responded and observed Mr. Burroughs as he informed the clerk at the counter that he would be right back and he proceeded to the lobby door and left the building. Zickefoose followed Mr. Burroughs outside (see lobby video). Nagy left and informed officers of the NFD, whose office was on the lower floor of the building.

Zickefoose instructed Mr. Burroughs to stop and Mr. Burrough stopped and faced Zicekfoose. Zicekefoose told Mr. Burroughs that there was an active warrant out for him, to come with him back to the court, and to turn around so that he could be handcuffed. Zickefoose grab Mr. Burroughs' forearm and Mr. Burroughs stated why are you stopping me, Zickefoose again told Mr. Burroughs about the warrant, and Mr. Burroughs pulled away and ran from Zickefoose.

Mr. Burroughs ran to the parking lot of the Municipal Court Building and entered his white Ford Fusion. Zickefoose followed Mr. Burroughs to the car. The car door was opened and Zickefoose stood between the door and the front seat. Zickefoose instructed Mr. Burrough to stop and to get out of the car. Zickefoose grabbed Mr. Burroughs'arm and attempted to pull him out of the vehicle. Mr. Burroughs started the vehicle, put it in neutral, revved the engine, put in reverse, and rapidly backed-up. The car door struck Zickefoose as Mr. Burroughs quickly backed away and it pulled Zickefoose backward several feet. Mr. Burroughs continued to back down the parking lot, turned the car around, and fled from the parking lot and headed down East street. Zickefoose observed the license plate and informed the NPD officers (see Zickefoose written statement and interview with BCI agent Momchilov; 1/4/19; see also Zickefoose interview with Captain Jim Villeco, 1-2-19; victim of Aggravated Vehicular Assault).

Mr. Todd Nichols witnessed Mr. Burroughs running away from Zickefoose, run to his car, place it in reverse, and speed away. Mr. Nichols testified in his deposition that: he was sitting in his truck in the parking lot of Municipal Court Building and was parked next to Mr. Burroughs car; he saw Mr. Burroughs running away from the probation officer and hopped in the car; the

Opinions Report of Darrell L. Ross, Ph.D.
Estate of Matthew Burroughs v. City of Niles, et al., No. 4:20-cv-00005-SL

probation officer was at the door, the door was opened, got caught in the door when Mr.
Burroughs backed up, and the probation officer couldn't get out; the car dragged the probation
officer backward; that it happened quickly; and he wrote a statement for the police department
(Dep. Pgs. 8-9, 11, 14-15, 22-23, 26).

Mr. Nichols further testified that: the probation officer was knocked to the ground, got up, and
started running after the car, the door was opened and the car sped off; that this happened fast, in
about 45 seconds, less than one minute; that the probation officer was trying to stop Mr.
Burroughs from putting the car in gear, the door was opened, and he reached into the car; the car
backed up and he gassed the car heavily; and he heard the tires squeal as he backed up and took
off (Dep. Pgs. 15, 17, 22-23, 29).

NPD officer Paul Hogan testified his deposition that: he was at the police department and was
advised by the dispatcher that there was a problem upstairs with a person who had an active
warrant; as he proceeded upstairs he was contacted by bailiff Nagy who stated there is a guy with
an active warrant and he ran out of the front door; he got into his police vehicle and began
looking for the person and did not see anyone running or driving away; he heard over the radio
that the person was in a white Fusion, a black male, and he proceeded down State Street; he heard
dispatch advise that the person was Matthew Burroughs, he was in a white Ford Fusion, and had
struck a court member; he had previous contact with Mr. Burroughs, knew his address, and
proceeded to Royal Mall, apartment number 53 (Dep. Pgs. 12-14).

Hogan further testified that: as he proceeded on Route 46, officer Mannella fell in behind him; he
advised dispatch that he was headed to the Royal Mall; he drove into the apartment complex and
Mannella followed him; he began looking for the Ford Fusion and did not see it; he was about to
leave the complex and observed Mr. Burroughs Mannella walking in the parking lot toward his
vehicle and suddenly observed Mr. Burroughs pulling in, followed by two of our units (Dep. Pgs.
16-20).

Officer Mannella testified in his deposition that: he heard dispatch advise that an individual was
at court; there was a warrant issued; the individual had fought with a probation officer or court
official in the parking lot; a description of the vehicle was issued; when he heard the individual's
name was issued with an address he decided to proceeded to the Royal Mall apartment complex;
he observed on the MDT, a FBI Warning, a Police Caution on the individual (Mr. Burroughs) for
violent crimes against the police and to proceed with caution; he knew from roll call that Mr.
Burroughs had threatened his pregnant girlfriend with a firearm and thrown her out of the

11

Opinions Report of Darrell L. Ross, Ph.D.
Estate of Matthew Burroughs v. City of Niles, et al., No. 4:20-cv-00005-SL

apartment and that a warrant had been issued; he headed to the apartment complex, began to approach (walk) apartment number 53 on the sidewalk and saw officer Hogan's patrol vehicle; he saw a white Ford Fusion, heard sirens and police vehicles enter the complex following the Ford; and that he heard Hogan state over the radio, "I don't think he is going to stop Dan" (Dep. Pgs. 33-39, 41-49, 51).

Officer James Reppy testified in his deposition that: he was in pursuit of Mr. Burroughs in his patrol vehicle westbound on Royal Mall Drive, that he estimated that Mr. Burrough was traveling about 40 to 45 miles per hour, and that he was trying catch up with him (Dep. Pgs. 12-15). Reppy also testified that: he heard the call came out and heard officers talking about someone walking out of the front door of court; he heard a description of the vehicle from dispatch that it struck the probation officer and it was a white and it was a Ford; the plate was given out and it was heading towards Robbins Avenue; he went into service and began to search for the vehicle; he heard over the radio the address of Mr. Burroughs, that there was a warrant, gave out Royal Mall, number 53; information was given out that he was known to have a violent past or violent history towards police officers, and he headed towards Robbins Avenue (Dep. Pgs. 34-35).

Officer Reppy further testified that: as he proceeded, he saw a car matching the description going towards the Royal Mall and he tried to catch up; he couldn't verify the plate as there was traffic ahead him; he observed Mr. Burroughs driving at a high rate of speed and started to catch up as he was going toward Royal Mall; he heard Lieutenant Adkins radio, "Jim I think that's the car;" he activated his overhead lights and Adkins was approaching from the opposite way, Adkins stopped and turned around; he activated his Body Worn Camera; he heard officer Hogan state "I don't think he's going to stop Dan;" he was following Mr. Burrough and Adkins was behind him; he believed it was the car that he was looking for; and he had been chasing this guy for a while (Dep. Pgs. 36-40; audio of BWC).

During Lieutenant Adkins' interview (1/16/19) with BCI agent Momchilov he explained: that he was on patrol that he heard over the radio something had occurred at the court and that someone left through the front door; later heard dispatch state that a black male was driving a white Ford, he left the court and had an active warrant; dispatch advised that the person attempted to strike or did strike a probation officer and that dispatch provided the address of Royal Mall, apartment number 53; as he drove he passed officers Hogan and Mannella who eventually turned into Royal Mall; he looked down the road and observed the white Ford; he stated that he saw officer Reppy and radioed Reppy that he believed that the white car was the car;" he turned around and headed

12

Opinions Report of Darrell L. Ross, Ph.D.
Estate of Matthew Burroughs v. City of Niles, et al., No. 4:20-cv-00005-SL

toward Royal Mall; he observed Reppy activate his overhead lights; and he heard officer Hogan
broadcast over the radio, "that he did not think he was going to stop Dan;" and stated that he was
about five seconds behind Reppy (see interview transcript; see Adkins report, 1/3/19).

The dispatch time line showed: dispatched advised Matthew Burroughs in court on assault
warrant (14:28:41); male ran out front court doors toward the ramp (14:29:17); male left in a
white Ford towards Robbins and tried to run over a probation officer (14:30:28); broadcasted
plate number and social security number (14:30:46-48); someone will have to get a report from
the probation officer, male hit him with the car door (14:32:51): Royal Mall (14:33:43; Units
130/131); and pulling into Royal Mall (14:35:52; Unit #110).

Opinion

In any assessment reviewing the use of a law enforcement officer's use of force numerous
circumstances variables must be examined including the initial information provided by dispatch
and additional information provided as the officer proceeds to the location. Further, the review
must include how the initial dispatched broadcast changes to what the officer actually encounters
on scene when interacting with a subject including: the officer's knowledge of a particular subject
and the location of the contact; the operating environment of the call; the changing dynamics of
the on scene contact with a subject; the subject's actions/inactions, behaviors, and statements
made/not made; the threat risk posed by the subject; and the officer's response to the subject's
actions/inactions.

a.      Nature of the Call

The evidence shows that the officers were dispatched to a call involving a felony committed by
Mr. Burroughs and he fled from the court building. Specifically, the responding officers were
advised and were aware that:

> There was an arrest warrant issued for Mr. Burroughs stemming from his threatening his
  girlfriend with a firearm;
> Officer Hogan responded to the court when Judge Shaker requested that an officer check
  an individual with an active warrant;
> That Mr. Burroughs fled from the court building and struck a probation officer with his
  vehicle (unknown if the officer had sustained injury);
> That Mr. Burroughs did not stop at the court but that he struck the probation officer and
  fled the court complex parking lot;

Opinions Report of Darrell L. Ross, Ph.D.
Estate of Matthew Burroughs v. City of Niles, et al., No. 4:20-cv-00005-SL

> ➢ The description of the fleeing white Ford Fusion and the license plate was registered to
> Mr. Burroughs and the officers were provided with his address at the Royal Mall
> apartment complex; and

> ➢ The FBI-Warning and Police Caution had been issued on Mr. Burroughs because of his
> past violence against law enforcement officers.

Based on the dispatched information, the outstanding warrant, the actions of Mr. Burroughs at the
court complex, and the FBI Caution it was appropriate to dispatch several officers to locate and
apprehend him. Officers Hogan, Mannella, Reppy, and lieutenant Adkins proceeded to the Royal
Mall apartment complex to locate and apprehend Mr. Burroughs. Officer Reppy located Mr.
Burroughs' vehicle and proceeded into the apartment complex with his overhead lights activated.
Lt. Adkins arrived after officer Reppy and about 5 seconds after the shooting.

b.      Contact Environment

Officer Hogan arrived at the apartment complex at about 2:28 pm and began searching for Mr.
Burroughs, did not initially locate him, and began to exit when he observed him drive into the
complex. Officer Mannella parked his patrol vehicle, exited, and walked toward apartment
number 53 when he observed Mr. Burroughs drive into the apartment complex. Hogan estimated
that Mr. Burroughs entered the apartment complex at about 30 miles per hour followed by two
patrol vehicles (Dep. Pg. 21). Officer Mannella estimated Mr. Burroughs' entering speed at about
25 miles per hour (Dep. Pg. 50).

The time of the contact with Mr. Burroughs occurred at about 2:36 pm and it was overcast. The
contact with Mr. Burroughs occurred at the entrance of the apartments off of the Royal Mall
Drive. There are three apartment buildings in the area which form an inverted u-shape, with
building 24 on the left, building 26 on the right side, and building 25 located at the end. Parking
spaces were located in front of building 24 (4 vehicles) and building 26 (5 vehicles) for a total of
9 vehicles parked in the spaces at the time of the incident. A trash dumpster was located to the left
of the entrance about 25 to 30 feet from the driveway (in front of building number 24). There was
a light pole located to the left of the dumpster. The surface of the driveway was dry.

Officer Hogan was parked facing east on Royal Oak Drive at the entrance of the driveway of the
complex, parallel to building 24. Officer Mannella's patrol vehicle was parked behind Hogan's
patrol vehicle near the curb of Royal Oak Drive. Mr. Burroughs drove toward Hogan's vehicle
and stopped hood to hood from about three feet away (Hogan Dep. Pgs. 23-25).

Opinions Report of Darrell L. Ross, Ph.D.
Estate of Matthew Burroughs v. City of Niles, et al., No. 4:20-cv-00005-SL

1. Phase 1 Anticipation

The nature of policing exposes law enforcement officers to various types of risks inherent in any dispatched call. Officers must be prepared to respond to the varying risks as the incident dynamics can rapidly and unexpectedly change. In any dispatched call limited information may be provided which may change as the officer proceeds to the location and the information also routinely changes once the officer arrives on scene. Anticipation and perception are two primary cognitive processing components (among other components) which are instinctively activated when a person hears about a potential stressful and life-threatening situation and actually encounters a perceived life-threatening situation.

In the first phase, an officer's cognitive processing would be impacted through the mental process of anticipation. Anticipation is the mental process of being aware of environmental stimuli which produces a situational and contextual awareness. Anticipation precedes perception. Anticipation serves as a proactive mental process and provides preparatory consciousness and alertness, arousal or excitement or warning to external stimuli and cues, prior to an event or incident occurring (Sapolsky, 2004; Schmidt & Wrisberg, 2000). It is an initial part of the survival stress response assisting in increasing assessment of the immediate and the future and assists in elevating an officer's concern for his or her own personal safety and prepares the body to respond under a perceived stressful situation (Sharps, 2017; Ratey, 2001). The higher potential risk threat level and the higher the priority nature of the call, particularly when dispatched and while driving to the location, the more elevated arousal and alertness of the officer will be (Baldwin, et. al., 2019). For example, an officer may be patrolling and suddenly receive a radio call to proceed to shots fired at a school by an active shooter. During the response to the location and with limited information received, the anticipatory phase of cognition is automatically activated, placing the officer on alert to anticipate or expect future danger.

Being advised of the associated factors provided to the officers by dispatch regarding Mr. Burroughs, would activate the cognitive process of anticipation amongst the responding officers. Based on Mr. Burroughs' criminal behaviors and combined with the provided dispatched information and the FBI caution, would create a natural cognitive response for the officers to anticipate potential danger from Mr. Burroughs. These factors would cause experienced and trained officers like these officers to respond with an elevated mental alert status. This is to be expected as the cognitive response is automatically activated when a potential threat of danger is presented.

Opinions Report of Darrell L. Ross, Ph.D.
Estate of Matthew Burroughs v. City of Niles, et al., No. 4:20-cv-00005-SL

The information would alert the responding officers with a heightened sense of personal safety and to be attuned to the contextual nature of the contact. The information would alert and prepare them to respond with caution when making contact with Mr. Burroughs. It would prepare the officers to form an alert mindset to the potential threats and dangers associated with the contact and the actions of Mr. Burroughs and to be prepared for the potential of resistive actions, and to proceed with caution.

As I would expect, officer Hogan and Mannella responded to the apartment complex to locate Mr. Burroughs, make contact with him, and arrest him. As officer Hogan drove through the complex looking for him, officer Mannella walked to apartment number 53 to determine if Mr. Burroughs was at the apartment, which was appropriate. When Hogan observed Mr. Burroughs traveling on Royal Mall Drive, he pulled forward to block his path of travel which was also appropriate. Mr. Burroughs stopped momentarily and Mannella approached Mr. Burroughs with his firearm holstered, thinking he was blocked, and that he could remove him from the vehicle.

Apartment maintenance worker Michael Cappy provided a statement to the BCI investigators and reported that: the white car started to pull away; he heard the officer state to get out of the car/stop; walking along side as it was attempting to, trying to drive away, the second car blocked him in; the officer kind of ran from over here—the dumpster—kind of ran up to it, to the side of the car; and that Matthew went backwards, a third officer arrived and Burroughs started driving forward (Cappy Interview with S/A Momchilov).

In my opinion, it was appropriate for officer Hogan to move and position his patrol car to block and to stop Mr. Burroughs from fleeing. Positioning the patrol vehicle for "blocking" is an acceptable and legitimate police tactic to block the path of another vehicle based on the seriousness of the crime. Hogan was aware of the arrest warrant for Mr. Burroughs which was for a violent crime, aware that he had just struck a probation officer with his vehicle, and knew he did not stop and fled from the parking lot of the court complex. The tactic is used to block the path of the vehicle when it is anticipated that the driver may flee. In my opinion these factors are linked to Hogan and Reppy's experience and training and activated their initial thought processes which heightened their anticipatory threat mindset.

Rather than complying with two law enforcement officers, officer Mannella's instructions to stop and to get out of the car (Dep. Pg. 49), Mr. Burroughs escalated the situation. Mr. Burroughs quickly placed his vehicle in reverse, then placed the vehicle in drive, and quickly drove the vehicle at Hogan again. Hogan anticipated that Mr. Burroughs was going to strike him and

Opinions Report of Darrell L. Ross, Ph.D.
Estate of Matthew Burroughs v. City of Niles, et al., No. 4:20-cv-00005-SL

radioed that he did not think Mr. Burrough was going to stop. Mr. Burroughs did not comply,
rather he drove the vehicle forward toward Mannella's position as he turned the steering wheel in
the area of the driveway of the apartment complex. Mr. Burrough's escalating actions of reckless
and dangerous driving and failing to comply with officer Mannella's instructions created a
heightened risk of immediate danger.

13.     Opinion 4        *Officer Mannella used deadly force in self-defense and officer Reppy used deadly
        force to protect officer Mannella*

When examining an allegation of excessive force, the totality of circumstances of the situation
must be examined within the framework of four general incident components including: (1)
nature of the call/incident circumstances; (2) the circumstance environment; (3) the actions or
inactions, including the threat created and posed by the suspect; and (4) the perception, reaction
time, and response of the involved officer. In the training that I provide to law enforcement
officers, administrators and  instructors, I emphasize that the review of the incident and an
officer's response must be performed in accordance with the objective reasonableness standard
and the criteria outlined in the United States Supreme Court's decision in *Graham v. Connor*, 490
U.S. 396 (1989) including: the crime at issue, whether the suspect posed and immediate threat to
the safety of the officer (s) or others, whether the suspect was actively resisting arrest or
attempting to evade arrest by flight. Such an assessment recognizes that officers must frequently
make a decision to use a level of force within a split-second, under tense, uncertain, and rapidly
evolving circumstances confronting the officer (s). In accordance with these factors, whether the
suspect posed an immediate threat to the officer's safety is the most critical. The use of force
assessment must also include all of the facts and circumstances of each case on its merits, based
upon the perception of the officer (s) at the moment force was required, and not according to an
assessment made in hindsight.

Law enforcement officers do not have the luxury of scripting their response to the dynamics of a
fluid situation. Police officers are taught and, in the training that I provide them, they are
instructed that their decision to respond with any level of force must be predicated on the resistive
behaviors, and actions/inactions, demonstrated by a particular person. Police officers may use
force in self-defense, in defense of another, to prevent a crime, to effect an arrest, to maintain
control, and to prevent a person from harming himself. Frequently making a decision about using
a degree of force must be made in a split second and there is no luxury of time for the officer to
"wait and see" what a resisting person "may or may not do."

Opinions Report of Darrell L. Ross, Ph.D.
Estate of Matthew Burroughs v. City of Niles, et al., No. 4:20-cv-00005-SL

Phase Two Officers' Perception and Response

In phase two the components of anticipation transfer to perception formation based on the subject's behaviors of within the confrontation context and environment. Perception is a mental process by which the brain interprets and gives meaning to information received from the senses (Kandel, 2006; Ratey, 2001; Kavanagh, 2006; Hoing & Lewinski, 2008; Lewinski, 2008; Ross & Murphy, 2018; Miller, 2020; Vickers, 2007). Perception is the process of applying stored knowledge to the sensory input and forming interpretation (Green, 2011). Past learning and past experience impact human perception and assists in matching what was previously learned to a present situation (Artwhol and Christensen, 2019). This incident underscores the human component of perception as the officers past training and law enforcement experience prepared them to assess and appropriately respond.

Under high levels of stress, time pressures and volatile circumstances, the focus of the brain shifts from thinking to reacting, commonly referred to as "flight or fight" (Cannon 1929; Easterbrook, 1959; LeDoux and Pine, 2016). The physiological response under stress activates the Autonomic Nervous System triggering a Sympathetic Nervous System (SNS) discharge which results in an immediate release of adrenaline, cortisol, an increase in blood pressure, an increase in heart rate, perspiration, muscle tension, pupil size, dry mouth, increased breathing rate, and improved blood flow to the brain, heart, and large muscles (Groer, et al., 2010; Selye, 1959; Sharps, 2017). This process is activated without conscious thought to prepare the person to respond to the stressful encounter (Miller, 2006; LeDoux, 1996; Schwartz & Bagley, 2003; Ross, Murphy, & Hazlett, 2012; Lovall, 2016). Experiencing a state of fear can activate the stress response triggering the SNS.

In high-stress situation when decision making is required with little reaction time available the person's survival emotions are heightened and perception of danger, the brain instinctively reacts to prepare the person for survival. Heightened sensory perceptions increases a person's situational awareness and in police work, assists the officer in making appropriate use of force decisions. Recognizing the human factors involved in any survival stress encounter must be considered in any use of force assessment. Under stress perception is influenced by several factors including intensity, physical dimensions of the stimuli, circumstances and environment, reaction time, and past experiences of the person. Experiences shape a person's perception and match a perception of an event to schemas, also referred to as recognized patterns (Lewinski, Hudson, & Dysterheft, 2014; LeDoux, 1996; Ratey, 2001; Ross and Siddle, 2003). Humans see the world in patterns and

cues. In police work pattern recognition or contextual cues are taught to officers about observing a suspect's behaviors, motions, statements, and actions.

In the training I provide to officers, I emphasize to perform a threat analysis and assess human behaviors, patterns of movements, assault cues, and statements or lack of statements in order to gage the threat level of a person in order to enhance their own safety. Therefore, assessing subject behavioral patterns and threatening assault cues becomes critical to an officer's perception formation and can include: bodily stance; arms folded across the chest; blank stare; making direct eye contact, avoiding eye contact; non-responsive to an officer's instructions; failing to following an officer's instructions; facial gestures; body movements and motions; quick furtive movements; running away; looking back and forth; looking over a shoulder to check an officer's position; failing to show the hands; hands at the waist; hands concealed; making quick reaching motions with the hands; moving to close the reactionary distance; pacing back and forth; non-compliance; quickly charging/lunging forward; reaching into pockets or waistbands; pulling away during handcuffing, ignoring officer commands and instructions, driving a vehicle at the officer, pointing a firearm at an officer; and statements and verbal threats to mention a few. Contextual threat cues are the only cues an officer can depend on.

Mr. Burroughs' Actions of Resistance

Officer Hogan testified in his deposition that: Mr. Burroughs placed the car in reverse, going about 25-30 miles per hour (going east), then put it in drive and starts to come forward again; he radioed "I don't think he's going to stop Dan;" because he now is coming back at me again; went back about 10 to 15 yards toward officer Reppy's vehicle; he stopped for about two seconds; drove forward and I did not know if he was going to strike the front of my car or not; Burroughs came towards me and he turned the steering wheel and went off into the court where the cars park, and where Mannella was standing (Dep. Pgs. 26-32; see also Hogan report, 1/7/19).).

Hogan further testified that: he looked left and saw Mannella pumping his hands/arms with his palm out and backing up about three steps; Mannella did not have his firearm in his hand at that time; Mannella retrieved his firearm and he did observe Mannella fire the shots; Manella was moving backward as the car was coming at him; he assumed that Mr. Burrough was maybe going ten miles per hour give or take; there is no doubt in my mind that it was moving forward towards the officer; Mannella stood at about the center of the hood; the car bumper was about two to three feet at the most (away from Mannella); that he ducked down until the shooting stopped; he did

not see Mr. Burroughs' vehicle come to a stop before shots were fired; and that Mannella drew his gun and fired it almost instantaneously (Dep. Pgs. 31-32, 35, 37-40, 42-44, 53).

Officer Mannella testified in his deposition that: when he heard Hogan state, "I don't think he is going to stop Dan," he drew his firearm; he instructed Mr. Burroughs to stop several more times and instructed him to get out of the vehicle; he thought Mr. Burroughs would hit Reppy's car and he got close as he backed toward it; and that Mr. Burroughs presented threat of injury to Hogan and to officer Reppy (Dep. Pgs. 51-54).

Mannella testified that: he was on the passenger side door of Mr. Burroughs' vehicle from about ten feet and stayed close to the dumpster; he estimated that Mr. Burroughs stopped for about one second, then he backed up; he approached with his firearm drawn and shouted instructions for Mr. Burroughs to stop but he came toward him; Reppy drove up to block him; Mr. Burroughs stopped, thought he was going to remain stopped but he did not; Mr. Burrough drove toward me, he sidestepped to the left naturally and Mr. Burroughs turned the vehicle to the right which put him in front of the vehicle; Mr. Burroughs was driving with two feet, like stop and go type of acceleration; he did not know what Mr. Burroughs' actions would be; as the car came at him, he stepped to the left and he could see the center of the car, pointed his firearm at the car, and could see the emblem of the car, and after the second acceleration the car came right at him and that he fired three shots in succession; the car got within about four to five feet of his position and he was at the passenger side headlight; he thought he was going to be hit and he could not have him run him over; Mr. Burroughs looked right at him holding the wheel; that he feared for his safety and knew he would be run over; he may shoot at a moving vehicle if it was threatening him; he shot three shots as he stepped to the left and the pattern and spacing of the shots on the front windshield; he shot to stop the threat; the car rolled about four to five feet towards his knees after he stopped shooting; and that he was on scene about three minutes before he shot (Dep. Pgs. 87-94, 96-97, 100-102, 104, 108-109, 114-115, 121, 124, 135, 142, 154-155, 165, 167-168).

Officer Mannella also testified that: he heard Reppy instruct Mr. Burroughs to stop the car several times; he saw Reppy off to his left with his gun out; Mr. Burroughs was not listening to either of us; he agreed that Mr. Burroughs' broke the law on January 2, 2019; and that after he shot, he radioed to send a squad (Dep. Pgs. 120-121, 149, 167).

Officer Reppy testified in his deposition that: he believed Mr. Burroughs was attempting avoid apprehension; he saw Mr. Burroughs drive in reverse toward him and that he was in grave danger; he did see the brakes and reverse lights go on and off; he observed Mr. Burroughs place

Opinions Report of Darrell L. Ross, Ph.D.
Estate of Matthew Burroughs v. City of Niles, et al., No. 4:20-cv-00005-SL

the car in drive and proceed forward and he exited his patrol car; he observed Mr. Burroughs go forward about 15 to 20 yards at about 10 to 15 miles per hour; Mannella fired three shots and then he shot five shots in succession which were needed to stop the threat (Dep. Pgs. 11, 15-22, 24).

Officer Reppy further testified in his deposition that: he saw Mannella walking from the apartment giving commands to Mr. Burroughs to stop and get out of the car; Mannella was walking with his firearm drawn and pointed it at the car; Mr. Burroughs backed toward his patrol car and it almost struck the cruiser and Mr. Burroughs went forward toward Mannella; he fired after Mannella because it showed another trained officer saw the same thing—the car was going toward officer Mannella; he stopped shooting once the threat was over; he saw Mannella move to his left as he was shooting, moving laterally; that Mannella was within three feet of the hood, he kept trying to get out of the way; and Mannella's position was about at the center of the hood, moving to his left side to the left quarter panel of the passenger side (Dep. Pgs. 57-61, 72-73).

Opinion of officer Mannella and Reppy's Response to Mr. Burroughs' Actions

The actions of Mr. Burroughs using his vehicle as a deadly weapon created the immediate risk of danger and the risk of serious bodily harm to the officers, requiring Mannella to use deadly force in self-defense and Reppy to use deadly force in defense of Mannella. Based on the rapidly unfolding and highly stressful situation the officers confronted, the anticipatory mindset of the officers quickly transferred to forming the perception that deadly force was warranted based on the continuing, escalating, and dangerous actions of Mr. Burroughs, and this is observed on several levels.

First, as previously described, officer Hogan moved his patrol vehicle forward to block Mr. Burroughs' path to stop him and to prevent him from continuing to flee. Mr. Burroughs did stop momentarily and officer Mannella approached Mr. Burroughs' vehicle thinking that he could remove him from his vehicle and place him into custody. Mannella instructed Mr. Burroughs to stop and to get out of the car several times. Mannella had not unholstered his firearm at this point and used commands and hand gestures to gain compliance from Mr. Burroughs. Had Mr. Burroughs complied with Mannella's instructions he would have been controlled and restrained without incident.

Second, Mr. Burroughs was provided with an opportunity to comply. However, despite two officers on scene, one officer blocking his path with a marked patrol vehicle, one officer in uniform giving repeated instructions to get out of the car, and a third officer arriving on scene in a marked patrol vehicle with its overhead lights activated, Mr. Burroughs escalated the situation

21

Opinions Report of Darrell L. Ross, Ph.D.
Estate of Matthew Burroughs v. City of Niles, et al., No. 4:20-cv-00005-SL

and created a heightened threat risk and placed the officers in an immediate threat of danger. Based on Mr. Burroughs' actions, officer Hogan formed the perception that Mr. Burroughs was not going to stop and advised over the radio, "I don't think he is going to stop Dan" (which other officers heard).

Third, Reppy drove forward and stopped to block Mr. Burroughs from fleeing as he was backing away from Hogan. Officer Reppy testified that he formed the perception that he was in grave danger and Manella also testified that he perceived that Reppy and Hogan were in immediate threat of danger as Mr. Burroughs placed his vehicle in reverse and then drove it forward again. The noncompliant actions of Mr. Burroughs by continuing his efforts to flee from the officers and failing to stop would be interpreted by the officers that Mr. Burroughs' behaviors demonstrated his intent on fleeing and escaping apprehension. Indeed, officer Reppy formed the perception that Mr. Burroughs was actively avoiding apprehension.

Fourth, instead of stopping, Mr. Burroughs placed his car in drive, drove toward Hogan's patrol car, turned the steering wheel to the right which placed officer Manella directly in front of the Fusion. Mr. Burroughs' actions of backing up and driving at Hogan and steering the car moving toward Mannella occurred rapidly. Hogan stated that he thought about ramming Mr. Burrough's car but perceived that there was no time. Reppy stated that after he placed his car in park and Mr. Burroughs veered to the right and went toward Mannella, that Mannella had his pistol drawn, and gave several orders for Mr. Burroughs to stop.

Fifth, based on Mr. Burroughs' actions of driving his car forward and steering the wheels to the right, Mannella who had been about ten feet away and stood at the passenger side of the Fusion, was placed in an immediate position of danger. Officer Mannella drew his firearm, continued to instruct Mr. Burroughs to stop several times, as his position was in the middle of the Fusion (see Manella, Hogan, and Reppy Deps.). Mannella recalled seeing the hood emblem, pointed his firearm at Mr. Burroughs, and stated that he could see Mr. Burroughs looking right at him as he drove forward.

Sixth, even as Mr. Burroughs was driving forward and attempting to elude apprehension, with two officers on scene and a third officer, Mannella standing directly in front of his car, and pointing a firearm at him, he defied the repeated orders to stop, and did not surrender. As Mr. Burroughs continued to drive directly at Mannella, officer Mannella began to step to his left. Mr. Burroughs continued to steer his vehicle toward Mannella in a stop and go manner, and he

Opinions Report of Darrell L. Ross, Ph.D.
Estate of Matthew Burroughs v. City of Niles, et al., No. 4:20-cv-00005-SL

accelerated again directly toward officer Mannella (see also Michael Cappy's statement to BCI; Hogan and Reppy Depositions).

a. Reaction Time

Seventh, in this incident the reaction time necessary to process an immediate threat posed by Mr. Burroughs driving his vehicle at officer Mannella must be factored into the analysis of using force in self-defense. A primary human factor which can impact decision making under a dangerous, fearful, and stressful deadly force situation is the time needed to process the pattern of behaviors observed. An important factor which emerged in this incident was the reaction time that officer Mannella had to process the actions of the car driven at him within a matter of seconds and must be considered within the totality of circumstances when examining the use of deadly force. During a life-threatening event, the time needed to fully process the incoming flood of stimuli will be disrupted. Incoming fast paced stressors do not provide the opportunity to gather as much information and do not allow the person (officer) adequate time to sample as many cues. Shifts in focus can also be experienced by the officer under stress due to eye movements (saccades) and blinking under stress (Vickers, 2007).

Reaction time (i.e., Response Time) is the mental process of perceiving a stimulus, assessing the stimulus, and responding to it physically (Green, 2013). Movement time is the time from the initiation of a physical response until it is completed. Response time is the combination of reaction time and movement time (Hontz, 2000; Hoing and Lewinski, 2008; Blair et al., 2011). A model of reaction time illustrating how an officer forms their perception involves the following components: (#1) sensory input of the stimuli provides context and meaning is attached to the event or object in the brain. Vision is automatically focused on the threat and significant reduction in peripheral vision is lost. During a survival stress and life-threatening event, vision is the dominate operating sensory factor (Breedlove, 2013).

The actions of Mr. Burroughs' reckless driving behaviors would rightfully cause Mannella to form the perception that his actions were unpredictable. Mr. Burroughs' driving clearly showed that he was on intent on fleeing and his behaviors were unpredictable, which posed an immediate risk of threat to the officers. Mannella faced an immediate threat based on the actions of Mr. Burroughs.

Mr. Burroughs drove in reverse, drove quickly forward, and steered to the right toward officer Mannella's position. As Mannella visually observed these actions he would cognitively process the actions of Mr. Burroughs in the car. Mannella would process and recognize that he was just

Opinions Report of Darrell L. Ross, Ph.D.
Estate of Matthew Burroughs v. City of Niles, et al., No. 4:20-cv-00005-SL

seconds earlier off to the side of the Fusion and was suddenly in a position in front of the car. He would have to quickly process that he faced a car being driven at him as a deadly weapon which would activate the SNS simultaneously with cognitively processing the visualized information and forming the perception and belief that Mr. Burroughs presented an immediate threat of harm to him. Mannella would rightfully form the belief that Mr. Burrough, who had disregarded his repeated commands to stop and to get out of the car, was about to be struck by the Fusion. These elements increased Mannella's perception as he attached meaning to the assaultive actions of Mr. Burroughs.

Once meaning is attached to the perception (#2) a strategy is formulated in the brain (#3) which would lead to executing a physical response (using deadly force) (Green, 2013; Ratey, 2001). Based on the idiosyncratic variables of each person and in a spontaneous, unexpected, and rapidly occurring situation, it can take from approximately .31 to .56 of a second for the mind to process the stimuli, attach meaning to the stimuli, to formulate a response, and actually respond physically (Lewinski and Hudson, 2003; Blair et al., 2011). Therefore, time and distance from the stimulus are just as important as the intensity and the amount of the information being assessed and being able to process the information and physically reacting. This is a continual process, would naturally occur, and the physical response based on the threat level would involve the actual firing of the firearm under a perceived and spontaneous stressful survival stress situation.

Even with a gun pointed at him Mr. Burroughs was not deterred from driving at Mannella. Officer Mannella could not possibly know the intentions of Burroughs (as he stated) as he drove at him placing his life in immediate danger, he could only react to it. Therefore, it would be a natural and expected response that when faced with fast paced, tense, dynamic, fluid, and threating situation that officer Mannella would form the perception that he was about to be struck by the Fusion and responded in self-defense.

The axiom that reaction is always slower than action applies in this incident. It is a testament to officer Mannella's training and experience that he did not fire until after at least two sets of verbal commands were provided and Mr. Burrough failed to comply and drove at Mannella. Further, officer Mannella did not fire his firearm until Mr. Burrough's vehicle got to within about three feet of his position. He did not shoot too early and did not shoot too late which is a testament to his past experience and training.

Research shows that a shooting incident an officer is involved in a continuous action (Lewinski and Redman, 2009; Jason, 2010). Not only does it take time to process the incoming stimuli and

Opinions Report of Darrell L. Ross, Ph.D.
Estate of Matthew Burroughs v. City of Niles, et al., No. 4:20-cv-00005-SL

make the decision to shoot but it also takes time to assess the situation and decide to stop shooting (Lewinski, 2000; Lewinski & Redman, 2009; Lewinski et al., 2014). Officers are taught to fire their firearm at the threat and fire until the threat stops. An officer's focus in a life-threatening circumstance narrows onto the threat and is not preoccupied with stopping the shooting but with saving his life and surviving the incident (Vickers and Lewinski, 2012; Breedlove, 2013). Depending on the incident and associated circumstances it can take approximately ⅓ to ¾ of a second to assess, process the incoming stimuli of a situation, formulate a strategy, obtain target acquisition, and begin to shoot. Depending on the circumstances and the continuing nature of the threat it can take another ¾ to 1 second for an officer to decide to stop shooting when it is believed that the threat has ceased. Depending on the circumstances it can take up to approximately ½ to 2.5 seconds to start and stop shooting, and fire multiple rounds.

The BWC of officer Reppy provided a video and audio of a portion of the incident. The video showed that:

> ➢ While Reppy parked his patrol vehicle, officer Mannella provided instructions to Mr. Burroughs stop as heard over the audio;
> ➢ As Reppy exited his patrol car Mannella fired the first round as heard on the audio;
> ➢ As Reppy stepped outside of the patrol car he faced toward the Ford Fusion and it was within about one or two feet of Hogan's patrol car;
> ➢ The Ford Fusion was within about three feet or less of Mannella's position, the front passenger side tire was turned toward Mannella's left leg as he stood near the passenger side headlight;
> ➢ As Reppy faced toward the Ford Fusion, the brake lights were activated, officer Mannella stood in a Weaver shooting stance with the dominate foot slightly back, both arms were extended straight out, as he pointed the firearm at the threat, and he fired the second round;
> ➢ Officer Mannella fired the third round but he was not in view of Reppy's BWC. Officer Reppy fired his firearm just after Mannella fired his third round. The Fusion's right front passenger side tire was turned to the right, the brake lights were on, and Mannella backed away from the Fusion several feet as Reppy fired five rounds.

25

Opinions Report of Darrell L. Ross, Ph.D.
Estate of Matthew Burroughs v. City of Niles, et al., No. 4:20-cv-00005-SL

In this incident, officer Mannella drew his firearm which was appropriate when he formed the perception that Mr. Burroughs presented an immediate threat to him. Having his firearm drawn placed him in a position of preparation to respond (which was required) to the threat of the car driven at him and decreased his overall response time as he would not have to take the time to unholster the firearm, acquire target acquisition, and fire, whereby increasing the response time. Officer Mannella maintained situational awareness, instructed Mr. Burroughs to stop, visually and cognitively processed the threat stimulus, attached meaning to the driving actions of Mr. Burroughs, formulated a strategy (Stages 1 &2), responded by moving while he fired three rounds, and stopped firing (Stage 3) within a total of approximately 3 seconds, further underscoring his training and experience.

Eighth, all three rounds fired by officer Mannella struck the front windshield and entered into the right pectoral area of Mr. Burroughs. From examining the windshield from the outside, the shot pattern traveled from the near center of the vehicle and the two other rounds progressed in a linear pattern toward the left aligning with the passenger side (see BCI Investigation Report and Ford Fusion Photos). The shot pattern aligns with officer Mannella reporting that he was moving as he fired three rounds in succession. Equally, the shot pattern is a testament to Mannella's training and shooting skills developed over 30 years of his law enforcement experience combined with his military experience of 22 years.

Ninth, under an extreme time-pressured survival stress event, such as a deadly force encounter as Mannella and the officers confronted, it is not uncommon for an officer not to be able to accurately calculate the speed of the actions of a dangerous subject, accurately calculate the speed of a moving vehicle driven directly at him, and determine the actual distance between the officer and various scene objects, including the subject. In a dynamic, fluid, and fast paced survival stress encounter with limited response time, experiencing fear of personal harm, and responding in order to survive the confrontation, an officer's vision would automatically narrow to focus on the threat, and potential errors in calculating time, distance, and speed of moving objects, are not uncommon. Surviving an immediate life-threatening event, the SNS would automatically activate the necessary hormonal response and internal organs to prepare the officer to proceed with responding and surviving the incident. As an officer is focused on the incoming threatening stimuli (car advancing at him), more attention is directed at the immediate threat and less attention is focused on the speed and distance of particular subject or object. Therefore, it is highly unlikely that an officer could attend to the immediate threat and then also measure with

accuracy and certainty the speed of a vehicle during a dynamic and rapidly unfolding shooting situation.

Tenth, in my opinion, a trained and experienced officer like officer Mannella would form the perception and belief that he was in an immediate threat of danger. Officer Reppy's BWC video and BCI photos provide the best incident evidence and showed that officer Mannella fired from a position in front of Mr. Burroughs' vehicle as it was steered at him. The front passenger side tire was turned toward and was near Manella's left leg. Mannella obviously would not be able to see whether the Fusion's brake lights were on or off as he fired. Mannella's vision was focused on the threat that Mr. Burroughs presented and his vision narrowed into the Fusion as he observed Mr. Burrough looking directly at him. Further, based on Mr. Burroughs reckless driving behaviors, of stopping and moving, stopping and moving toward Mannella over several feet, it would take more time for Mannella to detect change in Mr. Burroughs' actions with specificity when the car may be stopped or accelerating toward him. Mr. Burroughs could accelerate, brake, accelerate and brake faster than Mannella could distinguish between the two actions. Given the severely restricted response time previously described, Mannella fired his firearm as he moved believing that he was about to be struck by the moving Fusion.

Eleventh, irrespective of the speed of the Fusion, it posed a threat of great bodily harm to officer Mannella as it moved toward him. A moving motor vehicle striking an officer can cause serious bodily injury to the officer. Mr. Burroughs demonstrated that he was not going to stop and comply with Mannella's commands to stop and he was attempting to flee from the officers in order evade arrest. By continuing to drive at Mannella, Mr. Burroughs used the vehicle as a deadly weapon and created the risk of danger and jeopardized Mannella's personal safety. Mannella, like any reasonable officer facing the same set of facts, rightfully perceived that he would be stuck by the Fusion, that his life was in immediate peril, and shot in self-defense.

Twelfth, officer Hogan stated that he believed that had officer Mannella not fired his weapon, he would have been hurt pretty bad, the wheels would have rolled him over, he would have been thrown and he would have been hurt. As officer Reppy exited his patrol vehicle he observed Mr. Burroughs driving directly at Mannella and formed the same perception as Mannella, that he was about to be run over by the Fusion, drew his firearm, and fired five rounds in order to protect and stop the immediate threat to Mannella. In my opinion, based on the immediacy of the threat that Mr. Burroughs posed to officer Mannella, Reppy formed the same perception, recognized that the Fusion was close to Mannella, and he fired five rounds to stop the threat. Once the threat stopped,

Mannella stopped shooting. In my opinion, and within the totality of the circumstances, it was appropriate for officer Reppy to fire his firearm in accordance with his training and shot to defend Mannella who faced an immediate threat.

b. Response to Resistance/Firearms Policy

It has been alleged that officer Mannella failed to follow NPD's Response to Resistance/Firearms Policy. However, in my opinion this claim is unsupported. Two internal reviews performed by the NPD determined that the neither officer Mannella or Reppy violated the department's use of force policy or the training provided to them.

Pursuant to NPD policy the Firearms Review Board performed a review of the officer involved shooting. The Board unanimously determined that the actions of using deadly force by officers Mannella and Reppy were lawful and were within NPD's guidelines and policy (see Lt. Cox's report, 3/31/2019).

Moreover, NPD Captain Tony Johnson performed an internal review of the officer involved shooting. Captain Johnson concluded that officers Manella and Reppy were justified in firing their firearms as they were in immediate danger of being struck by the vehicle driven by Mr. Burroughs. Captain Johnson also concluded that neither officer Mannella or Reppy violated NPD Response to Resistance Policy/Firearms Policy and that they acted within the policy and training during the incident.

Captain Johnson did conclude that officers Mannella and Hogan failed to activate their BWC in violation of NPD policy. Officer Mannella reported that the incident occurred quickly, when he went to activate the BWC, it was not located on his uniform/body armor where he normally wears it, and that he was not able to activate the BWC until after the shooting (see Captain Johnson report).

Opinion

As described previously in opinion number 1, the use of force policy of the NPD had been certified and recertified by OCJS since 2017 as it met the established standards on deadly force. The standards provide that: *an officer may use deadly force to defend him/herself from serious physical injury or death; to defend another person from serious physical injury or death, or in accordance with the U.S. and Ohio Supreme Court decisions, specifically, Tennessee v. Garner (1985) and Graham v. Connor (1989).* From my review of the evidence in this case, the referenced NPD policies, sections 1.3; 1.4.1; Two, Three, and Four the officers and the State

standards on deadly force, I conclude that officer Mannella's and Reppy actions complied with the NPD policy within the totality of circumstances which they confronted. Irrespective of the policy components, a law enforcement officer may use force, including deadly force based on the officer's perception that he is in immediate risk of serious bodily injury or death and may shoot to defend himself and/or shoot in defense of another person/officer. Further, as I would expect, after the shooting, officer Mannella radioed for emergency medical services, which was appropriate.

14.    *Opinion 5        The Ohio Bureau of Criminal Investigation (BCI) performed an investigation of the incident*

As I would expect, the BCI performed the investigation into the incident at the request of NPD Police Chief Jay Holland. Chief Holland contacted the BCI on January 2, 2019. Special Agent Cory Momchilov responded and conducted the investigation and was assisted by other BCI agents. On March 18, 2019, Momchilov filed a completed report of the investigation and submitted it to Trumbull County Prosecutor Dennis Watkins (see report and accompanying documents, reports, interviews, and photos).

Prosecutor Dennis Watkins reviewed the investigation report, convened a Grand Jury, and the Grand Jury declined to indict any officer for the death of Mr. Burroughs. Moreover, Prosecutor Watkins agreed with the Grand Jury's decision and decided that prosecution was unwarranted (Watkins Report, Pgs. 29, 34). Mr. Watkins concluded in his report: "*that there is substantial evidence showing the Matthew Burroughs on January 2, 2019, intentionally and repeatedly in a continuing course of conduct actively resisted his arrest and attempted to evade his arrest by flight by using his automobile in such a threatening or deadly manner wherein Niles Police officers reasonably believed that they were required to use deadly force and use their weapons to defend themselves from being seriously injured or killed by Burroughs*" (Pg. 34).

In my opinion, it is common for an external investigation to be requested and conducted in a majority of Officer-Involved Shootings. The common practice was followed in this incident and the investigators performed an adequate investigation. As a result, there were no criminal charges filed against the officers.

Further, two years after the incident, and after a professional incident investigation by the BCI, after the Grand Jury reviewed the facts of the incident and decided not to indict the officers, Trumbull County Prosecutor Watkins deciding that prosecution was unwarranted, and after two internal reviews by the NPD of the shooting which did not find a policy or a training violation by either officer Manneall or officer Reppy for their use of deadly force, plaintiff's counsel has

Opinions Report of Darrell L. Ross, Ph.D.
Estate of Matthew Burroughs v. City of Niles, et al., No. 4:20-cv-00005-SL

postulated a theory of excessive force. Plaintiff's expert has offered a reversed engineered computer model after the fact to support the excessive force allegation. Computer models are not real world and application to actual facts, events, and dynamic circumstances can be fraught with numerous errors. For example:

> Designing a computer model without being provided with the specific locations of officers Mannella or Reppy, the specific location of the Fusion, and how it moved before and after the shooting fails to support a theory that the officers used excessive force;

> Reversed engineering information to fit a faulty theory after the fact represents a hindsight analysis which is contrary to the principles for assessing an officer's decision to use deadly force;

> Designing a computer model in the sanitized and non-stressful confines of a lab or office, does not account for the circumstances and the environment under which the officer was operating at the time, and cannot replicate with specificity the incident environment conditions;

> A computer model cannot accurately replicate the specific reckless and dangerous driving movements of Mr. Burroughs, the accuracy of the speed of the Fusion as it was driven toward Mannella, cannot account for the fact that cannabis was in Mr. Burroughs' system, and cannot replicate Mr. Burroughs' intent and mindset of eluding, steering, fleeing, and driving his vehicle toward officer Mannella;

> A computer model may be designed over several hours or days in order to make an assumption about an officer's decision to shoot and fails to account for the on-the-spot/and at the moment decision to shoot, performed under stress, in which the officer had mere seconds to make a decision to shoot in self-defense;

> A computer model fails to account for the associated human factors that emerge prior to, during, and after an extreme survival stress split-second decision-making encounter where the officer feared for his life and another officer feared for the safety of a fellow officer;

> A deadly force confrontation occurring in the street requires an officer to see, hear, perceive and perform multiple tasks simultaneously with limited response time, which cannot be replicated and assessed in a computer model;

> A computer model fails to account for an officer's mindset and perception of surviving an immediate threat and decision making involved in a street encounter involving a life and

Opinions Report of Darrell L. Ross, Ph.D.
Estate of Matthew Burroughs v. City of Niles, et al., No. 4:20-cv-00005-SL

death situation and such a dynamic, stressful, rapidly evolving encounter is more
complex than what can be designed in a lab;

➢ A computer model fails to account for other on scene trained and experienced officers
forming the perception that Mannella was in immediate danger and decided to shoot;

➢ There is a high likelihood numerous other individuals or groups replicating the process
would produce totally different results; and

➢ It is impossible to perform an experiment of the shooting incident which accurately,
reliably, and specifically replicates and includes all of the totality of circumstance
variables and conditions, and conclusions made on such an experiment are erroneous.

15.    Conclusion

Officer Mannella did not have the luxury of leisurely reflection and the time to ponder the
threatening actions of Mr. Burroughs. Mannella did not have the luxury of time to fully assess the
threatening actions of Mr. Burroughs and he could only respond. Indeed, this threatening situation
underscores that officer Mannella had to literally make a split-second decision in a rapid, tense,
dangerous, and rapidly evolving situation. Officer Mannella did not actually have to be struck
first by the Fusion prior to shooting in self-defense. There was not time for hesitation. Hesitation
by law enforcement officers in the past have ended up in their death or serious injury.

Officers are trained to shoot to stop the threat and to stop shooting with the threat stops. Once the
threat stopped, Mannella stopped shooting as I would expect. I conclude that Mannella fired his
firearm in accordance with his training, experience, and shot in self-defense. Officer Mannella
followed acceptable and legitimate police practices when he fired at the Fusion which was driven
at him representing a deadly weapon. Moreover, I conclude officer Reppy formed the perception
that officer Mannella was in immediate serious threat of bodily injury and fired his firearm to
protect Mannella, which was appropriate.

Respectfully submitted by:

*Darrell L. Ross, Ph.D.*          May 1, 2021

Opinions Report of Darrell L. Ross, Ph.D.
Estate of Matthew Burroughs v. City of Niles, et al., No. 4:20-cv-00005-SL

References

Artwhol A and Christensen, L.W. (2019). *Deadly force encounters* (2nd Ed.). LWC Books.

Baldwin S, Bennell C, Anderson JP, Semple, T and Jenkins, B (2019, Oct.). Stress-activity mapping: Physiological responses during general duty police encounters. *Frontiers in Psychology*, 10:1-17.

Blair JP, Pollock J, Monatgue D, Nichols T, Curnutt J & Burns J (2011). Reasonableness and reaction time. *Police Quarterly*, (14) 4: 323-343.

Breedlove HW (2013). Tactical vision. Presentation at the tactical strength and condition conference, Virginia, Beach, VA.

Cannon WB (1929). *Bodily changes in pain, hunger, fear, and rage*. Appleton, NY.

Easterbrook J (1959). The effects of emotion on cue utilization and the organization of behavior. *Psychological Review*, 66: 187-201.

Green M (2013). Drive reaction time. *Visual Expert Human Factors*, 1-7.

Green M (2011). Inattentional blindness and conspicuity, *Visual Human Factors*, 53:1-6.

Groer, M Murphy, RL, Bunnel W, et al. (2010). Salivary measures of stress and immunity in police officers engaged in simulated critical incident scenarios. *Journal of Occupational and Environmental Medicine,* 52 (6): 595-602.

Hoing A and Lewinski WJ (2008). A survey of the research on human factors related to lethal force encounters: Implications for law enforcement training, tactics, and testimony. *Law Enforcement Executive Forum*, 8: 129-152.

Hontz TA (2000). Justifying the deadly force response. *Police Quarterly*, 2 (4):462-476.

Jason, A (2010, January). Shooting dynamics: Elements of time and movement in shooting incidents. *Investigative Sciences Journal*, 2 (1): 1-19.

Kandel ER (2006). *In search of memory*. WW Norton and Company Publisher, NY.

Kavanagh, EL (2006). A cognitive model of firearms policing. *Journal of Police & Criminal Psychology*, 21 (2):25-36.

LeDoux JE and Pine, DS (2016). Using neoscience to help understand fear and anxiety; A two system framework. *American Journal of Psychiatry*, 173: 1083-1093.

LeDoux J (1996). *The emotional brain.* Simon and Schuster, NY.

Lewinski W, Hudson WB & Dysterheft JL (2014). Police officer reaction time to start and stop shooting: The influence of decision-making and pattern recognition. *Journal of Law Enforcement Executive Forum*, 14 (2):1-16.

Lewinski W & C Redman (2009). New developments in understanding the behavioral science factors in the "stop shooting" response. *Journal of Law Enforcement Forum,* 9 (4):35-54.

Lewinski W (2008). The attention study: A study on the presence of selective attention in firearms officers. *Journal of Law Enforcement Executive Forum,* 6:107-139.

Lewiniski, W (2000). New developments in understanding the psychological factors in the stop shooting response. *Force Science Institute,* 1-14.

Lovall, WR (2016). *Stress and Health: Biological and psychological interaction,* Sage, Los Angeles.

Miller L (2020). *The psychology of police deadly force encounters: Science, practice, and policy.* Charles C. Thomas, Publisher.

Ratey, JJ (2001). *A user's guide to the brain.* Patheon Books, NY.

Ross DL and Murphy RL (2018). Stress, distortions, and human performance (Chp. 4). In Ross. DL & Vilke, GM (eds.) *Guidelines for investigating officer-involved shootings, arrest-related deaths, and deaths in custody.* Routledge Publisher

Ross DL, Murphy RL, & Hazlett MH (2012). Analyzing perceptions and misperceptions of police officers in lethal force virtual simulator scenarios. *Journal of Law Enforcement Executive Forum,* 12 (3) 53-73.

Ross, DL and Siddle. BK (2003). An analysis of the effects of survival stress in police use of force encounters. *Law Enforcement Executive Forum,* 3 (2) 9-26.

Sapolsky, R (2004). *Why zebras don't get ulcers* (3rd ed.). St Martin's Press, NY.

Schmidt, RA & Wrisberg, CA (2000, 2nd Ed.). *Motor learning and performance: A problem-based learning approach.* Human Kinetics, Champaign, IL.

Seyle, H (1959). *The stress of life.* McGraw Hill, NY, NY.

Sharps MJ (2017, 2nd Ed.). *Processing under pressure: Stress, memory and decision-making in law enforcement.* Looseleaf Law Publications, Inc., Flushing, NY.

Schwartz JM & Begley S (2003). *The mind and the brain.* Harper and Perninal Publisher, NY.

Vickors, JN (2007). *Perception, cognition and decision training: The quiet eye in action.* Champaign, IL: Human Kinetics Publishers.

Opinions Report of Darrell L. Ross, Ph.D.
Estate of Matthew Burroughs v. City of Niles, et al., No. 4:20-cv-00005-SL

(5/21)

## CURRICULUM VITAE OF
## DARRELL L. ROSS, Ph. D.

### EDUCATION:

Michigan State University
150 Administration Building
East Lansing, Michigan 48824-1046

**Ph. D.** Higher Education Administration
Dissertation: *An Analysis of Citizen
Resisting in Policing*. June, 1992.

**Master of Science**, Criminal Justice;
Correctional Administration and minored in
Criminal Justice Education. Thesis submitted
on: *Decision-Making in the Use of Non-
Deadly Force in Corrections*. March, 1987.

**Bachelor of Arts** in Criminal Justice and
minored in Psychology, 1978.

Lansing Community College
Lansing, Michigan 48914

**Associate of Arts** in Criminal Justice, 1976.

Harvard University, Kennedy School of Government
Cambridge, MA

Executive Leadership/ Management Programs
(May - October, 1999)

### HIGHER EDUCATION EXPERIENCE:

**August 2010 to present:**

**Professor, Department Chair, and Director of The Center for Applied Social Sciences**; Department of Sociology, Anthropology, and Criminal Justice, Valdosta State University, Valdosta, GA. Responsible for 18 faculty, 500 students (3 UG & 2 Grad programs), 6 GAs, 10 department budgets, scheduling courses, teaching courses, personnel issues, evaluating, hiring and promotion of faculty & staff, enrollment management, curriculum development, department executive committee, internship program, accreditation responsibilities of two graduate programs, strategic planning, collecting, assessing and reporting departmental data, and all other administrative duties of the Department. I am a member of the Graduate Faculty, a member of VSU's Executive Administrative Team, and I serve on numerous College and University committees. I supervise graduate students and serve on doctoral and thesis committees in the department and in the College. I serve on the USG Chancellor's Campus Police/Pubic Safety Advisory Board and the Use of Force Policy and Training committees.

**(August, 2006 to June 2010) The School of Law Enforcement and Justice Administration, Western IL University, Macomb, IL, Professor & Director:** Was responsible for 40 faculty and staff members, 2000 undergraduate and 120 graduate students, five extension sites, 4 advisors, 10 GAs, 2 TAs, and the internship program. Additionally, I was responsible for the three department budgets, course curriculum/scheduling, strategic planning, recruiting, hiring, retention and evaluating faculty, program assessments, all departmental committees, teaching courses, implementing the employment contract, enrollment management, student scholarships, and collecting, assessing, and reporting departmental data, and director of the Applied Institute of Criminal Justice Studies. I was a member of the Graduate Faculty, and member of WIU's Administrative Team.

**Department of Criminal Justice, East Carolina University, Greenville, NC** (1992-2006), **Professor & Director of Forensic Sciences,** (Chair of the Program from 1999 to 2002). Instructed 12 courses in criminal justice to undergraduate and graduate students, conducted research, supervised and advised thesis

1

students, and served on various departmental, college, and university committees. As Chair, I assisted in developing and managing the Master's Program and I was the Director of the Forensic Science program. I was a member of the graduate faculty.

**Ferris State University (1985 to 1992), Criminal Justice Institute** Big Rapids, MI.
Hired in an administrative position as the Technical Assistant Coordinator of the Institute and my responsibilities included:

1. Provided technical assistance, training, continuing education, research, consulting services and wrote grants for a myriad of criminal justice agencies, for both line level and administrative personnel on a local/national basis. Provided program assessments for Criminal Justice programs.

2. Certified State of Michigan (MCOLES) instructor in Police Defensive Tactics, Instructed Defensive Tactics, Physical Conditioning, Arrest and Control Tactics, Human Relations/Crisis Intervention, Human Factors, & Response to the Mentally Ill in the police academy. I was certified as an instructor by the State of Michigan in the Jail Training Academy (now MSCTC).

3. Instructed academic criminal justice courses; Correctional Theory and Practice, Correctional Offenders, and Juvenile Delinquency. Supervised and advised student interns. Designed and implemented the curriculum for five academic core correctional courses for correction officer certification as required by the Michigan Correction Officer Training Council.

4. Instructed courses in Correctional Theory and Practice and Juvenile Delinquency as an adjunct instructor from 1979 to 1984.

**Adjunct Instructor**:

1. **North Carolina Justice Academy Salemburg, NC** (1994-2001). Provided instruction in a 40 hour "Non-Lethal Force" course for police officers statewide. Also provided certification for instructors in various PPCT defensive tactics courses.

2. **Law Enforcement Management Institute** (1994-2006): Assisted in developing a 200-hour Executive Police Management course and provided training to line level & police administrators in a variety of management subjects, Wilson Community College, Wilson, NC.

**Lansing Community College**: Criminal Justice/Law Center, Lansing, Michigan

Instructed the course, "Introduction to Corrections," Fall, 1985.

**Jackson Community College**: Criminal Justice Program, Jackson, Michigan

Instructed courses in Criminology, Parole and Probation, and Stress Management in Corrections, 1979 to 1982.

## FIELD EXPERIENCE (1973 to 1985)

A. **Michigan Department of Corrections (1981 to 1985)** Training Academy--Lansing, MI 48914
Hired as a Human Resource Developer to instruct and develop training programs for all levels of departmental employees and MI Sheriff Departments. My responsibilities included:

1. Researching and writing training programs such as: Stress Management, Legal Issues for Correctional Personnel, The Criminal Justice Process, Report Writing, Physical Wellness and Fitness Program for new recruits, and managing client caseloads for parole/probation agents.

2

2. Additional training programs presented:  Defensive Tactics and Use of Force, Custody and Security Issues, Riot & Tactical Team Training, Crisis Intervention, Prisoner Behaviors, Absconder Team Training, Managing Problem Employees, Suicide Awareness, Crime Investigations, Responding to the Mentally Ill Prisoner, Management/Supervision Training, and Investment in Excellence,

B. **Michigan Department of Corrections** (1979 to 1980)
   Circuit Court Probation: Jackson, Michigan: Probation Agent and responsibilities included:
   1. Investigation of and writing of pre-sentence investigation reports.
   2. Caseload management of over 100 probationers

   Served on the Director's task force to investigate the riots at the State Prison of Southern MI (June/July, 1980).

C. **Michigan Department of Corrections (1976 to 1979)**
   State Prison of Southern Michigan (SPSM)
   4000 Cooper Street- Jackson, Michigan

   Resident Unit Manager of a 500-man cell block, with16 officers, 2 assistants, and 2 psychiatrists. The unit was considered a "Special Protective/ Psychiatric Unit." The housing unit contained mentally impaired prisoners and protective custody prisoners. My supervisory responsibilities included: providing security management functions, maintenance of security, custody, treatment, and discipline of prisoners, classifying prisoners for custodial housing, working closely with psychologists for psychologically impaired/suicidal prisoners, writing parole eligibility reports and working with Parole Board, conduct disciplinary hearings, and answering first-step prisoner and employee grievances.

   Correctional Specialist (1973 to 1975), duties included: Supervising prisoners in housing units, prisoner and facility searches, custodial and security functions, transporting prisoners, and working various custodial assignments.

**CERTIFICATIONS, AWARDS, BOARD MEMBER:**

Feb. 2020-prst.  Editorial Board Member, *Law Enforcement Executive Forum Journal* (Macomb, IL)

September 2019  Advisory Board Member, Integrated Use of Force Options, Charleston, IL

October 2019  Bola Wrap Instructor certification, Las Vegas, NV

March 2018  TASER, CEW Instructor certification, AXON Enterprise, Scottsdale, AZ

March 2018  TASER Evidence and Collection Analysis certification; AXON Enterprise, Scottsdale, AZ

July 15-prst.  Advisory Board Member University of GA System Campus Public Safety (Campus Police) and the Advanced Police Academy, GA Board of Regents, Atlanta, GA

October 13  Inducted into The Wall of Fame, Distinguished Alumni Award, School of Criminal Justice, Michigan State University, East Lansing, MI

June 11-prst.  Certified Law Enforcement Instructor by GA Peace Officers Standards and Training Council.

March 09  Awarded The Best Practices Award by PRIMA, for the development of a training program on "Sudden Deaths In Custody," with Dr. Ted Chan, for MMRMA, Livonia, MI.

August 06  Awarded Department "Scholar of the Year" by the East Carolina University Department of Criminal Justice.

April 04  Awarded the "Scholar/Professor of the Year" by the Chancellor's Office, East Carolina U.

3

November 02      Advisory Board member for Law Enforcement Training Network (LETN), Carrollton, TX.

September 01/02  Advisory board member for Caliber Press, Street Survival, Carrollton, TX.

July 2000        Awarded the "Excellence in Leadership Award," by the Pressure Point Control Tactics Mgt.
                 Systems, Millstadt, IL.

December 1997    Awarded the "Outstanding Criminal Justice Professor Award," by the North Carolina Criminal
                 Justice Education Association.

December 97/98   Advisory Board Member for *Police Marksman*, Montgomery, AL

September 1997   International Who's Who of Professionals

July 1997        Board of Trustees: National Law Enforcement Credentialing Board, Columbus, OH

1996/1999        Advisory Board Member for Safe Restraint Inc., Walnut Creek, CA.

1989-present     Advisory Board Member/Assistant Director/Director of Research of Pressure Point Control
                 Tactics Management Systems, Inc., Belleville, Illinois (PPCT). Past Editor of the Training and
                 Information Journal. Certified to instruct at the instructor and instructor trainer levels in:

                 1. Pressure Points            2. Cell Extractions        3. Use of Force Human Factors
                 4. Impact Weapons             5. Knife Defense           6. Neck restraints
                 7. Violent Patient Management 8. Defensive Tactics       9. Special Operations Tactics
                 10. Handcuffing/restraints    11. Use of Force Decision Making
                 12. Weapon Retention          13. Ground fighting (GAGE)

1987-1988        PPCT Instructor Trainer - Certified to instruct all components of PPCT Defensive Tactics.

1986 -1987       PPCT Basic Instructor in Pressure Points and Defensive Tactics.

1986-1992        State certified Defensive Tactics Instructor, by the Michigan Law Enforcement Officers Training
                 Council (POST). Served as an assessor in defensive tactics for various police academies.

1981-present     Certified Jail Instructor, Michigan Correction Officer Training Council. Certified to instruct:
                 Correctional Law, Custody & Security, Suicide Awareness, Prisoner Behavior, Defensive Tactics,
                 Report Writing, Booking, Intake and Classification, Stress Management, and Crisis Intervention.

1982 to 1986     Law Enforcement Training Associates Inc., Los Angeles, CA, Crisis Intervention Instructor.

Certified to provide law enforcement training in: GA, MI, NC, MS, IL, KS, OH, CO, TN, TX, and FL

## Professional Development

I routinely attend professional development seminars in:
         Higher Education and Criminal Justice Higher education
         Policing and Corrections
         Legal, Liability Issues & Employment law
         Expert Witnessing
         Use of Force issues (Non-Deadly and Deadly Force)
         Arrest-Related Deaths
         Police Subject Control Techniques and the Use of Restraints
         Human Factors
         Police practices/procedures & training issues
         Forensics

## PUBLICATIONS AND RESEARCH

### Books

1. *Civil Liability Issues in Criminal Justice, 7th ed.* (May, 2018), Routledge Publishers. Contracted to revise 8th edition (8/21).

2. *Guidelines for investigating, officer involved shootings, arrest related deaths, and custodial deaths*; (July, 2017); co-author, Gary Vilke, MD; Taylor & Francis/Routledge Publisher.

3. *Sudden Deaths In Custody*, co-author Ted Chan, MD, Humana Press, Totowa, NJ (2006).

4. *Liability Issues in Corrections*, Carolina Academic Press, Durham, NC. (2005).

5. *Introduction to Corrections in Michigan.* Correctional Consultants Inc., publishers, Jackson, Michigan, (1989).

### Monographs/Book Chapters

1. Book chapter in progress: Assessing trends in law enforcement assaults and injuries; *Police Victimology*, IGI Global Press

2. Assessing TASER® Conducted Energy Weapons, Arrest Related Deaths, and Emerging Liability Trends (March, 2017). ***Research Gate,*** #DOI-10.13140/RG.2.2.29211-26409 (co-author M. Brave, JD).

3. Book Chapter: Prevention and Training, in M. J. Palmiotto (Ed.) *Police Use of Force: Important Issues Facing the Police and the Communities They Serve*, (Chapter 10; pp. 169-184) (2016, August); Sergevnin, V. & D. L. Ross, CRC Press, Taylor and Francis Publisher.

4. Book chapter: Section 1983 and Liability Issues for Criminal Justice Personnel (Chapter 15, pgs. 201-220); in *Current Legal Issues in Criminal Justice*, 2nd ed. (2014) ed. by Craig Hemmens, Ph.D., Oxford Press.

5. Sudden Deaths in Correctional Custody (July, 2013), *Federal Penitentiary Institute Encyclopedia*, Samara Law Institute, St. Petersburg, Russia, No. 692, pp. 338-445.

6. Chapter 1: What we Know About Police Use of Force: Dispelling the Myths, Special Edition Monograph *of The Journal of Law Enforcement Forum,* pp.1-29 (December, 2011).

7. Chapter 4: Liability for failing to train and police use of force," Special Edition Monograph of the *Journal of Law Enforcement Forum*, pp. 59-79 (December, 2011).

8. " Correctional Administration and Section 1983 Liability Issues," a chapter in *Handbook of Criminal Justice Administration,* Marcel/Decker Publishers, NY, pp. 319-342 (September, 2000).

9. "Use of Force Policy Development and Implementation," *Use of Force: Current Practice and Policy*, by Craig Hemmens, J.D., Ph. D., American Correctional Association, Landham, MD (December, 1999).

10. "The Problem of Custodial Deaths in Prisons and Jails." *Correctional Institutions In Michigan*, Correctional Consultants, Jackson, Michigan (December, 1988).

### Articles Under Review

Officer-involved shootings after electrical weapon loss—*Journal of Forensic and Legal Medicine*

**Published Journal Articles**

1. Civil liability issues associated with non-firearms arrest-related deaths (April 2021). *GA Association of Chiefs of Police Magazine* (Spring, 2021 ed.); 38-41.

2. Risk factors associated with excited delirium syndrome and arrest-related deaths (January, 21). *GA Association of Chiefs of Police Magazine* (Winter, 2021 ed.):58-62.

3. Assessing the liability issues associated with police response to the naked subject (2020, March); co-author Michael Brave JD, *Journal of Law Enforcement Executive Forum*, 20 (1):1-21.

4. Kroll MW, Brave M, Kleist S, Ritter M, Ross DL, & Karch S (2020, Jan.). Prolonging the prone postulate: Letter to the Editor, *American Journal of Forensic Medicine and Pathology*, 1-2.

5. Examining the liability issues associated with prone restraint deaths in detention (2019, May). *Forensic Research & Criminology International Journal*, 7(3): 109-118.

6. Kroll MW, Brave M, Kleist S, Ritter M, Ross DL, & Karch S (2018, Dec.). Applied force during prone restraint: Is officer weight a factor? *American Journal of Forensic Medicine and Pathology*, 1-7.

7. Assessing trends in CEW applications in corrections (Nov. 2018). *Criminal Law Bulletin;* Vol. 54, #6: 1383-1405.

8. Reviewing civil liability in corrections and operationalizing risk management, *Criminal Law Bulletin* (August, 2018); 54, 4: 973-991.

9. Assessing the symptoms associated with excited delirium syndrome and the use of conducted energy weapons (June, 2018). *Forensic Research and Criminology International Journal*, 6 (3):187-196. [co-author, Michael Hazlett, Ph.D.].

10. Administrative Liability Issues Associated with Correctional Tactical Response Teams, *Criminal Law Bulletin* (June, 2018); 54 (3): 731-748.

11. Assessing deadly force liability decisions and human factors research (2018, March). *ILEETA Journal*, Vol. 8, (1): 35-38.

12. *Taylor v. Barkes*: Liability Issues and Custodial Suicides (December, 2017). *Criminal Law Bulletin*, Vol 53 (6): 1283-1304.

13. Reviewing the Prisoner Litigation Reform Act (August, 2017). *Criminal Law Bulletin,* Vol 53 (4): 849-865.

14. An Analysis of Section 242 Prosecutions and Sentencing Trends: 1997-2015. (June, 2017). *Criminal Law Bulletin,* 53 (3): 569-589.

15. Assessing the trends in the application of Civil Rights of Institutionalized Persons Act (CRIPA) in prisons and jails: 2000 to 2014, (December, 2016). *Criminal Law Bulletin*, 52 (6): 1720-1741.

16. Examining *Kingsley v. Hendrickson*: Ending the "Twilight Zone," (June, 2016), *Criminal Law Bulletin*, 52:818 837.

17. An analysis of the outcomes of violent prone restraint incidents in policing (January, 2016). *Forensic Research and Criminology International Journal*, 2 (1): 1-10 (co-author, Michael Hazlett, Ph.D.).

18. *Plumhoff v. Rickard*: Clarifying the use of deadly force and qualified immunity (2015, June). *Criminal Justice Review*, 40 (2): 244-257.

6

19. Assessing the Trends in Qualified Immunity (2015, May) *ACJS Today*, 14 (3):14-20.

20. Probable Cause and the Sniff Factor: A Review of *Florida v. Harris* and *Florida v. Jardiness, Criminal Justice Review* (September, 2013), 38:412-422.

21. Assessing Lethal Force Liability Decisions and Human Factors Research, *Journal of Law Enforcement Forum*. (July, 2013) 13: 85-107.

22. Analyzing Perceptions and Misperceptions of Police Officers in Lethal Force Virtual Simulator Scenarios (October, 2012). *Journal of Law Enforcement Forum*, 12 (3): 53-73 (co-authors, R. Murphy & M. Hazlett, Ph.D.)

23. *Messerschmidt v. Millender*: Expanding Probable Cause and Restricting Liability (September, 2012) *Criminal Justice Review*, 37 (3):416-427.

24. Best Practices in Police Use of Force Training, *Journal of Law Enforcement Forum* (2012, March) 146-157, (co-author, Vladimir Severginin, Ph.D.).

25. Legal Issues and Risk Management for Department Chairs. *The Department Chair*, Vol. 22, No.2, 14- 19 (Fall, 2011).

26. Expanding the Confrontation Clause and Testimonial Hearsay Statements: *Michigan v. Bryant*, (September, 11), *Criminal Justice Review*, 36: 375-386 (co-author Fred Knowles, Ph.D.)

27. *MD v. Shatzer*: Revisiting Re-interviewing After Invoking Miranda's Right to Counsel, *Criminal Justice Review*, (September, 2010), 35: 371-385 (co-author Jill Myers, JD).

28. Book Review: C. Tartaro and D. Lester (2010). *Suicide and Self Harm in Prison and Jails*. Lexington Books, Lanham, MD. *Criminal Justice Review*, Vol. 35, #2:253-255, (June, invited).

29. The Liability Trends of Custodial Suicides (March/April 2010). *American Jails*, 37-47. Re-printed as: Legal Liability Trends for Correctional Suicides, *Corrections & Mental Health*: National Institute of Corrections, (July 2012)—article reprinted in *American Jails* (April, 2017).

30. The Use of Force, Science, Liability, and Restraint Asphyxia (March, 2010). *Journal of Law Enforcement Forum,* 10:35-56.

31. Virtual Training Systems and Survival Humanistic Factors Research Study (2009). *Interservice/Industry Training Simulation and Education Conference*, paper, No 91916, pp. 1-10 (Co-author R. Murphy).

32. Officer Safety Trumps Passenger Privacy: *Arizona v. Johnson* (2009, September). *Criminal Justice Review,* 34:468-481, (co-author, Jill J. Myers, JD).

33. Policing by Consent Decree: An Analysis of 42 U.S.C. Section 14141 and the New Model for Police Accountability, *Police Practice & Research, An International Journal,* (2009, June) 3:199-208 (co-author, Patricia Parke)

34. *Scott v. Harris*: Seeing is Believing (Sept., 2008). *Criminal Justice Review*, 33:431-446.

35. Assessing Detainee Resistance and Detention Officer Use of Force in Michigan Jails (2008). *Journal of Law Enforcement Executive Forum*, 8:412-431 (July).

36. An Analysis of Civil Liability and Sudden In Custody Deaths in Policing (2007). *Journal of Law Enforcement Executive Forum* (7) 1:7-30.

37. A Risk Management Assessment of the Claims, Losses, and Litigation of Police Agencies in Michigan: 1985 to

1999 (2006), *International Journal of Police Strategies and Management,* Vol. 29, No.1, 38-57 (co-author Madhava Bodapati, Ph.D.).

38. The Liability Issues of Restraint Deaths in Detention," *Criminal Law Bulletin,* (Dec. 05).

39. A Content Analysis of Forty Years Worth of Use of Force of Studies in Policing (2005). *Journal of Law Enforcement Executive Forum*, 5:121-148.

40. Reviewing Hudson v. McMillian Ten Years Later, *Corrections Liability Reporter*, (April/May, 05).

41. Assessing *Hudson v. McMillian*: Ten Years Later, *Criminal Law Bulletin*, (Sept./Oct. 04), pp. 501-517.

42. Essay: Review of 3 books on "Police Misconduct and Ethics in Policing," (autumn, 2003). *Journal of Criminal Justice Policy Review*, pp. 382-395 (invited).

43. The Impact of Survival Stress in Police Use of Force Encounters (May, 03), *Journal of Law Enforcement Executive Forum*, V3/N2, pp. 9-25 (co-author, Bruce K. Siddle).

44. Jail Liability: Reducing the Risk by Studying the Numbers," *American Jail Magazine* (Jan/Feb, 03) co-author Bill Page.

45. Ground Fighting: Assaults on Police Officers, *Caliber Press Street Survival Newsline*, No. 630 (Jan. 03) Co-authored with Mark Dunston.

46. An Assessment of Loses, Claims, and Liability Issues in Michigan Police Departments, *Legal Defense Journal* (Fall, 02).

47. An Assessment of Graham v. Connor, Ten Years Later, *Policing, Intl. Journal of Police Strategies & Management,* Vol. 25, No. 2, (June, 02).

48. Examining the Liability Issues of Custodial Restraint Deaths, *Legal Defense Journal* (Fall, 01).

49. Assessing Custodial Deaths in Jails, *American Jail Magazine, AJA,* (12/01), pgs. 13-25.

50. Emerging Trends in Police Failure to Train Liability, *Policing: An International Journal of Police Strategies and Management* (July, 2000).

51. Examining the Liability Factors of Sudden Death Wrongful Deaths in Police Custody, *Police Quarterly*, Police Executive Research Forum (PERF) Publishers, (December, 1999).

52. Editor and contributed two chapters to Pressure Point Control Tactics Instructor Manual, *Inmate Control Tactics*," PPCT Publications, Milldstadt, IL (June, 1999).

53. Assessing the Patterns of Citizen Resistance During Police Arrest, *FBI Law Enforcement Bulletin,* (June, 1999).

54. Factors Associated with Excited Delirium Deaths in Police Custody, *Modern Pathology* (11/98).

55. Comparing the Recidivism Rates of Boot Camp Graduates and Electronic House Arrest Offenders, *Criminal Justice Policy Review, (*Spring, 1998) (Co-authored Mark Jones, Ph. D).

56. In-Custody Deaths: Assessing Section 1983 Liability Issues. *Police Marksman*, May/June, 1998.

57. A Study of the Risk Factors Associated with Sudden Deaths in Police Custody, *Police Marksman*; 11/12/97.

58. Examining Less-Than-Lethal Force Training Since the *Canton* Decision, *Police Marksman,* (May/June, 1997) (Co-author Mark Jones, Ph. D).

59. Decision-Making and the Police Force Continuum, *PPCT Internet Training Publications,* (June/97).

60. Emerging Trends in Correctional Civil Liability Cases: A Content Analysis of Federal Court Decisions of Title 42 United States Code Section 1983: 1970-1994," *Journal of Criminal Justice* (Dec., 1997).

61. What Matters?, What Works?: Recidivism Among Probationers in North Carolina, *Perspectives* (June,1997); also reprinted in *Annual Editions, Criminology,* 1998/99, co-authored with Mark Jones, Ph. D.

62. A Comparison of the Recidivism Rates Between Bootcamp Participants and Regular Probation in North Carolina, *American Journal of Criminal Justice* (Nov '97) (co-author Mark Jones, Ph. D).

63. The Medical Implications and Training Recommendations Concerning OC, *International Use of Force Journal,* (November, 1997) (co-author Bruce Siddle).

64. A Twenty-Five Year Analysis of Section 1983 Jail Litigation, *Corrections Compendium,* January, 1997.

65. Examining the Liability Concerns of Suicides in Youthful Detention Facilities, *Journal of Juvenile Justice and Detention Facilities* (Spring, 1997).

66. Book review: The Equip Program: Teaching Youth to Think and Act Responsibly Through a Peer Helping Approach, by John C. Gibbons, Grandville, Bud Potter and Arnold P. Goldstein, *The Journal of Juvenile Offender Treatment Programs, (*1997).

67. Examining the Administrative Liability Issues of Correctional Tactical Teams, *American Jails*, (11/96).

68. Assessing Prisoner Assaults on Correction Officers, *Correction Compendium*, (August, 1996).

69. Supervisory Liability Concerns For Special Tactical Units, and a book review of *SWAT Teams,* by Robert L. Snow, *Police Marksman,* (July/August, 1996).

70. Assessing the Frequency of Less-than-Lethal Force Training For Police Officers, *Journal of Contemporary Literature in Criminal Justice,* (August, 1996) (co-author Mark Jones).

71. Analyzing the Most Common Types of Resistance in Police/Citizen Encounters, *International Use of Force Journal,* (May, 1996).

72. An Analysis of In Custody Deaths and Positional Asphyxiation, *Police Marksman*, (March, 1996).

73. A Twenty Year Analysis of Section 1983 Litigation in Corrections. *American Jails,* (May/June 1995).

74. Sudden Death Syndrome in Police Custody. *PPCT Training and Information Journal*, March, 1994.

75. Tactical Considerations. *PPCT Training and Information Journal*, (Nov., 1993).

76. Analyzing the Police Use of Force and Citizen Resistance During Police Arrest and Use of Force Issues In Corrections, *PPCT Training and Information Journal*, (May, 1993).

77. A National Analysis of Prisoner Assaults on Correction Officers (1993).

78. Identifying Citizen Resistance During Police Arrest*, PPCT Publications*, Millstadt, IL, (June, 1992).

79. Study Examines Non-Deadly Force Physical Force Policies, *Corrections* Today, (July, 1991).

80. Focus on Correctional Officer Assaults, *PPCT Training and Infor. Jour.* (Nov. 1989).

81. An Analysis of Educational Requirements for Correctional Officers for Entry Level and Promotion -Is It Necessary?  In the inaugural edition of the *Yearbook-of Correctional Education,* a co-publication of the International Education Association and Simon Fraser University, Canada, (May, 1989).

82. A Model Policy on the Use of Non-Deadly Force in Corrections: Based on a Comprehensive Analysis of Correctional Non-Deadly to Corrections in Michigan. Force Policies Nationwide. Published by *PPCT Publications,* Millstadt, Illinois, (1989).

**PoliceOne.com Publications**

1. "Liability and Restraint Asphyxia" (10/10)
2. "The Science & Human Studies on Restraint Asphyxia" (2/10)
3. "Assessing Contextual Cues and Human Factors in Police Use of Lethal Force Incidents," (2/08)
4. "Recent Medical Studies Hail the Safe Use of Conducted Energy Weapons," (11/07)

**CorrectionsOne.com Publications**

1. Examining Custodial Suicide Liability Trends in Confinement Facilities (11/10)
2. "Officer Safety, Liability, and Prisoner Transports," (3/09)
3. "Detention Officers Use of Force in MI Jails," Part II (8/08)
4. "Analyzing Detainee Resistance in MI Jails," Part I (7/08)
5. "The Use of Restraints in Detention and Lessons Learned," (2/08)
6. "A Review of the *Hudson v. McMillian* Decision; Ten Years Later," (12/07)
7. "Lessons Learned From Death in Detention by Alcohol Intoxication," (10/07)

**Training Manuals/Curriculum**

1. Contributed chapter on Excited Delirium, OH State Training Academy, for the OH Attorney's General Office, Columbus, OH (November, 2010).

2. Instructor manual entitled: "Sudden In-Custody Deaths," Michigan Municipal Risk Management Authority, Livonia, MI (co-author, Ted Chan, M.D., 2006/revised 2010).

3. Chapter on "Use of Force Research in Policing" for the *Pressure Point Control Tactics Defensive Tactics Instructor Manual,* PPCT Management Systems, Inc, Publications, Millstadt, IL, (1995).

**RESEARCH IN PROGRESS:**

1. Assessing trends in law enforcement assaults and injuries (contracted book chapter)

2. Arrest-related deaths in law enforcement

3. Human Factors research in LE

4. Use of force options transitioning

**MANUSCRIPT AND BOOK REVIEWER**

Editorial Board Member: *Law Enforcement Executive Forum Journal*

Review articles/books for: Journal of Forensic and Legal Medicine, Journal of Medicine, Science, and the Law, Journal of Criminal Justice Review, Journal of Criminal Justice, Criminal Law Bulletin, American Journal of Criminal Justice, Pecos Press, Anderson Publishing Company, Journal of Crime and Justice, Carolina Academic

Press, Modern Pathology, Journal of Contemporary Criminal Justice, and Journal of International Policing. Reviewer and member of the Technical Advisory Committee for the *Canadian Police Research Centre*.

**PROFESSIONAL TRAINING ACTIVITIES**:

| | |
|---|---|
| July 21 | On the program to provide training on: Strategies for mitigating use of force liability; GA Association of Chiefs of Police training conference, Savannah, GA (invited) |
| June 21 | Scheduled to provide training on: Custodial death investigations; Maricopa County Sheriff's Office (invited) |
| May 21 | Presented: Use of force options transitioning; Panel member on use of force options; AELE conference on Use of Force, Las Vegas, NV (invited, peer reviewed, & certified by NV POST) |
| March 21 | Provided training on: Developing a comprehensive use of force system: Law enforcement administrators. Co-presented with Randy Means. |
| March 21 | Provided training on: Supervisory liability issues, for the Harris County Sheriff's Office (Huston, TX) Command Personnel (invited) |
| January 21 | Provided training on: Risk management in jails and supervisor liability, AELE seminar on Jail and Prisoner Legal Issues seminar, Las Vegas, NV (invited & certified by NV POST) |
| January 21 | Provide training webinar on: Developing a comprehensive use of force system: Law enforcement administrators; sponsored by Randy Means & Associates |
| October 2020 | Provided training webinar: Policy Development, Implementation, Maintenance, Monitoring, Evaluating, and Revision in Policing and Corrections, AELE, Las Vegas, NV |
| September 2020 | Provided training video on" Examining Violent Prone Restraint Incidents in Policing, for the Public Safety Discipline and Internal Affairs Investigations virtual seminar, AELE, Las Vegas NV |
| June 2020 | Provided training webinar on: Examining Violent Prone Restraint Incidents in Policing, AELE, Las Vegas, NV |
| March 2020 | Provide training on: police policy development and liability issues, for the GA Campus Police Chiefs annual conference, Cordele, GA (GA POST & GA Police Chiefs certified) |
| January 2020 | Provided 16-hours of training on: understanding and managing arrest-related deaths, at Valdosta State University; Co-presenter Michael Brave, JD (GA POST & GA Police Chiefs certified) |
| October 2019 | Provided training on: Assessing the liability trends associated with police response and naked subjects, and Dissecting use of force civil litigation at the Injury Prevention and In-Custody Deaths seminar, Las Vegas, NV (co-presenter Michael Brave, JD) |
| March 2019 | Provided training on: Patterns of officer and civilian injuries during arrest, at the annual ILEETA conference, St. Louis, MO (co-presenter Michael Brave, JD) |
| February 2019 | Provided training on: Human Factors and Lethal Force Liability Decisions, at the annual CJAG conference, Valdosta State University, Valdosta, GA (GA POST certified) |
| September 2018 | Provided training on: Guidelines for investigating arrested-related deaths, officer involved-shootings, and human factors for MS Chiefs Association, Ocean Springs, MS. |

| | |
|---|---|
| March 2018 | Presented training on: Developing a Use of Force System in Law Enforcement for Law Enforcement Supervisors, Georgia Technical Institute University Police Department, Atlanta, GA (GA POST certified). |
| March 2018 | Presented research/training on: Deadly Force Liability Decisions and Human Factors, at the ILEETA annual training conference, St. Louis, MO (Co-Presenter, Michael Brave). |
| November 2017 | Provided training on: (a) Field Research on the Outcomes of Violent Restraint Incidents in Policing; and (b) Analyzing CEW Usage, Excited Delirium, and Emerging Liability Issues at the annual Injury Prevention and In-Custody Deaths seminar, Las Vegas, NV (invited). |
| | Provided 12 hours of training: IA Critical Incidents From Every Angle; Labor Relations Information Systems, Las Vegas, NV (panel member). |
| October 2017 | Presented 4 hours of training: Managing Use of Force and Liability Reduction; University of GA System campus law enforcement chiefs training conference, Valdosta State University, Valdosta, GA (GA POST certified) |
| October 2017 | Presented 2 hours of training: Emerging Liability Trends in Taser Arrest-Related Deaths, at the annual CJAG conference, Valdosta State University, Valdosta, GA (GA POST certified) |
| August 2017 | Provided 4 hours of training: Administrative Liability Issues for Correction Tactical Teams, TN Corrections Institute, Facility Training Officer Program, Pidgeon Forge, TN (invited). |
| June 2017 | Provided 4 hours of training: Officer Involved Shootings and Associated Human Factors for Command Personnel, Region 1 GA Police Chiefs Association, Tifton, GA (GA POST certified, invited). |
| March 2017 | Presented 4 hours of research: Liability Trends in Taser Arrest-Related Deaths, annual ILEETA conference, St. Louis, MO (co-author, Michael Brave). |
| December 2016 | Co-presented 8 hours of training: Critical Incident Analysis, Officer-Involved Shootings for LE Commanders, Human Factors, and 8 hours of Arrest-Related Death Investigations for LE Commanders, for Topeka, KS Police Department Command Staff (w/Randall Murphy). |
| November 2016 | Provided 12 hours of training: IA Critical Incidents From Every Angle; Labor Relations Information Systems, Las Vegas, NV (panel member). |
| Aug-Sept. 2016 | Co-presented 8 hours of patrol officer training: Use of Force Liability Issues, Human Factors, and Use of Force Policy and Report Writing, Topeka, KS [275 officers] (w/Randall Murphy). |
| July 2016 | Co-presented 16 hours of supervisory training: Use of Force Liability and Policy Issues; Topeka, KS Police Command Personnel, Topeka, KS (w/Randall Murphy) |
| June 2016 | Presentation to the Oregon Chiefs of Police, Sheriff's, and Prosecutor's Association Legislative Committee on Body Worn Cameras: Human Factors, Officer Involved Shooting Investigations, and Body Worn Cameras, Salem, OR (6 hours invited) |
| June 2016 | Presented research on Restraint Asphyxia Update: Science and the Law, at the MI Sheriff's Association Summer Training Conference, Grand Rapids, MI (invited) |
| May 2016 | Presented 8 hours of Liability Issues Update for LE Administrators and 4 hours of Emerging Leadership Issues for the Police Executive; Region 1, GA Chiefs of Police Association training conference, Valdosta, GA PD (GA POST certified) |

| March 2016 | Co-presented 4 hours of training: Arrest-Related Custodial Deaths Investigations, ILEETA annual conference, Chicago, IL (co-presenters, Michael Brave & Mark Kroll, Ph.D.) |
|---|---|
| March 2016 | Provided 3 hours of training: Managing Use of Force and Liability Reduction: A Chief's Imperative; University of GA System campus law enforcement chiefs training conference, McCrae, GA (GA POST certified) |
| May 2015 | Presented 4/4-hour training blocks: Administrative Liability Issues in Law Enforcement; Designing a Use of Force System; Critical Incident Analysis, & Policy Implementation, Monitoring and Evaluation. So. GA Chiefs Association conference, VSU, Valdosta, GA; (GA POST & GA Chiefs certified). |
| November 2014 | Provided 12 hours of training on IA: Critical Incidents From Every Angle; Labor Relations Information Systems, Las Vegas, NV (invited & panel member). |
| October 2014 | Provided 8 hours of training on the Administrative Implications on Violent Prone Restraint Incidents, Excited Delirium, and Sudden Deaths In-Custody, for the So. MS Chiefs of Police Association, Ocean Springs, MS (invited, MS POST certified). |
| September 14 | Provided 8 hours of training on IA: Critical Incidents From Every Angle; Labor Relations Information Systems, Portland, OR; OR Association of Chiefs of Police (invited & panel member). |
| July 2014 | Presented 4 hours of training on research on The Administrative Implications of Violent Prone Restraint Incidents, Excited Delirium, and Sudden Deaths In Custody at the GA Association of Chiefs of Police Annual Summer Training Conference, Savannah, GA (Invited; GA POST certified). |
| June 2014 | Provided 3 hours of training on Stress, Human Factors, and the Intuitive Learning Method for Teaching Responses to Simulated Lethal Force Encounters, at the International Association of Directors of Law Enforcement Standards and Training annual conference, Destin, FL (invited) |
| May 2014 | Provided 16 hours of training for the Battle Creek, MI PD command personnel on Designing a Use of Force System: Policy, Training, Reporting, Liability, Investigations, Implementation, & Monitoring, Battle Creek, MI |
| April 2014 | Provided 8 hours of training on the Administrative Implications on Violent Prone Restraint Incidents, Excited Delirium, and Sudden Deaths In-Custody, at the Region One GA Chiefs conference, Valdosta State University, Valdosta, GA (GA POST certified) |
| November 13 | Provided 12 hours on IA: Critical Incidents From Every Angle; Labor Relations Information Systems, Las Vegas, NV (invited & panel member). |
| October 2013 | Provided 8 hours of training on "Liability Issues for Failing to Supervise, Failure to Train and Deficient Policies for Law Enforcement Executives," Region One Chiefs of Police, Valdosta State University (GA POST certified course & GA Chiefs course credits). |
| July 2013 | Provided 8 hours training: "Use of Force Liability Issues, Science, and Human Factor Research. Provided 8 hours training: "Protocols for Investigating Sudden Deaths In-Custody;" Region One Chiefs of Police, Valdosta State University (GA POST certified courses). |
| May/June 13 | Provided 2, 8 hour courses on Critical Issues in Personnel Management and Employee Discipline, for the Cordele, GA Police Department and the Crisp County Sheriff's Department, Cordele, GA (GA POST certified). |

| | |
|---|---|
| March 2013 | Provided training to Region One Chiefs of Police: Risk Management for Police Executives (8 hours) and Critical Issues in Personnel Management and Employee Discipline (8 hours), Valdosta State University (GA POST certified courses). |
| November 2012 | Provided 12 hours on IA: Critical Incidents From Every Angle; Labor Relations Information Systems, Las Vegas, NV (invited & panel member). |
| November 2012 | Provided 8 hours of training on: Law, Science & Human Factors Impacting Officer Involved Shooting Investigations, Region One Chiefs of Police Council, Valdosta State University (GA POST certified course). |
| August 2012 | Provided 8 hours of training on: Law, Science & Human Factors Impacting Officer Involved Shooting Investigations, Region One Chiefs of Police Council, Valdosta State University (GA POST certified course). |
| July 2012 | Provided 8 hours of training on: Protocols for Investigating Sudden Deaths In-Custody; Region One Chiefs of Police Council, Valdosta State University (GA POST certified course). |
| March 2012 | Provided 8 hours training on: Human Factors, Science, and the Use of Lethal Force in Policing and 4 hours on Administrative Liability Issues for the GA Chiefs of Police Regional Conference, Valdosta, GA (invited, GA POST certified course). |
| August 2011 | Provided 8 hours of training on: The Use of Force, Science, Liability, and Sudden Deaths In Custody, for the Laurens County Sheriff's Department, Laurens County Prosecutor's Office, and Dublin Police Department, Dublin, GA (invited; GA POST certified course).<br><br>Provided 8 hours of training on: Critical Issues for Law Enforcement in Testifying in Court, Region One Police Chiefs Council, Valdosta State University (GA POST certified course). |
| July 2011 | Provided 8 hours of training on: Protocols for Investigating Sudden Deaths In-Custody; Region One Chiefs of Police Council, Valdosta State University (GA POST certified course). |
| June 2011 | Provided 8 hours of training on: Use of Force & Sudden Deaths In-Custody; Region One Chiefs of Police Council, Valdosta State University (GA POST certified course). |
| March 2011 | Provided 8 hours of training on: Administrative Liability, Science, and Extreme Encounters in Law Enforcement, Region One GA Chiefs of Police Council, Valdosta, GA (invited & GA POST certified). |
| December 2010 | Provided 8 hours of training on: Science, Liability, Sudden Deaths In Custody, and Administrative Implications, for Ingham County Sheriff's Department Command Staff, Okemos, MI (invited). |
| October 2010 | Provided 16 hours of training on: Liability, Science & Human Factors Impacting Officer Involved Shooting Investigations & Sudden In-Custody Death Investigations for the IL State Police Investigators and Attorney's General attorneys, IL State Police Academy, Springfield, IL (invited; IL Law Enforcement Training and Standards Board certified). |
| August 2010 | Provided 8 hours of training on: The Law, Science & Human Factors Impacting Officer Involved Shooting Investigations & Sudden In-custody Death Investigations for the IL Law Enforcement Executive Institute, IL Law Enforcement Training and Standards Board certified, Rockford, IL Police Department (invited). |
| July 2010 | Provided 8 hours of training for Quincy, IL Mobile Training Unit on: Use of Force, Science, Law, Human Factors, & Sudden Deaths In-Custody, Quincy, IL Police Dept. (invited; IL Law Enforcement Training and Standards Board certified). |

| | |
|---|---|
| July 2010 | Provided 24 hours of PPCT Instructor certification and 16 hours of instructor re-certification for the Meijer Corporation, Lansing, MI. |
| June 2010 | Provided: 8 hours of training on: The Law, Science & Sudden In-Custody Death Investigations, and 4 hours on Human Factors and Officer Involved Shootings, State of WY Law Enforcement Academy, Douglas, WY (invited). |
| April 2010 | Provided 8 hours of training on: The Law, Science & Human Factors Impacting Use of Force & Sudden In-custody Death Investigations, IL Law Enforcement Training and Standards Board certified, Executive Inst., Peoria, IL |
| March 2010 | Provided 16 hours of training w/4 other trainers on Use of Force Summit: Critical Issues for Law Enforcement, IL Law Enforcement Training and Standards Board certified, Executive Inst., Rockford, IL |
| December 2009 | Provided 8 hours of training on: Management Strategies for Responding to the Violent Prone Officer, IL Law Enforcement Training and Standards Board certified, Executive Inst., Peoria, IL |
| August 2009 | Provided 8 hours of training on: "Assessing Legal Issues, Science, and Human Factors Impacting Use of Force Investigations & Sudden In-Custody Death Investigations, at the NC Internal Affairs Investigators Association training conference, Kill Devil Hills, NC (key note presenter & invited). |
| June 2009 | Provided 8 hours of Use of Force Investigations and Sudden Deaths In Custody, for Champaign, IL Police Department (invited; IL Law Enforcement Training and Standards Board certified). |
| | Provided 8 hours of Risk Management Strategies for Criminal Justice Administrators, for the IL Law Enforcement Training Standards Executive Institute (certified), Bloomington, IL. |
| May 2009 | Civil Liability Issues for Law Enforcement Administrators, Center for the IL Law Enforcement Training and Standards Executive Institute (certified), Elmhurst, IL Police Department (16 hours). |
| October 2008 | Provided one-day training on "Assessing Custodial Deaths from Tasers, Pepper Spray and Positional Asphyxia, and the Use of Force, at the MI Field Training Officer conference, Mt. Pleasant, MI (key note presenter & invited). |
| September 2008 | Presented training on "Use of Force Issues in the Post 9/11 Era," at the Terrorism & Law Enforcement: Threats, Responses, and Policy Implications, WIU, Institute for Applied Criminal Justice Studies, Moline, IL (IL Law Enforcement Training and Standards Board certified). |
| February 2008 | Provided 16 hours of PPCT Instructor re-certification for Instructor Trainers, Tampa, FL. |
| November 2007 | Provided a 16-hour refresher instructor seminar on Sudden In-Custody Deaths, for Michigan Municipal Risk Management Authority, Mt. Pleasant, MI. |
| August 2007 | "Tasers, Positional Asphyxia, Excited Delirium and Investigations in Sudden In-Custody Deaths," for the FDLE High Liability Trainers, St. Augustine, FL (invited). |
| August 2007 | "Human Factors and Contextual Cues of Lethal Force Encounters in Policing," for PPCT Instructor Trainers, St. Louis, MO (invited). |
| June 2007 | Provided 24 hours of PPCT Instructor training for the Meijer Corporation, Lansing, MI. Provided 16 hours of PPCT Instructor re-certification training for Meijer, Lansing, MI. Executive Protection. |
| April 2007 | Provided training on "Contextual Cues and Human Factors Associated with Police Use of Lethal Force, at the annual ILEETA conference, Chicago, IL. |

| | |
|---|---|
| March 2007 | Conducted 16 hours of re-certification training for PPCT Instructor Trainers, Tampa, FL. |
| December 2006 | Conducted training at the ECU School of Medicine, Pathology Department: *Investigating Sudden Deaths in Custody,* Greenville, NC. |
| June 2006 | Conducted 24 hours of instructor training in "Sudden Deaths In-Custody," for Michigan Municipality Risk Management Authority, Traverse City, MI (co-presenter, Ted C. Chan, M.D.). |
| February 2006 | Conducted 16 hours of training in Managing Marginal LE Employees for the LE Mgt. Institute, Wilson, NC. |
| October 2005 | Conducted a 16-hours training on Risk Management and Supervisory Liability Issues for the LE Mgt. Institute, Wilson, NC. |
| September 2005 | Conducted a 3-day instructor course in a PPCT Ground Avoidance and Ground Escape (GAGE), NAVCON Brig, and police departments, Charleston, SC. |
| August 2005 | Conducted a 3-day instructor school in Pressure Point Control Tactics and Restraints for the NAVCON Brig, SC DOC, and police departments, Charleston, SC. |
| | Conducted a 3-day instructor school in Pressure Point Control Tactics and Restraints for Meijer, Inc., Lansing, MI. |
| June 2005 | Conducted a 3-day instructor school in PPCT Spontaneous Knife Defense for the NAVCON Brig and Corrections Corporation of America, San Diego, CA. |
| April 2005 | Co-presented 8 hours of "Testifying in Court," ECU, Greenville, NC. |
| March 2005 | Conducted 40 hours of PPCT Instructor Trainer training in defensive tactics, for the MI Department of Corrections & MI Jails, Lansing, MI |
| February 2005 | Conducted 16 hours of training on "Responding to the Marginal Police Performer," LE Mgt. Institute, Wilson, NC |
| January 2005 | Conducted 16 hours of training on "Supervisory Liability Issues & Risk Management," LE Mgt. Institute, Wilson, NC |
| December 2004 | Conducted 3 days of instructor re-certification in PPCT Defensive Tactics and 2days of instructor certification in PPCT GAGE course, Ingham County Sheriff's Dept., Lansing, MI. |
| November 2004 | Provided 16 hours of training in "Exercising Leadership In Criminal Justice Agencies," LE Mgt. Institute, Wilson, NC |
| October 2004 | Provided 4 hours of training on "Risk Management for Jail Administrators," High Point, NC. |
| August 2004 | Re-certified Pressure Point Control Tactics Instructors and certified Collapsible Baton Instructors, (3 days) for Meijer, Inc., Lansing, MI (Executive Protection). |
| August 2004 | Provided 4 hours of training on "Excessive Force Internal Investigations and Liability Issues," at the NC Internal Affairs Investigator's Association conference, New Bern, NC. |
| May 2004 | PPCT Regional Instructor re-certification conference & provided training in "Liability Issues in Use of Force and "Survival Stress in Use of Force Encounters," for CO LE Training Consortium Snow Mass, CO. |

| | |
|---|---|
| April 2004 | Conducted 2, 8 hour programs on the "Use of Force, The Mentally Ill, & Custodial Deaths in Detention Facilities," Pitt Community College, Greenville, NC. |
| March 2004 | Conducted a 40 hour PPCT Defensive Tactics Instructor course, NAVCON Brig, San Diego, CA. |
| | Conducted a 3-day PPCT Defensive Tactics Instructor re-certification course, Wilson, NC. |
| February 2004 | Provided 16 hours of "Liability Issues for Police Administrators" and 16 hours of "Managing the Problem Police Officer," LE Mgt. Institute, Wilson, NC |
| Sept. 2003 | Conducted 2 days of training on "The Myths & Realties of the Police Use of Force," Nash Community College, Law Enforcement Academy, Rocky Mount, NC. |
| June 2003 | Conducted 40 hours of Instructor training in Pressure Point Control Tactics, Impact Weapons, and Spontaneous Knife Defense, for the NAVCON Brig & SCDOC, Charleston, SC. |
| | Conducted 24 hours of Instructor training in Pressure Point Control Tactics for Meijer, Inc., Loss Prevention, Corporate Office, Grand Rapids, MI. |
| May 2003 | Conducted 40 hours of training in PPCT Instructor Trainers Defensive Tactics course, Washington, D.C., for the Threat Management Institute, Nashville, TN. |
| | Presented 16 hours of training in "Supervisory Civil Liability Issues and Risk Management Strategies for Law Enforcement Managers," Cape Fear Community College, Wilmington, NC. |
| | Presented 8 hours of "The Myths and Realities of Police Use of Force," James Sprunt Community College, Kenansville, NC |
| April 2003 | Presented 16 hours of training in "Supervisory Civil Liability Issues and Risk Management Strategies for Law Enforcement Managers," Nash Community College, Rocky Mount, NC |
| | Presented 16 hours of training in "The Myths and Realities of the Police Use of Force," and 8 hours of "Liability Issues Surrounding Internal Affairs Use of Force Investigations," Law Enforcement Management Institute, Wilson, NC |
| February 2003 | Presented 8 hours of training in "Supervisory Liability" to law enforcement and correctional administrators, at James Sprunt Community College, Keanansville, NC. |
| | Presented 16 hours of training in "Supervisory Liability" to law enforcement administrators, Law Enforcement Management Institute, Wilson, NC. |
| Jan. 2003 | Presented 16 hours of training in PPCT Impact Weapons for Meijer Loss Prevention, Grand Rapids, MI. |
| Dec. 2002 | Presented 8 hours of "Risk Management" to law and enforcement and correctional agencies at James Sprunt Community College, Kenansville, NC |
| | Co-taught 8 hours of "Testifying in Court." Ashville, NC. |
| October 2002 | Presented 8 hours of PPCT spontaneous knife defense for the MI Police Corps Academy, Ferris State University, Big Rapids, MI. |
| Sept. 2002 | Presented 16 hours of Risk Management and 16 hours of Leadership Strategies for the Law Enforcement Management Institute, Wilson, NC. |
| June 2002 | Presented 24 hours of PPCT Spontaneous Knife Defense Instructor program for NAVCON Brig, |

U.S. Marines, Navy, Air Force, U.S. Marshals, and private corrections, San Diego, CA.

Presented 16 hours of training in "Exercising Leadership In Criminal Justice Agencies, LE Mgt. Institute, Wilson Community College, Wilson NC.

| | |
|---|---|
| April 2002 | Presented 8 hours of training in "Liability Issues in SWAT Team Operations, LE Mgt. Institute, Wilson Community College, Wilson, NC<br>Co-presented an 8-hour course in "Testifying in Court," ECU, Greenville, NC. |
| March 2002 | Presented 16 hours of training in "Performance Modeling in Law Enforcement," LE Mgt. Institute, Wilson Community College, Wilson, NC |
| December 2001 | Presented 16 hours of "Supervisory Liability" training for law enforcement administrators, LE Mgt. Institute, Wilson Comm. College, Wilson, NC. |
| November 2001 | Presented 16 hours of "Risk Management" training for law enforcement administrators, LE Mgt. Institute, Wilson Comm. College, Wilson, NC. |
| October 2001 | Presented 3, 8 hour sessions of "Custodial Restraint Deaths," for Michigan Municipality Risk Management Authority (Livonia, MI) at Mt. Pleasant, Marquette, & Detroit, MI. Certified by MCOLES (Course # 200102). |
| June/Aug. 2001 | Provided 24 hours of Pressure Point Control Tactics Instructor training and 2 days of instructor re-certification training, Meijer Inc. Loss Prevention, Grand Rapids, MI. |
| May 2001 | Provided 40 hours of Instructor certification in PPCT "Inmate Control," (subject control tactics) for the NAVCON Brig, Corrections Corp., INS, U.S. Marshals, the SD County Sheriff's Dept., and San Diego City Jail, San Diego, CA. |
| | Provided 24 hours of Instructor certification in PPCT for the NAVCON Brig, and Sheriff's Departments, Charleston, SC. |
| April/May 01 | Provided 4, 10-hour courses on "Emergency Response Team" training, Pitt County and Guilford County Sheriff's Departments, Greenville, NC. |
| April 2001 | Provided 8 hours of training on "Liability Issues Surrounding IA Investigations and Excessive Force," Southeast Regional Police Academy, Wilmington, NC. |
| March 2001 | Provided 16 hours of training on "Performance Modeling in Law Enforcement," for the LE Mgt. Institute, Wilson Comm. College, Wilson, NC. |
| February 2001 | Provided 8 hours of training on "An Assessment of the *Graham v. Connor* and *Canton v. Harris* Decision: Ten Years Later," for the Southeast Regional Police Academy, Wilmington, NC. |
| February 2001 | Provided 16 hours of Risk Management Training in Law Enforcement Agencies, for the LE Mgt. Institute, Wilson Comm. College.<br>Provided 8 hours training in "Supervisory Liability Issues in Law Enforcement," for the Beaufort Community College Police Academy, Washington, NC. |
| January 2001 | Provided 16 hours of training on "Supervisory Liability Issues in Law Enforcement," for the LE Mgt. Institute, Wilson Comm. College, Wilson, NC. |
| August 2000 | Provided 8 hours of training on "Liability Issues Surrounding IA Investigations and Excessive Force, LE Mgt. Institute, Wilson Community College, Wilson, NC. |

| | |
|---|---|
| July 2000 | Provided 4 hours training on "Sudden Deaths in Police Custody," Police CORPS, Ferris State University, Big Rapids, MI. |
| | Provided 24 hours of Pressure Point Control Tactics Instructor Training for Meijer Thrifty Acres, Inc., Grand Rapids, MI. |
| June 2000 | Provided 16 hours of training in "Risk Management and Supervisory Liability for LE Managers," for Law Enforcement Training Services, Ft. Myers, Florida PD, FL. |
| | Provided 8 hours of Pressure Point Control Tactics training for the NAVCON Brig, San Diego, CA. |
| May 2000 | Provided 16 hours of training in "Strategies for Responding to the Marginal Performer," for the Law Enforcement Management Institute, Wilson, NC. |
| May 2000 | Provided 16 hours of training in Exercising Leadership In CJ Organizations," for the NC Department of Corrections, Law Enforcement Management Institute, Wilson, NC |
| April 2000 | Provided 16 hours of training in "Risk Management and Policy Procedure Development," L. E. Mgt. Institute, Wilson Community College, Wilson, NC |
| | Provided 8 hours of training "Supervisory Liability" for NC Department of Corrections and local police departments, Beaufort Community College Police Academy, Washington, NC. |
| March 2000 | Provided 24 hours of instructor training in PPCT Spontaneous Knife Defense, Southeast Regional Police Academy, Wilmington, NC. |
| | Provided 16 hours of instructor re-certification in Impact Weapons, and Pressure Points, Wilson Community College Police Academy, Wilson, NC. |
| February 2000 | Provided 24 hours of instructor training in Pressure Point Control Tactics for the Air Force Police, NAV CON Brig, DOC of South Carolina, Charleston & Derrick County Sheriff Departments, and Charleston Hospital Police, at the Navy Brig Charleston, SC. |
| January 2000 | Provided 16 hours of police managerial training in "Supervisory Liability Issues," LE Mgt. Institute |
| December 1999 | Provided 16 hours of training in "Exercising Leadership in Policing," LE Mgt. Institute, Wilson, NC. |
| November 1999 | Provided 8 hours of training in "Sudden Deaths in Police Custody," for the NC Justice Academy Salemberg, NC. |
| August 1999 | Provided 16 hours of "correctional emergency response team" training for the Guilford Co. Sheriff's Department, Greensboro, NC |
| | Provide 16 hours of training in "Police Response to the Mentally Ill & Violent Offenders," Roebeson Community College Police Academy, Lumberton, NC. |
| June 1999 | Provided 40 hours of PPCT Defensive Tactics Instructor training for the U. S. Coast Guard, Counter Narcotics Unit and Tactical Law Enforcement Unit, Portsmouth, VA. |
| June 1999 | Provided 24 hours of PPCT Instructor training for Meijer, Inc., Grand Rapids, MI. |
| June 1999 | Provided 8 hours of training in "Cell Extractions" for the NC DOC and regional NC jails, for the |

19

Law Enforcement Management Institute, Wilson, NC

| | |
|---|---|
| April 1999 | Provided 8 hours of training on "Sudden Deaths in Police Custody," for the Police Corps Academy at Southern Mississippi University, Hattiesburg, MS |
| | Provided 8 hours of training in "Cell Extractions" for the North Carolina Department of Corrections and regional jails, Law Enforcement Management Institute, Wilson, NC |
| March 1999 | Provided 8 hours of training in "Cell Extractions" for the North Department of Corrections and regional jails, Law Enforcement Management Institute, Wilson, NC |
| | Provided 2, 16 hour programs on "Performance Modeling," for the New Brunswick, NJ PD, for Law Enforcement Training Services @ Rutgers University, NJ |
| February 1999 | Provided 16 hours of training on "Policy and Procedure Development," for the Law Enforcement Management Institute, Wilson, NC. |
| January 1999 | Provided 16 hours of training on Strategies for Responding to the Problem Employee in Law Enforcement," Law Enforcement Management Institute, Wilson, NC. |
| December 1998 | Provided 16 hours of training on "Risk Management for LE Managers" and "Liability Issues Surrounding Sudden Deaths in Police Custody," L E Management Institute, Wilson, NC. Provided 16 hours of training on "Liability Issues in Correctional Administration," Wilson, NC. |
| November 1998 | Provided 16 hours of training on "Liability Issues and the LE Manager," Law Enforcement Management Institute, Wilson, NC. |
| October 1998 | Provided 3, 8 hour training programs on "Sudden Death in Police Custody," for the Central West Law Enforcement Training Consortium, Ferris State University, Big Rapids, MI (course certified by State of MI., MCOLES). |
| October 1998 | Co-instructed "Issues Related to Testifying in Court," 8 hour program for Eastern Area Health Education Center, Greenville, NC. |
| September 1998 | Provided 2, 8 hour programs on "Sudden Death In Police Custody," for the Illinois Law Enforcement Training Association. |
| September 1998 | Provided a 8 hours on "Sudden Deaths in Police Custody," for the Coastal Plains Police Academy, Wilson. NC. |
| | Provided a 24 hour PPCT instructor course for the NAVCON Brig, Charleston, SC. |
| August 1998 | Conducted an 8 hour program, "Risk Management for LE Managers Coastal Plains Police Academy, Wilson, NC. |
| July/August 1998 | Conducted 2, 16 hour PPCT instructor re-certification courses for Meijer Inc., Grand Rapids, MI |
| May 1998 | Conducted a 24 hour PPCT Spontaneous Knife Defense Instructor course, for Coastal Plains Police Academy, Wilson, NC |
| | Conducted a 16 hour seminar on "Developing Policies and Procedures in Law Enforcement," LE Management Training Institute, Wilson, NC |
| April 1998 | Conducted a PPCT Defensive Tactics Instructor 24 hour re-cert course, for Costal Plains Police Academy, Wilson, NC. |

|  | Conducted an 8 hour course in Liabilities Issues Surrounding the Use of Force, Costal Plains Police Academy, Wilson, NC. |
|---|---|
| March 1998 | Conducted a 40 hour PPCT Defensive Tactics Instructor course for the South Eastern Law Enforcement Region, Fayetteville, NC. |
|  | Conducted an 8 hour course in "Responding to the Violent Prone Officer," Law Enforcement Management Training Institute, Wilson Community College, Wilson, NC. |
| February 1998 | Conducted a 16 hour course in "Risk Management & Liability Issues of Deaths in Police Custody," Management Training Institute, Wilson, NC. |
| December 1997 | Conducted a 16 hour course in "Police Response to the Mentally Ill, Coastal Plains Police Academy, Wilson, NC. |
| November 1997 | Conducted a 24 hour instructor course in PPCT Spontaneous Knife Defense, NAVCON Brig, Miramar, CA. |
| October 1997 | Conducted 16 hours of "Supervisory Liability Issues for Police Managers," for the Management Training Institute, Wilson, NC. |
| August 1997 | Conducted 16 hours of "Managing the Marginal Performer in Law Enforcement," for the Management Training Institute, Wilson, NC. |
| July 1997 | Conducted 2, 8 hour Pressure Point Control Tactics program for the Navy, Air Force and Marine Corp Brig, Miramar, CA. |
| May 1997 | Conducted a 16 hour instructor course in Special Operation Response Teams/Cell Extractions, for the Coastal Plains Police academy, Wilson Technical Community College, Wilson, NC. |
| May 1997 | Conducted a 40 hour PPCT Defensive Tactics Instructor course for the North Carolina Justice Academy Salemburg, NC. |
| April 1997 | Conducted a 16 hour PPCT Weapon Retention and Disarming Instructor course, for the North Carolina Justice Academy, Salemburg, NC |
| April 1997 | Conducted an 8 hour course on Liability Issues Surrounding Use of Force, for Wilson CC Police Academy, Wilson, NC. |
| April 1997 | Conducted a 24 hour PPCT Pressure Point Instructor course for Meijer Inc., Grand Rapids, MI. |
| March 1997 | Conducted a 24 hour PPCT Impact Weapon Instructor course for the Coastal Plains Police Academy, at Goldsboro NC, P.D. |
| February 1997 | Conducted an 8 hour training program on "Sudden Death in Police Custody," for the Southern Mississippi Law Enforcement Association, hosted by the Long Beach, MS police department. |
|  | Conducted a 16 hour Pressure Point Instructor re-certification course, hosted by the Goldsboro, NC police department. |
| December 1996 | Conducted a 40 hour PPCT Defensive Tactics Instructor course for the U.S. Coast Guard and a Navy Seal Team, International Training Division, Yorktown, VA. |
| October 1996 | Conducted a 24 hour Pressure Point Instructor course for the U.S. Navy & Air Force Brig and the South Carolina Department of Corrections, Charleston, SC. |

21

| | |
|---|---|
| August 1996 | Conducted 16 hours of management training in "Strategies for Responding to Problem Employees," Wilson Technical Comm. College, Wilson, NC. |
| | Conducted a 40 hour PPCT Defensive Instructor Course, Pitt CC Police Academy, Greenville, NC. |
| July 1996 | Conducted a 40 hour PPCT Defensive Tactics Instructor Course for police and military police, FTCC Fayetteville, NC. |
| | Conducted 2, 8 hour "Basic Pressure Point Control Tactics" courses for the Navy and Marine Corp. Brig, Miramar, CA. |
| May 1996 | Conducted 2, 8 hour programs in "Deaths in Police Custody," for police command personnel, Columbus, Ohio Police Department, Columbus, OH. |
| May 1996 | Conducted a 40-hour PPCT Defensive Tactics Instructor course at the North Carolina Justice Training Academy, Salemburg, NC |
| April 1996 | Conducted a 3-day Pressure Point Instructor course for the Meijer Corporation, Grand Rapids, MI |
| March 1996 | Conducted a 2-day PPCT Instructor program in "Weapon Retention," for the North Carolina Justice Training Academy, Salemburg, NC |
| February-March 1996 | Conducted 4, 8 hour programs in "Suicide Awareness" for the Pitt County Sheriff Department, Greenville, NC. |
| February 1996 | Conducted an 8 hour training program on "Special Operations Response Team", for the Sarpe County Sheriff Department, Omaha, NE. |
| | Conducted an 8 hour program on "Risk Management and Liability Issues for Law Enforcement Administrators," Wilson Police Academy, NC. |
| January 1996 | Conducted a 24 hour PPCT Impact Weapon Instructor school for the Fayetteville Technical Community College, Fayetteville, NC. |
| | Conducted an 8 hour training seminar for police command personnel on "Liability Issues for Police Supervisors," Coastal Plains Police Academy, Wilson, NC |
| December 1995 | Conducted a 4-hour course for the Charlotte, NC Command Personnel, in Use of Force Decision Making, Force Continuum, and Use of Force Policy Development. |
| October 1995 | Conducted an 8 hour seminar on "Deaths in Police Custody", for the Savannah, GA PD. |
| | Conducted 24 hours of Instructor training in PPCT "Spontaneous Knife Defense", for the North Carolina Justice Academy, Salemburg, NC. |
| October 1995 | Conducted 8 hours of training on "Special Operations Response Teams" for the North MS Law Enforcement Training Center, Tupelo, MS (SWAT team). |
| September 1995 | Conducted 40 hours of instructor training in PPCT Subject Control Tactics, Spontaneous Knife Defense and Cell Extractions for the Hong Kong Correctional Services, Hong Kong. |
| August 1995 | Conducted a 24-hour instructor course in Pressure Point Control Tactics for the North Carolina Justice Academy, Salemburg, NC. |

July/August 1995  Conducted 2, 3-day instructor courses in Pressure Point Control Tactics for Meijer Inc. Grand Rapids, MI & Dayton, OH.

July 1995   Conducted a 40-hour instructor course in PPCT Defensive Tactics for the North Carolina Justice Academy, Salemburg, NC (provided for State of NC certified defensive tactics instructors).

June 1995   Conducted a 24-hour PPCT Spontaneous Knife defense course for the Navy/ Marine Corp. Brig, Miramar, CA.

Conducted an 8-hour seminar on "Deaths in Police Custody" Lakeland Community College, Mantoon, IL (IL Law Enforcement Training and Standards Board certified).

Conducted an 8-hour seminar on "Deaths in Police Custody", for the Pitt Community College Police Academy, Greenville, NC.

May 1995   Conducted a 40-hour PPCT Defensive Tactics Instructor course at the Goldsboro, NC police dept.

April 1995   Provided an 8-hour seminar on "Deaths in Police Custody" for the Kansas City, KS police department and 25 other police departments.

April 1995   Provided 16 hours of managerial training for the Raleigh, NC police department on, Supervisor Liability and Leadership.

Provided 8-hours of training for the Coastal Plains Police Academy in Tactical Handcuffing and Weapon Retention. Also, conducted 16 hours of training for police managers in Managing the Problem Employee, Wilson, NC.

April 1995   Provided 4-hours of training for the NC Justice Academy in The Force Continuum, part of a 40 hour course on Subject Control, Salemburg, NC,

March 1995   Provided 8-hours of training in Liability Issues for Supervisors, Coastal Plains Police Academy, Wilson, NC.

Provided 24-hours of Instructor Training in "PPCT Knife Defense", Wilson, NC.

February 1995   Provided 24 hours of instructor training in Pressure Point Control Tactics, Coastal Plains Police Academy, Wilson, NC

February 1995   Provided 8 hours of training in Use of Force Liability Issues for police officers, Pitt Community College police academy, Greenville, NC

January 1995   Provided 4 hours of training for the NC Justice Academy on the Force Continuum and Use of Force Decision-Making, Salemburg, NC.

December 1994   Conducted 16 hours police manager training in Liability Issues and Leadership, Coastal Plains Police Academy, Wilson, NC.

November 1994   Conducted 4 hours of training for the NC Justice Academy on the Force Continuum and Use of Force Decision-Making, Salemburg, NC.

October 1994   Conducted 8 hours training on Leadership for Police Managers for Coastal Plains Police Academy, Wilson, NC.

October 1999   Team taught 40-hours of "Train-the-Trainer" course for law enforcement managers, through the Criminal Justice Institute, Ferris State University, Big Rapids, MI.

|  | Conducted 24 hours of Instructor training in Pressure Point Control Tactics for the Meijer Corporation, Grand Rapids, MI. |
|---|---|
| September 1994 | Conducted 8 hours of training on "Critical Issues for Police Trainers," Pitt Community College Police Academy, Greenville, NC. |
|  | Conducted 16 hours of training on "Police Response to the Mentally Ill", Coastal Plains Police Academy, Wilson, NC. |
| August 1994 | Conducted a 24 hour Instructor course on PPCT Impact Weapons for the NC Justice Academy, Salemburg, NC. |
|  | Conducted 8 hours of training in "Deaths in Police Custody", for the Northern Mississippi Law Enforcement Police Academy, Tupelo, MS. |
| July 1994 | Conducted a 40 hour PPCT Defensive Tactics Instructor course for the NC Justice Academy, Salemburg, NC. |
| June 1994 | Conducted 24 hours of  PPCT Spontaneous Knife Defense Instructor training, for the NC Justice Academy, Salemburg, NC. |
|  | Conducted 40 hours of PPCT Defensive Tactics Instructor training for the U.S. Marine Corp. and Navy Brig, Miramar, CA. |
| May 1994 | Conducted 16 hours of police management training in Liability Issues for Supervisors and Leadership, Coastal Plains Police Academy, Wilson, NC. |
| April 1994 | Conducted 24 hours of Instructor training in Pressure Point Control Tactics, Coastal Plains Police Academy, Wilson, NC. |
|  | Conducted 16 hours of Defensive Tactics for the Greenville, NC SWAT Team, high risk incidents. |
| March 1994 | Conducted 8 hours of training in "Risk Management for Police Supervisors", Coastal Plains Police Academy, Wilson, NC. |
|  | Conducted 24 hours of Instructor training in PPCT Impact Weapon, Pitt Community College Police Academy, Greenville, NC. |
| February 1994 | Conducted two, one day police training seminars for the Coastal Plains Police Academy, Wilson, NC: Liability Issues Surrounding the Use of Force and Tactical Handcuffing and Handgun Retention. |
|  | Conducted 16 hours of Special Tactical Response Team training for the Pitt County Sheriff's Department, Greenville, NC. |
| November 1994 | Conducted a 1-day training program on the Force Continuum and use of Force Decision-Making, for the N C Justice Academy, Salemburg, NC. |
| November 1993 | Conducted two, two-day Supervisor's Programs for the Coastal Plains Police Academy, Wilson, NC; Developing Policies and Procedures and Managing The Problem Police Employee. |
| October 1993 | Conducted one-day training of a 5 day Advanced Survival program on "Spontaneous Knife Defense," Coastal Plains Police Academy, Wilson, N.C. |

| | |
|---|---|
| August 1993 | Conducted a 24 hours of training for Jail Supervisors in the "Correctional Training Officer" program at the Ingham County Sheriff Department. |
| July 1993 | Conducted a 24 hour PPCT "Pressure Point Control Tactics Instructor Program" for the Meijer Cooperation, Grand Rapids, MI. |
| | Conducted a 40 hour PPCT "Defensive Tactics Instructor Program" for police officers, Ferris State University |
| June 1993 | Conducted 4 days of Pressure Point Control Training for the Pitt County Sheriff's Department-Detention Officers, Greenville, NC. |
| | Conducted 2 days training in Pressure Point Control Tactics, the U.S. Naval/Brig, Miramar, CA. |
| | Conducted a 40 hour PPCT "Defensive Tactics Instructor" course for the Pitt Community College Police Academy, Greenville, NC. |
| May 1993 | Conducted training in the PPCT Spontaneous Knife Defense course for the Pitt Community College Police Academy, Greenville, NC. |
| | Conducted a two-day re-certification in the PPCT Defensive Tactics Instructor's program for Michigan State certified instructors, Kalamazoo Valley Community College, Kalamazoo, MI. |
| April 1993 | Instructed one-day of a 5-day "Advanced Survival Training" for In-Service police officers; "Spontaneous Knife Defense". Coastal Plains Police Academy, Wilson, NC. |
| | Conducted training for police supervisors in "Leadership," "Supervisory Liability Issues" and Stress Management," for the Police Academy, Wilson Technical Community College, Wilson, NC. |
| March 1993 | Conducted training in the basic PPCT Spontaneous Knife Defense program for the Pitt Community College Police Academy, Greenville, NC |
| | Conducted training in the PPCT Spontaneous Knife Defense Instructor program for the Pitt Community Police Academy, Greenville, NC. |
| | Conducted a 24 hour course in PPCT Spontaneous Knife Defense Instructor program for the NC Justice Academy, Salemburg, NC. |
| February 1993 | Conducted training for police supervisors in "Leadership" and" Supervisory Liability Issues" and "Stress Management," for the Raleigh NC, Police Department. |
| November 1992 | Conducted training in the basic PPCT Spontaneous Knife Defense program for the Pitt Community College Basic Law Enforcement Training Academy, Greenville, NC. |
| | Conducted training for police supervisors in "Leadership" and "Supervisory Liability Issues," for the Police Academy, Wilson Community College, Wilson, NC. |
| July 1992 | Instructor for the Meijer Corporation Inc., Grand Rapids, MI, in a 3-day PPCT Instructor Program. |
| | Instructor for a 40-hour PPCT Defensive Tactics Instructor Program for Police Officers, Ferris State University, Big Rapids, MI. |
| | Training Consultant for the ACA the Federal Bureau of Prisons, New York City, 1-day seminar on "Team Building." |

25

May/June 1992    Instructor in a 5-day "Jail Administrator's Program," Ferris State University, Big Rapids, MI.

May 1992    Lead instructor in a 5-day, "Law Enforcement Executive Command Training," - Washtenaw Community College, Ann Arbor, MI.

April 1992    Instructor for the Michigan Department of Corrections. A 5-day and a 3 day PPCT Instructor Program in, "Defensive Tactics and Spontaneous Knife Defense," Lansing, MI.

Instructor in a 3-day PPCT Instructor Program in Impact Weapons. Schoolcraft Community College, Livonia, MI.

Instructor in a 5-day PPCT Defensive Tactics Instructor course-Michigan Department of Corrections Jail Training Division, Lansing, MI.

March 1992    Instructor in a 5-day PPCT Defensive Tactics Instructor course Alpena Community College, Alpena, MI.

February 1992    Instructor in a 3-day, "Spontaneous Knife Defense Instructor course Michigan Department of Corrections Jail Training Division, Lansing, MI.

February 1992    Instructor in a 1-day, "Suicide Awareness for Police and Correctional Personnel," and 1-day, "Liability Issues Surrounding the Use of Non-Deadly Force," for correctional and police personnel, Schoolcraft Community College, Garden City, MI.

January 1992    Instructor in a 1-day, "Liability Issues Surrounding Non-Deadly Force," and a 3-day, "PPCT Baton Instructor program"-Ingham County Sheriff Department, Mason, MI.

November 1991    Instructor in a 2-day PPCT Basic Defensive Tactics -Alpena MI, P.D.

October 1991    Instructor in a 2-day, "Police Policy and Procedure Development," program - Kentwood, MI Police Department.

Instructor in a 3-day PPCT, "Spontaneous Knife Defense Instructor," Ingham County Sheriff Department, Mason, MI.

Instructor in a 3-day PPCT, "Defensive Tactics Instructor Course," Michigan Department of Corrections, Jail Training Division, Lansing, MI.

September 1991    Instructor of a 2-day "Coaching and Leadership Enhancement," Bureau of Federal Prisons, Duluth, Minnesota. (consultant for ACA)

Instructor in a 5-day, "PPCT Pressure Point Spontaneous/ Knife Defense," instructor program - Florida Department of Corrections, Vero Beach, FL.

Conducted an 8 hour seminar, "Liability Issues in Non-Deadly Force,"  Schoolcraft Community College, Garden City, MI.

July 1991    Instructor in 3-day PPCT, "Spontaneous Knife Defense and Impact Weapon," instructor program NMU, Marquette, MI.

June 1991    Instructor in a 1-day, "Pressure Point Control Tactics," U.S. Navy Brig,  Miramar, CA

May 1991    Instructor in a 3-day, "Spontaneous Knife Defense" instructor course, Ferris State University, Big Rapids, Michigan.

26

|  | Lead instructor in a 5-day, "Jail Supervisor," course - Ferris State University, Big Rapids, MI. |
|---|---|
| May1991 | Instructor in a 5-day PPCT, "Pressure Point Control Tactics and Impact Weapons" instructor course, Florida, DOC Olustee, FL. |
| April 1991 | Instructor in a 3-day PPCT, "Spontaneous Knife Defense," instructor program, Washtenaw Community College, Ann Arbor, MI. |
| March 1991 | Instructor in a 3-day "Pressure Point Control Tactics and Impact Weapons," instructor course, Florida Dept. of Corrections, Vero each, FL. |
| February 1991 | Instructor in a 2-day, "Police Policy and Procedure Development program, Schoolcraft Community College, Garden City, MI. |
|  | Instructor in a 3-day, "Subject Restraint," re-certification instructor course, Meijer Inc., Grand Rapids, MI. |
| December 1990 | Instructor in a 1-day program on, "Liability Issues and Non-Deadly Force for Police Personnel," - Oakland County Sheriff Department, Pontiac, MI. |
| November 1990 | Instructor in a 5-day PPCT, "Defense Tactics" instructor course for police personnel - Northern Michigan University, Marquette, MI. |
| October 1990 | Instructor in a 1-day program on "Liability Issues and Non-Deadly Force for Police Personnel," Schoolcraft Community College, Garden City, MI. |
|  | Instructor in a 2-day, "Police Policy and Procedure Development course," Governmental Risk Managers Inc., Plymouth, Michigan. |
|  | Instructor in a 1-day, "Liabilities and the Use of Non-Deadly Force" for police personnel - Delta Community College, Saginaw, MI. |
| September 1990 | Instructor in a 3-day PPCT, "Spontaneous Knife Defense" Instructor course, Florida Department of Corrections, Vero Beach, FL. |
| July 1990 | Instructor in a 40-hour PPCT, Defensive Tactics Instructor course, for police personnel. Ferris State University, Big Rapids, MI (grant award). |
|  | Instructor in a 5-day PPCT, "Defensive Tactics Instructor course, for the Michigan Department of Corrections, Jail Division, Lansing, MI. |
| May 1990 | Instructor in a 5-day PPCT, "Defensive Tactics Instructor -Trainer course, "for the Dallas, TX PD and Dallas County Sheriff Department. |
| March 1990 | Instructor in a 1-day, "Liabilities and the Use of Non-Deadly Force" for police personnel - Schoolcraft Community College, Garden City, MI. |
| March 1990 | Instructor for a 3-day, "Defensive Tactics," instructor re- certification course for MI Department of Natural Resources Law Enforcement Division - Ferris State University, Big Rapids, MI. |
| April 1990 | Instructor for a 5-day PPCT, "Defensive Tactics Instructor course, Florida Department of Corrections, Mariana, FL |
| February 1990 | Instructor for a 1-day, "Suicide Awareness," program for jail and police personnel - Schoolcraft Community College, Garden City, MI. |

| | |
|---|---|
| January 1990 | Instructor for a 5-day PPCT, "Defensive Tactics," instructor course for police/correctional personnel Mecosta County Sheriff Department, Big Rapids, Michigan. |
| | Instructor in a 4-day, "PPCT Basic Defensive Tactics," course, for Oakland County Sheriff Department, Pontiac, MI. |
| November 1989 | Instructor for a 5-day PPCT, "Defensive Tactics," instructor course for police/correctional personnel Ferris State University, Big Rapids, MI. |
| September 1989 | Instructor for a 1-day, "Suicide Awareness," program for jail/ police personnel - Kalamazoo Dept. of Public Safety, Kalamazoo, MI. |
| July 1989 | Instructor for a 5-day, "Subject Restraint," instructor course for Meijer, Inc., Grand Rapids, MI. |
| May 1989 | Instructor for a 5-day, "Developing Instructional Strategies," course for potential trainers for Meijer Inc., Grand Rapids, MI. |
| | Instructor for a 2-day basic, "Pressure Point Control Tactics," course for police personnel, Northwestern Traffic Institute, Ypsilanti, MI. |
| February 1989 | Instructor for a 2-day basic, "Pressure Point and Impact Weapons" course for police personnel, Allegan County Sheriff Department, Allegan, MI |
| November 1988 | Instructor for a 2-day, "Problem Employee," seminar for the MI Department of Corrections - Sault Ste. Marie, MI. |
| | Instructor for a 1-day, "Suicide Awareness," program for jail/police personnel - Eastern Michigan University, Ypsilanti, MI. |
| October 1988 | Instructor for a 1-day, "Suicide Awareness," program for jail/police personnel - Eastern Michigan University, Ypsilanti, MI. |
| | Instructor for a 2-day, "Problem Employee," course for the MI Department of Corrections - Ionia, MI. |
| | Instructor for a 5-day PPCT, "Defensive Tactics," Instructor course for the Grand Rapids, MI Police Department. |
| June 1988 | Instructor for a 2-day, "Defensive Tactics," course for the U.S. Customs and Immigration and Border Patrol - Sault Ste. Marie, MI. |
| May 1988 | Instructor for a 2-day, "Policy and Procedure Development," for Police Command Personnel - Northwestern Traffic Institute Ypsilanti, MI. |
| | Instructor for a 1-day, "Enhancing Leadership for Police Managers," Northern Michigan University, Marquette, MI. |
| April 1988 | Instructor for a 2-day, "Problem Employee" seminar for police managers Schoolcraft Community College, Garden City, MI. |
| March 1988 | Instructor for a 5-day, "Defensive Tactics" Instructor course for MI Department of Natural Resources Law Enforcement Division, Ferris State University.  Designed this course for the DNR Instructor for a 1-day, "Suicide Awareness," program for police/ jail personnel - Eastern MI University, Ypsilanti, MI. |

February 1988    Instructor in the 160-hour jail training program. Taught 4 days of "Defensive Tactics," 2 days of "Correctional Law," 1 day of "Report Writing" and 1 day of "Suicide Awareness." - Mecosta County Sheriff Department, Big Rapids, MI.

Instructor of a 5-day PPCT, "Defensive Tactics," instructor course for police personnel -Smith and Wesson Training Academy, Springfield, MA,

Instructor in a 5-day, "Subject Restraint" instructor program and a 5 day "Developing  I Instructional Strategies," for Meijer Inc., Grand Rapids, MI.

November 1987   Instructed a 1-day, "Suicide Awareness," program for jail/ police personnel - Eastern MI University, Ypsilanti, MI.

October 1987    Instructor for 2-day, "Problem Employee," seminar for police managers, Ferris State University. Big Rapids, MI.

Instructor for the 160-hour jail training program. Taught 4 days of, "Defensive Tactics," 2 days of "Correctional Law," 1 day of, "Report Writing," and 1 day of, "Suicide Awareness" - Mecosta County Sheriff Department, Big Rapids, MI.

September 1987  Instructor for a 1-day, "Suicide Awareness," program for jail/police personnel, Eastern Michigan University, Ypsilanti, MI.

July 1987       Instructor for a 2-day, "Suicide Awareness," program for jail/police personnel, Eastern Michigan University, Ypsilanti, MI.

June 1987       Instructor in a 2-day, "Defensive Tactics," refresher program for police personnel - Ferris State University, Big rapids, MI.

May 1987        Instructor in a 2-day, "Defensive Tactics," refresher program for police personnel - Muskegon Community College, Muskegon, MI.

March 1987      Instructor in a 2-day, "Effective Manager," seminar for the MI Department of Corrections, Parole and Probation Division, Lansing, MI.

February 1987   Instructor for a 2-day, "Defensive Tactics" program for the U.S. Forest Service Law Enforcement Division - Cadillac, MI.

## CONSULTING ACTIVITIES:

Review policies/procedures for law enforcement and correctional agencies regularly (ongoing).

Provided pre-service physical agility testing for police applicants for the State of Illinois (06-10).

June 2020              Reviewed IA investigation for Valdosta State University Campus Police, Valdosta, GA

Jan-Dec. 20-21         Conducting research on use of force field applications for two years, Carol Stream, IL Police Dept.

January 2019           Reviewed an internal investigation of an officer-involved shooting of a dog, for the Battle Creek, MI Police Department, Battle Creek, MI

February 17            Reviewed the GA State University's Campus Police Use of Force Policy, BOR USG Public Safety Committee's policy review

|  | Wrote a 3-hour training program on De-Escalation Strategies for Law Enforcement, for the BOR UGS Public Safety (campus police) in-service training program (26 universities). |
|---|---|
| April to Dec.16 | Provided technical consulting assistance to the Topeka, KS Police Department on Implementing a Use of Force System, Use of Force Policies Development, Training, & Field Implementation. |
| July 15 to present | Committee member of the University System of GA Campus Safety Law Enforcement and Use of Force Development committee |
| Sept. 15 to Feb-16 | Provided technical consulting assistance to the Moultrie, GA Police Department on manpower analysis, shift scheduling, salary assessment, and dept. reorganization |
| March to June 14 | Provided technical consulting assistance to the Battle Creek, MI Police Department on Implementing a Use of Force System and Use of Force Investigations. |
| April to May 14 | Provided technical consulting assistance to the Champaign, IL Police Department on Conducted Energy Weapons policy development and implementation. |
| March to May 14 | Provided technical assistance to LAAW International, LLC: reviewed/edited Taser, Use of Force, Use of Lethal Force, & Force Report policies |
| April to June 13 | Provided external review, site visit, and submitted report for the Criminal Justice Program, Jacksonville State University, Jacksonville, AL. |
| April to June 13 | National Institute of Justice: Scientific and Technology Review Panel: review and provide assessment of 60 grant proposals, Washington, D.C. (invited). |
| June12–December 13 | Federal Law Enforcement Training Center, Glynco, GA; Research & Training on Pre-Assault Cues in Policing |
| July 12 | Provided updated information and edited revised curriculum on Sudden Deaths In Custody instructor program, for MMRMA, Livonia, MI. |
| May-June 12 | National Institute of Justice: Scientific and Technology Review Panel: *Reducing In-Custody Deaths*; reviewed and provided assessment of 16 grant proposals, Washington, D.C. (invited). |
| April-December 11 | National Institute of Justice: Member of the Technical Expert Working Group on Excited Delirium Deaths and Less-Lethal Technology, Seattle, WA (invited). |
| September-October 10 | State of Ohio Attorney's General Office (Columbus): assisted in developing and editing Sudden In-Custody Deaths training curriculum for the state training academy. |
| June 2010 | Contracted to provide updated research to MMRMA for the Sudden In-Custody Death instructor program, Gaylord, MI |
| August to September 09 | Assisted in the design of the ALARM series of training for IL Police Administrators, for the IL Law Enforcement Training & Standards Board, Springfield, IL. |
| January08-October 11 | Chief scientific researcher and consultant for the Meggitt Corporation (FATS/Caswell) on: "The Effects of Stress on Human Performance and Decision-Making During Police Use of Lethal Force," Suwanee, GA. |

| | |
|---|---|
| August-December 08 | Consultant to Missouri Attorney's General office and MO State Police regarding restraining violent arrestees and sudden in-custody deaths. |
| March-June 08 | Consultant to Champaign, IL Police Department and County agencies regarding "Sudden In-Custody Deaths" (Police, Detention Officer, & Health Care response: policy, practice training, and protocols). |
| September-November 07 | Developed an 8-hour training program addressing Sudden Deaths In-Custody for the Michigan Municipal Risk Management Authority, Livonia, MI |
| September-October 07 | Conducted an analysis for shift scheduling and patrol officer deployment for the Springfield, IL Police Department |
| August 07 | Reviewed the Taser policy for the Washtenaw County Sheriff's Department, Ann Arbor, MI. |
| April-June 07 | Provided technical assistance to the Queensland Police Service, Brisbane, Australia on Sudden In-Custody Deaths. |
| June 07 | Provided two published interviews with *Force Science News* (Mankato, MN) on research regarding "Contextual Cues and Human Factors Associated With the Police Use of Lethal Force," 2-part series (articles, #74 & #75). |
| April-May 07 | Consulted with Michigan Municipal Risk Management Authority, reviewed Use of Force Training materials. |
| January 07 | Submitted contract to study officer safety issues in policing with Insurance Program Managers Group, risk managers, St. Charles, IL. |
| December 05-June 06 | Grant to develop training curriculum on Sudden In-Custody Deaths and instructor curriculum for the Michigan Municipal Risk Management Authority, Livonia, MI. |
| November 05-Jan. 06 | Consultant to IN Attorney's General Office, on a police use of lethal force. |
| September 05 | Consultant to the Canadian Police Research Centre, Ottawa ON, on a two-year study on "Excited Delirium in Police Restraint Incidents." |
| March 05 | Provided a published interview with *Force Science News* (Mankato, MN) on research regarding "The Myths and Realities of the Police Use of Force (3/25, article #15). |
| September-October 04 | Project consultant for a study on "Stress and Police Officers Performance in Lethal Force Encounters," for PPCT, Belleville, IL. |
| December 03-July 04 | Received a grant to research the "Use of Force in Michigan Jails," Michigan Municipal Risk Management Authority, Livonia, MI. |
| May 03 | For the National Institute of Corrections. Provided Jail Liability training at the American Jail Association conference, Albuquerque, NM |
| December 01- 3-02 | On the search committee for hiring an Assistant Police Chief at East Carolina University. |
| January 2002 | Provided an interview with the Milwaukee Sentinel on custodial restraint deaths. |
| October 2001 | Spoke at the Law Enforcement Administrators meeting, Marquette, MI. |
| August 2001 | Provided an interview with the Denver Post, Denver CO, on custodial restraint deaths. |

| | |
|---|---|
| February/August 2001 | Municipal Risk Management Authority, completed a contract to perform a study of a 15 year assessment of liability trends in 151 law enforcement/ & detention facilities in Michigan, Livonia, MI. |
| August 2000 | Provided an interview with WAVEY TV Station, Norfolk, VA; on Positional Asphyxia Deaths in Police Custody. |
| June 2000 | Providing technical assistance to the Research Division of the Federal Law Enforcement Training Center, Glynco, GA. A research project on measuring police field performance under stress (through 12/2001). |
| May 2000 | Provided technical assistance to Governmental Risk Managers, State of Michigan Jail Training Curriculum, Livonia, MI (Prisoner Behaviors, Correctional Law, Custody & Security & Suicide Awareness). |
| February-December 2000 | Providing technical assistance to Caliber Press, Inc., regarding research on assessing "ground fighting assaults against police officers nationwide," Chicago, IL. |
| June-September 1999 | Provided technical assistance to Smith and Wesson, Inc., on handcuff liability. |
| May 1999 | Facilitated a three-day scenario writing workshop for the MI Police Corps Academy, Ferris State University, Big Rapids, MI. |
| Jan-Dec. 1998 | Provided technical assistance to Merced, CA City Attorney's office regarding a sudden death in police custody. |
| Feb-Mar. 1997/99 | Provided technical assistance to the Jackson, MS City Attorney's Office regarding 2 cases of sudden deaths in police custody and 1 lockup suicide. |
| May-June 1998 | Provided technical assistance to the Dallas, TX City Attorney's office, reference allegations of police abuse of force. |
| April 1998 | Provided technical assistance to the Michigan Law Enforcement Officers Training Council, Lansing, MI.; assessed/edited their new Control Continuum, and deaths in Custody training curriculum. |
| March/April 1998 | Provided technical assistance to the North Carolina Justice Academy, Salemburg, NC; assessed and edited the Basic Law Enforcement Defensive Tactics training curriculum. |
| Feb-Apr. 1998 | Provided technical assistance to the Office of the Attorney General, State of Kansas, and the Kansas Bureau of Investigation, on misuse and abuse of prisoners in the Cherokee County Jail. |
| September 1997 | Assisted the Greenville, NC police department Internal Affairs investigating use of force claims within the department. |
| January - May 1997 | Assisted in the curricula design of 175 hours of advanced management training and instruct courses in the Law Enforcement Management Training Institute, Wilson Community College, Wilson, NC. |
| February 1997 | Provided technical assistance to the Michigan Risk Management Authority: Reviewed policies and procedures for the Wexford County Sheriff's Department Cadillac, MI. |
| July 1996 | Contracted by the American Correctional Association to train Pressure Points to the Navy Brig, Miramar, CA. 2, 8-hour programs. |

| | |
|---|---|
| April 1996 to 1998 October 1995 to | Provide use of force consulting services for the Safe Restraints, Inc., Walnut Creek, CA. |
| May 1996 | Contracted by the North Carolina Sentencing and Policy Advisory Commission to research Recidivism of Offenders Assigned to Community Corrections Programs or or Released From Prison in North Carolina: Fiscal Year 1992-1993, with M. Jones, Ph.D. |
| November 1995 to December 1996 | National Law Enforcement Credentialing Board: served on the Testing Committee to design a comprehensive national credentialing test for law enforcement officers nationwide. |
| April/May 1995 | Member of three-member team (ECU CJ professors) to write a promotional exam for the Greenville, NC police department in conjunction with COLEA. |
| May 1994 | Edited the book, *Police use of Force and the Reactive Control Model.* Pecos Press Publisher, Tulsa, OK. |
| February 1993 to December 1995 | Served on a Curriculum Committee for the North Carolina Justice Academy to revise the Defensive Tactics curriculum for Basic Law Enforcement Training statewide. |
| June 1993 to June 1995 | Served on a state-wide curriculum committee for developing "Defensive Tactics training for Correction Officers:" North Carolina Justice Training Academy, Salemburg, NC |
| April 1993 to June 1995 | Served on a state-wide curriculum committee for developing annual training for police Officers in "Use of Force Decision- Making and The Force Continuum"; North Carolina Justice Training Academy, Salemburg, North Carolina. |
| December 1992 to July 1993 | Served on the Pitt County Sheriff's Department Task force to assist in opening the new jail in July of 1993, Greenville, NC. |
| November/ December 1992 | Contracted by the Michigan Municipal League to develop a test bank for a supervisory promotion examine in police and sheriff departments in Michigan, Ann Arbor, MI. |
| July 1992 to 1/93 | Contracted by the MI Department of Corrections Jail Training Division to research and develop and write three instructional programs:" Prisoner Behaviors," "Stress "Management" and "Report Writing", MI. |
| December 1991 to February 1992 | Project Director for a police management study for Thomas Township Policy Agency, Saginaw, MI. |
| April/July 1991 | Contracted by Alpena Community College, Alpena, MI, to assess the criminal justice curriculum and to recommend a new curriculum. |
| Jan.-May 1991 | Committee member in the Vocational Technical Education Curriculum Project for the MI Department of Education. |
| June-Sept. 1989 | Project Director of "A Comprehensive Multi-State Analysis of Law Enforcement and Corrections Training and Management Resources". Contracted by the Governmental Risk Managers, Livonia MI. |

| January 1989 | Group facilitator at a 3-day workshop, for revising and updating curriculum materials for 160-hour jail training program in Mi. Worked at the request of the MI Correction Officers Training Council. |
|---|---|
| March-Nov. 1989 | Project Assistant in the development of a Regional Training Delivery System for Store Detectives, Meijer, Inc., Grand Rapids, MI. |
| March 1989 | Assisted in the design and implementation of a 40-hour Restraint Tactics Instructors program for Meijer Inc. Grand Rapids, MI. |
| March 1988-May 1989 | Assisted in the development, design and implementation of a 40-hour "Instructor Strategies Development" training program for the Meijer Corporation, Grand Rapids, MI. |
| January-March 1988: | Assisted in the research, development, design and implementation of the Meijer Incorporated Restraint Training/Matrix Program. |
| January 1988 | Assisted in the research, development, design and implementation of a 40-hour Defensive Tactics Instructors Program for the Michigan Department of Natural Resources.  I also certified these officers as basic pressure point control tactics instructors. |
| June-Sept. 1987 | Provided consultant services to MI Department of Corrections, Jail Training Division, Served as project consultant for, "Analyzing and Revising a Training System: A Curriculum Update." |
| November 1985-February 1986 | Antrim County, MI Prosecutor's Office and Sheriff Department -project assistant consultant for a manpower study within the county. |
| 1985 - 1986 | Kingdom of Saudi Arabia - coordinated and instructed a one-year police management training program for 22 Saudi Arabian Command Officers, at Ferris State University, Big Rapids, MI |

## CONFERENCE PRESENTATIONS

| March 2020 | Presented research at the GA Board of Regents Campus Police Chiefs conference: Liability and policy issues, Cordele, GA. |
|---|---|
| April 2019 | Presented research on: Examining perceptions and misperceptions of police officers in deadly force virtual simulator scenarios—Keynote Address. Georgia Psychological Society, 14th Annual Meeting, Valdosta State University, Valdosta, GA. |
| March 2019 | Presented research on: Non-fatal injuries sustained by citizens and officers during arrest, at the annual Academy of Criminal Justice Sciences conference, Baltimore, MD. |
| November 2018 | Presented research on: Outcomes Assessment of TASER Applications and Training Implications, at the annual American Society of Criminology, Atlanta. GA. |
| July 17 | Presented research on: Human Factors and Investigating Officer–Involved Shootings, International Symposium on Forensic Science Error Management by the National Institute of Standards and Technology & The Federal Bureau of Investigation Conference, Gaithersburg, MD (competitive) |

| | |
|---|---|
| June 17 | Presented research on The Outcomes of Violent Prone Restraint, Taser Usage, Excited Delirium (ExDS), and Liability Issues, at the Police Use of Force in Today's World conference, Miami-Dade County Training Institute (invited & FL certified), Miami, FL |
| September 16 | Presented research on: The Frequency of Excited Delirium Symptoms, Use of the Taser, and Prone Restraint During Police Arrest, at the annual Southern Criminal Justice Association conference, Savannah, GA. |
| March 16 | Presented research on: Contextual Cues and Officer Perceptions in Officer Involved Shootings, at the annual Academy of Criminal Justice Science conference, Denver, CO. |
| July 15 | Presented research on: Investigating Arrest-Related Deaths, at the International Symposium on Forensic Science Error Management by the National Institute of Standards and Technology & The Federal Bureau of Investigation, Washington, D.C. (competitive) |
| April 15 | Use of Force Panel member, at the ILEETA annual conference, Chicago, IL. |
| March 15 | Presented research on: The Outcomes of Prone Restraint After Violent Arrests, at the Academy of Criminal Justice Sciences annual conference, Orlando, FL |
| February 15 | Presented research on The Outcomes of Prone Restraint After Violent Arrests, at the American Academy of Forensic Sciences annual conference, Orlando, FL (competitive) |
| October 14 | Presented research to the (1) Police Psychology Section and the (2) Physician's Section on: Stress, Human Factors, and Psychological and Physiological Responses During Lethal Force Encounters in a Virtual Simulator Training Environment, at the International Association of Chiefs of Police annual conference, Orlando, FL (competitive; co-presenter, R. Murphy). |
| | Presented research on: Analyzing the Science and The Outcomes of Prone Restraint After Violent Arrests, at the MI Sheriff's Association annual Fall conference, Battle Creek, MI (invited). |
| March 14 | Presented research on Analyzing the Science and The Outcomes of Prone Restraint After Violent Arrests, and panel member on the Use of Force Panel, at the ILEETA annual conference, Chicago, IL. |
| November 13 | Presented research on Sentencing Trends and §242 Prosecutions of Criminal Justice Personnel, at the annual American Society of Criminology conference, Atlanta, GA. |
| March 13 | Presented research on "Officer Involved Shootings, Human Factors, and Liability Issues, at the Academy of Criminal Justice Sciences annual conference, Dallas, TX. |
| July 12 | Key note speaker, presented research on 2 sessions: (1) Human Factors, Liability Issues in Police Use Force Encounters and (2) Risk Management Issues for Police Administrators at the Annual GA Chiefs of Police Association Summer conference, Savannah, GA (invited; certified). |
| April 12 | Presented research on: Human Factors and Liability Issues in Police Lethal Force Encounters, at the ILEETA annual conference, Chicago, IL. |
| March 12 | Presented research on: Stress and Lethal Force Decision Making in a Virtual Simulator Training Environment, Annual Academy of Criminal Justice Sciences Conference, New York. |
| November 11 | Key note presenter at the International Conference on Safety & Security Management and Engineering Technology: *Stress, Officer Perceptions, and the Use of Virtual Simulators Technology in Lethal Force Police Shooting Encounters: Training Implications*; WuFeng University, Chia Yi, Taiwan (invited). |

| | |
|---|---|
| May 11 | Presented research on: "Using a Use of Force Stimulator to Measure Human Performance Under Stress in Police Lethal Force Situations, at SimTech conference, Brisbane, Australia (co-author w/Randall Murphy who presented paper). |
| April 11 | Presented research on: Stress, Officer Perceptions, and the Use of Virtual Simulators in Lethal Force Police Shooting Encounters at the annual ILEETA annual conference, Wheeling, IL |
| March 11 | Presented two research papers: The Use of Force Simulators Technology for Research Lethal Force Encounters; Officer Perceptions and Memory in a Virtual Simulator Use of Force, Academy of Criminal Justice Sciences conference, Toronto, Canada |
| February 11 | Presented research on: Legal Issues and Risk Management for Department Chairs and Deans, Academic Chairperson's National Conference, Orlando, FL. |
| September 2010 | Presented research on: Stress and the Use of Virtual Simulators in Lethal Force Police Shooting Encounters at the annual Southern Association of Criminal Justice conference, Clearwater, FL. |
| June 2010 | Presented research at the MI Sheriff's Association Summer Conference on: Science, Law, Policy, and Issues Surrounding Sudden Deaths In Custody, Gaylord, MI (invited). |
| April 2010 | Presented research on: Stress and the Use of Virtual Simulators in Lethal Force Police Shooting Encounters at the annual ILEETA annual conference, Wheeling, IL (4 hours; invited). |
| February 2010 | Presented research on: Analyzing Misperceptions of Police officers in Lethal Force Simulator Scenarios, Academy of Criminal Justice Sciences annual conference, San Diego, CA. |
| December 2009 | International/inter-Service Simulation Conference presented research on "Using a Use of Force Stimulator to Measure Human Performance Under Stress in Police Lethal Force Situations," Orlando, FL (competitive). |
| October 2009 | Center for Research Innovation: An Analysis of Experimental Research on Stress and Perceptions of LE Officers in a Virtual Simulator Lethal Force Environment, WIU (competitive). |
| April 09 | Presented research: Stress and Human Performance in Police Lethal Force Encounters, annual the International Law Enforcement Educators and Trainers Association, Chicago, IL |
| | Presentation on "Investigating Sudden In Custody Deaths" for the WIU conference on Forensic Sciences and the Law, LEJA & Chemistry Departments, Macomb, IL. |
| March 09 | Presented research: Stress and Human Performance in Police Lethal Force Encounters, annual Academy of Criminal Justice Sciences conference, Boston, MA |
| October 08 | Presented: "Tasers, Positional Asphyxia, Excited Delirium and Investigations in Sudden In In-Custody Deaths," at the MI Field Training Officer Association conference, Mt. Pleasant, MI (key note presenter & invited). |
| April 08 | Presentation on "Blood Spatter Assessment" for the WIU conference on Forensic Sciences and the Law, LEJA & Chemistry Departments, Macomb, IL. |
| March 08 | Presented research on, "A Longitudinal Analysis of the Liability Trends of Suicides In-Custody (2,079 cases studied)," at the annual ACJS conference, Cincinnati, OH (chair of the panel). |
| February 08 | Presented research on: "Human Factors and Contextual Cues of 100 Lethal Force Encounters in Policing," at the Use of Force conference, LEJA & Shotokon Karate Macomb, IL. |
| August 07 | Presented research entitled: "Tasers, Positional Asphyxia, Excited Delirium and Investigations |

in Sudden In-Custody Deaths," at the FDLE High Liability Trainers conference, St. Augustine, FL (invited).

| | |
|---|---|
| August 07 | Present research entitled: Human Factors and Contextual Cues of 100 Lethal Force Encounters in Policing; at the PPCT International Training Conference, St. Louis, MO (invited). |
| April 07 | Presented research entitled: Human Factors and Contextual Cues of 100 Lethal Force Encounters in Policing; at the annual International Law Enforcement Educational Training Association, Chicago, IL. |
| March 07 | Presented research on: An Analysis of Detainee Resistance in MI Jails: 2000-2003, at the annual Academy of Criminal Justice Sciences conference, Seattle, WA. |
| December 06 | Presented "Protocols for Investigating Sudden Deaths In-Custody," Death Investigators Seminar, Brody School of Medicine, Department of Pathology, East Carolina University, Greenville, NC [invited]. |
| June 06 | Presented research on "Sudden Deaths In-Custody" and "The Top Five Jail Litigation Topics," at the annual Michigan Sheriff's Association Summer conference, Crystal Mt., MI. (invited). |
| March 06 | Presented research on "Policing by Consent Decree & Section 14114 Enforcement," at the Oxford Roundtable Seminar, Oxford University, Oxford, England (invited). |
| January 06 | Presented research on "Tasers, Positional Asphyxia, Excited Delirium and Investigations in Sudden In-Custody Deaths, Annual ASLET conference, Albuquerque, NM |
| September 05 | Two presentations: Research on Sudden In-Custody Deaths and Research on Lethal/Non-Lethal Force in U.S. Policing, at the First Annual Canadian Law Enforcement Officer Safety Conference, Victoria, British Columbia (invited). |
| June 05 | Presented research on "Liability Analysis of Law Enforcement Agencies in MI," "Use of Force Issues in MI Jails," and "Strip Searches," at the Michigan Sheriff's Association Summer Conference on Mackinac Island, MI (invited). |
| January 05 | Presented research on "The Myths & Realities of the Police Use of Force," at the Annual ASLET International conference, Jacksonville, FL. |
| October 04 | Presented research on "Risk Management in Detention Facilities," at the NC Jail Administrators Association conference, High Point, NC (invited). |
| September 04 | Presented a legal research paper on "A Ten Review of the *Hudson v. McMillian* Decision: 1992-2002," at the annual Southern Criminal Justice Association conference, Raleigh, NC. |
| August 04 | Presented a 4-hour presentation on "Liability Issues of Excessive Force Investigations by Internal Affairs," at the annual NC Internal Affairs Investigators conference, Newbern, NC. (invited) |
| July 04 | Co-presented a 4-hour presentation on "Issues Related to Testifying in Court," at the annual conference of the North Carolina chapter of the National Association of Social Workers, Wilmington, NC. (invited) |
| May 04 | Presented research on "Analyzing Stress in Police Use of Force Encounters," at the annual Alaska Peace Officers Association conference, Juneau, AK. |

| | |
|---|---|
| February 04 | On a panel to discuss jail use of force issues for the NC Jail Administrator's Association, Greenville, NC (8 hours/invited). |
| January 04 | Presentation on "The Myths and Realities of the Police Use of Force: A Forty Year Analysis" and panel presentation on the "Police Use of Force" at the annual ASLET conference, St. Louis, MO. |
| November 03 | Presented research on "A Ten-Year Analysis of the *Hudson v. McMillan* Decision," at the American Society of Criminology conference, Denver, CO. |
| October 03 | Presented research on "Use of Force Issues in Detention Facilities," for the annual NC Jail Administrators Association Conference, High Point, NC (invited). |
| | Presented research on "Failure to Train Liability on the Use of Force in Corrections," at the NCDOC conference for Subject Control Instructors, Raleigh, NC. |
| July 03 | Presented research on "Unexpected Restraint Deaths in Police Custody," at the PA Police Chiefs Association Summer conference: Harrisburg, PA (invited). |
| | Presented research on "Stress and Performance in Police Use of Force Incidents", at the annual PPCT conference, St. Louis, MO. |
| May 03 | Presented research for the National Institute of Corrections: "Risk Assessment and Liability Issues in Michigan Jails," at the American Jail Association annual conference, Albuquerque, NM. |
| January 03 | Presented research on stress and performance in police use of lethal force incidents, at the annual ASLET conference, Ontario, CA. |
| November 02 | Presented a content analysis of 40 years of use of force research in policing, at the annual American Society of Criminology conference, Chicago, IL. |
| October 02 | Presented research on a survey of police officers and lethal force incidents and research on 40 years of use of force studies in policing at the annual PPCT conference, St. Louis, MO. |
| June 2002 | Presented a research report on "Civil Liability Claims in Michigan's Jails," MI Sheriff's Associations Summer conference, Mackinaw Island, MI (invited). |
| May 2002 | Speaker on use of force training in law enforcement and corrections and custodial deaths issues at the "Less-Than-Lethal/Defensive Tactics" seminar for NC Criminal Justice Trainers, Raleigh, NC |
| April 2002 | Presented research on: "An Assessment of Custodial Deaths in Jails," at the American Jail Association annual conference, Milwaukee, WI (invited). |
| September 2001 | Presented research on a twenty-year analysis of custodial deaths in detention facilities, Southern Criminal Justice Association conference, Baton Rouge, LA. |
| June 2001 | Presented two research papers: "Applying Motor Learning Principles to Use of Force Skills," and "Current Research on Unexpected and Sudden Custodial Deaths," PPCT annual conference, St. Louis, MO. |
| April 2001 | Paper on, "A Twenty Year Analysis of In Custody Deaths in Detention Facilities, Academy of Criminal Justice Sciences annual conference, Washington, D.C. |
| Feb 2001 | Presented research on: "An Analysis of the Impact of *Graham v. Connor* and *Canton v. Harris*, Ten years Later, American Society of Law Enforcement Trainers, Orlando, FL. |

| November 2000 | Presented research on: "An Analysis of the Impact of *Graham v. Connor*, Ten Years Later," American Society of Criminology, San Francisco, CA. |
| | |
| | Presented research on: "Assessing Patterns of Citizen Resistance During Police Arrest," for NC Justice Academy Defensive Tactics Instructors conference, Salemburg, NC. |
| July 2000 | Presented research on: "An Analysis of the Impact of *Graham v. Connor* and *Canton v. Harris*, Ten Years Later, PPCT International Conference, St. Louis, MO. |
| May 2000 | Presented research on "Assessing Frequent Litigation in Police Training Since the *Canton* Decision, for the NC Law Enforcement Officers Training Association, Atlantic Beach, NC. |
| April 2000 | Presented research on "Assessing Patterns of Citizen Resistance During Police Arrest," for the Wyoming Law Enforcement Officers/Administrator's Association, Douglas, WY. |
| March 2000 | Presented a paper on "A Ten Year Review of the *Graham v. Connor* Decision," Academy of Criminal Justice Sciences conference, New Orleans, LA. |
| January 2000 | Presented research, "Assessing the Patterns of Citizen Resistance During Arrest," at the annual American Society of Law Enforcement Trainers conference, Richmond, VA. |
| November 1999 | Presented a paper on "A Profile of Prisoner Recidivism in North Carolina," at the annual conference of the American Society of Criminology, Toronto, Canada. |
| October 1999 | Presentation at the North Carolina Jail Administrator's Conference on "Administrative Liability Concerns in Developing Special Response Teams in Jails," Burlington, NC. |
| September 1999 | Presented paper on: "Assessing Frequent Liability Topics in Policing Training Since the *Canton* Decision," at the High Liability Trainer's Conference, for the Florida Department of Law Enforcement Training Commission, Orlando, FL. [invited] |
| January 1999 | Presented paper, "Assessing Frequent Liability Topics in Police Training Since the *Canton* Decision." Annual ASLET conference Albuquerque, NM. |
| October 1998 | Presented a paper on: "Factors Associated with Excited Delirium Deaths in Police Custody," Southern Criminal Justice Association, Annual Conference, Biloxi, MS. |
| March 1998 | Presented a paper on: Analyzing Civil Liability Factors in Wrongful Deaths Claims in Police Custody," at the Academy of Criminal Justice Sciences conference, Albuquerque, NM. |
| January 1998 | Presented a paper on: "Liability Issues Surrounding Sudden Deaths In Police Custody," at the annual ASLET conference, Mobile, AL. |
| November 1997 | Presented a paper on: "Examining the Historical Changes of Prisoner Characteristics in the United States Since 1850," at the Annual American Society of Criminology conference, San Diego, CA. |
| October 1997 | Presented paper on: "Assessing the Patterns and Correlates of Citizen Resistance During Arrest Circumstances" at the annual Southern Criminal Justice Association conference, Richmond, VA. |
| August 1997 | Presented a paper on the" Excited Delirium and Sudden Deaths in Police Custody" at the annual PPCT conference, St. Louis, MO. |
| March 1997 | Paper presented on "Determining the Recidivism Rates of Offenders In Community-Based Programs in North Carolina," Academy of Criminal Justice Sciences annual conference, Louisville, KY. |

| | |
|---|---|
| January 1997 | Presented a paper on "Assessing Less-Than-Lethal Force Training: A Two State Study," American Society of Law Enforcement Trainers annual conference, Buffalo, NY. |
| November 1996 | Presented a paper entitled " Comparing the Recidivism Rates of Bootcamp Participants to Electronic Monitoring Probationers," American Criminology annual conference,  Chicago, IL. |
| August 1996 | Presented a paper entitled "Assessing Deaths in Police Custody Due To Positional Asphyxiation," Pressure Point Control Tactics annual conference, St. Louis, MO. |
| March 1996 | Presented paper at the annual Academy of Criminal Justice Sciences conference; "Assessing the Liability Concerns of Emergency Response Teams in Corrections," Las Vegas, NV. |
| November 1995 | Presented a paper at the annual American Society of Criminology conference; "A Twenty-Five Year Content Analysis of Prisoner Litigation in Jails," Boston, MA. |
| October 1995 | Presentation at the annual conference of the North Carolina Association of Community Restitution Programs; "Assessing Use of force Decision-Making, Wrightsville Beach, NC. |
| August 1995 | Presented two papers at the annual PPCT International conference: TMJ Syndrome and the Application of Pressure Points" and Assessing Methods for Curbing Officer Use of Excessive Force," St. Louis, MO. |
| March 1995 | Paper at the annual Academy of Criminal Justice Sciences conference; "A Content Analysis of Correctional Liability Cases: Decisions of Title 42 U.S.C. Section 1983," Boston, MA. |
| October 1994 | Presented a paper at the Annual Southern Criminal Justice Association conference; "Situational Patterns of Prisoner Assaults on Correctional Officers", Memphis, TN. |
| August 1994 | Presented a paper at the annual PPCT conference: "The Implications of Pressure Points and TMJ Syndrome," St. Louis, MO. |
| March 1994 | Presented a paper at the annual Academy of Criminal Justice Sciences conference: "A Comparison of Math Attitudes Between CJ and Non-CJ Students", Chicago, IL. |
| January 1994 | Seventh Annual American Society of Law Enforcement Trainers Conference, Washington, D. C.: Presentation on "Sudden Deaths Behind Bars." |
| August 1994 | Annual International PPCT Training Conference, Presented paper on "Developing SORT Teams in Corrections", Orlando, FL. |
| March 1993 | Co-authored a paper/presentation on "A Comparative Analysis of the Police Use of Force and Citizen Resisting During Police Arrest," Academy of Criminal Justice Sciences Annual Conference, Kansas City, MO. |
| August 1992 | Annual International PPCT Training Conference, Presented paper on, "Analyzing Citizen Resisting In Policing," and a "Review of the Evolution of Use of Force Litigation," St. Louis, MO. |
| February 1992 | Firefighter Instructors' 44th Annual Educational Conference. Presented seminars on, "Classroom Survival for Instructors," Midland, MI. |
| November 1991 | National Conference on Higher Education and Corrections: Presented a paper on "Analyzing Educational Requirements for Correctional Officers: Entry and Promotion," Columbus, OH. |

| August 1991 | Annual International PPCT Training Conference, Presented papers on, "Training Liabilities in Corrections," "Cell Extractions," "Study on Correction Officer Assaults," and "Knife Defense for Police/Correction Personnel," St. Louis, MO. |
| August 1990 | Annual PPCT International Conference, presented papers on, "Training Liabilities in Corrections," "Designing a Non-Deadly Force Policy in Corrections," and "Expert Witnessing in Criminal Justice," St. Louis, MO. |
| October 1989 | Annual National Correctional Trainers Conference, Knoxville, TN. Presented a paper on, "Assessing the Pressure Point Control Tactics System for Utilization in Corrections by Analyzing the Components of Acceptability." |
| August 1989 | Annual PPCT International Conference, St. Louis, MO, Spoke on, "Use of Non-Deadly Force Policy Issues in Corrections" and "Litigation Issues in Correctional Physical Force Situations." |
| August 1988 | Annual PPCT International Conference, St. Louis, MO. Spoke on, "Correctional Use of Physical Force Litigation Issues." |
| July 1988 | Annual International Correctional Education Association. Spoke on, "Analyzing the Educational Requirements for Corrections Officers for Entry Level and Promotion: Is It Necessary?" Grand Rapids, MI. |
| August 1985 | American Corrections Association, spoke on the, "Involvement of the Line Officer in Policy Development," at the annual conference in New York. |
| May 1984 | American Corrections Officer Association, spoke on, "Legal Liabilities of Correctional Officer," annual conference in Ann Arbor, MI. |

## TECHNICAL REPORTS / TRAINING MATERIALS RESEARCHED & DEVELOPED

1. Public Safety Compensation and Scheduling Report, for the City of Moultrie, GA (2/16)

2. Technical research consulting report on the Outcomes of Violent Prone Restraint Incidents in Police Arrest (July,'14), submitted to participating police agencies.

3. Provided technical assistance to the Battle Creek, MI PD on Implementing a Use of Force System (March-May, '14).

4. Provided technical assistance to the Michigan Municipal Risk Management Authority, Livonia, MI on updating training curriculum on Sudden Deaths In-Custody (June, 2010 & July, 2012).

5. Provided technical assistance to the Michigan Municipal Risk Management Authority, Livonia, MI in implementing a basic 8-hour training curriculum on Sudden Deaths In-Custody (Sept.-November, 07).

6. Grant award by Michigan Municipal Risk Management Authority to design and present instructor curriculum (24 hours) on Sudden Deaths In Custody (December-June, 06).

7. A Technical Report submitted to the Municipal Risk Management Authority, Livonia, MI (July, 2004): "An Assessment of Detainee Resistance and Detention Officer Use of Force in Michigan Jails: 2000-2003," (grant funded).

8. "The Myths and Realities of the Police Use of Force: A Forty Year Analysis," a 16-hour course (2003).

9. "A Fifteen Year Analysis of Liability Trends in Law Enforcement Agencies in MI," for Michigan Municipal Risk Management Authority, Livonia, MI (Oct. 2001). Separate report submitted on Jail claims and liability in Michigan (12/01) [grant funded].

10. "Exercising Leadership in Policing, 32-hour training program (1999).

11. *Recidivism of Offenders Assigned to Community Corrections Programs or Released From Prison in North Carolina: Fiscal Year 1992-93*; researched and submitted to the North Carolina Sentencing and Policy Advisory Commission (April, 1996), with Mark Jones, Ph.D. [grant funded]

12. "Curbing the Use of Excessive Force in Law Enforcement" 8-hour training program (1996).

13. "Sudden and Unexpected Deaths in Police Custody," an 8-hour training program for law enforcement and correctional personnel (1994).

14. "Police Response to the Mentally Ill" a 16-hour training program (1994).

15. Co-authored "Developing Instructional Strategies," for the Criminal Justice Institute, Ferris St. University, Big Rapids, MI., a 40-hour program (1994).

16. Contributed a chapter on "The Force Continuum," in the *Non-Lethal Force Training Program*, for the State of North Carolina Justice Training Academy, Salemburg, NC (1993).

17. *Prisoner Behavior, Stress Management and Report Writing;* written for the Michigan Department of Corrections Jail Training Division (July, 1992-January, 1993).

18. *A Management Review of the Thomas Township (MI) Police Department;* for Thomas Township City Commissioners, Project Director. Co-authored with Robert L. Parsons. Ph. D. (Dec. 1991/Feb. 1992).

19. "Cell Extractions for Correctional Tactical Units" 8-hour training program (1992).

20. *An Analysis of the Criminal Justice Program at Alpena Community College;* for the President and the Dean of Instruction of Alpena Community College, Alpena, MI (April-July, 1991).

21. *A Comprehensive Multi-State Analysis of Law Enforcement /Local Corrections Training and Management Resources;* for the Risk Management Authority, Livonia, MI. Project Director and co-authored with Robert L. Parsons, Ph. D. (June-September, 1989).

22. "Liability Issues Surrounding Use of Force Issues" 8-hour training program (1988).

23. "Liability Issues for CJ Administrators Supervisors" 16-hour training program (1988).

24. "Suicide Awareness for Detention Personnel," 8-hour training program (1988).

25. "Policy and Procedure Development in Law Enforcement" 16-hour training program (1987).

26. "Managing the Problem Employee in Law Enforcement" 16-hour training program (1987).

**VIDEO TAPES/INTERVIEWS MADE:**

1. Interview: The science behind arrest-related deaths, PoliceOne.Com (8/16)

2. Interview: Stress and the Use of Force, PoliceOne.Com (5/11)

3. "PPCT Control Principles," tape for Use of Force Instructors, Threat Management Institute, Belleville, IL (7/03)

4. "Liability Issues in Michigan Jails," (6/02) and "Best Jail Practices in Michigan Jails" (10/02), Michigan Municipal Risk Management Authority (MMRMA), Livonia, MI.

5.  "Motor Skill Learning Principles and the Use of Force," Law Enforcement Television Network (LETN), Carrollton, TX, 6/01

6.  PPCT Defensive Tactics Instructor video, 6/01

7.  Law Enforcement Television Network, Carrollton, TX: Taped interview for the program "Roll Call," on "Assessing Patterns of Subject Resistance During Arrest," 1/00.

8.  Law Enforcement Television Network, Carrollton, TX:"The WRAP vs Hog-Tying;" and "Prisoner Assaults on Correction Officers," 8/96.

9.  Safe Restraint Inc., made a training tape on *Positional Asphyxiation and the WRAP*, Walnut Creek, CA, 6/96.

10.  Contracted by Law Enforcement Television Network, Carrollton, Texas.  Made four twenty-minute tapes on: *Deaths in Custody: Policy and Training Recommendations, Suicides Detection in Jails, and The Correctional Training Officer Program*, 4/95.

11  Contracted by Law Enforcement Television Network, Carrollton, TX, four *Tactical & Subject Control Training* tapes for correctional/police officers, 7/92.

12.  Law Enforcement Television Network, Dallas, TX, tape on *Non-Lethal Force Policies and Suicide Awareness for Detention Personnel*, 8/90.

13.  Law Enforcement Network Training Company, St. Louis, MO., tape on *Jail/ Lockup Suicides,* 3/89

14.   High Tech Training Tapes, one tape on *Assessing a Prisoner's Potential for Suicide in the Jail*, 12/88.

Expert Witness

Since 1988, retained as an expert witness on the topics of:
1. Police/correctional use of force: lethal force, less-lethal force tactics/equipment, & restraint issues.
2. Arrest-Related Deaths; Sudden Deaths In-Custody; restraint deaths in police and corrections.
3. Custodial suicides, deaths in detention facilities, and medical care issues in corrections
4. Management, policy and procedures, supervision, and training issues in criminal justice agencies.
5. Security, classification, confinement, and failure to protect issues in prisons, jails and lockup facilities

**MEMBERSHIP AFFILIATIONS:**

Criminal Justice Association of Georgia, Academy of Criminal Justice Sciences, American Society of Criminology, Southern Criminal Justice Association, International Law Enforcement Educators and Trainers Association, American Corrections Association, American Jail Association

<b>Defensive Tactics & Subject Control Training</b><br>Selected Agencies Trained Since 1987

State Police/Highway Patrol
AL State Police
CO State Patrol
MI State Police
NC Highway Patrol
NE State Patrol
VA Highway Patrol

Police Departments
West Monroe, AL

Federal Law Enforcement Agencies
US Postal Inspection Service
US Customs & Immigration
US Secret Service-Law Enforcement Division
US Federal Probation
US Wildlife Service–Law Enforcement
US Marshals

College of Charleston, SC Public Safety

Alpena, MI
Charlotte, NC
NC State Capital Police
Hickory, NC
Chapel Hill, NC
Morgantown, NC
Charlestown, W.VA.
Greensboro, NC
Greenville, NC
East Carolina Univ. Public Safety
NC State Public Safety
Washington, NC
Grand Rapids, MI
Detroit, MI
St. Clair Shores, MI
Dallas, TX
Ypsilanti, MI
Grand Haven, MI
Wyoming, MI
Marquette, MI
Negaunee, MI
Southfield, MI
Gross Pointe Shores, MI
Big Rapids, MI
Elizabeth City, NC
Willmington, NC
High Point, NC
UNC Charlotte Public Safety
NC Justice Academy Instructors
Henderson, NC
Wilmington, NC
Raleigh, NC
Mt. Pleasant, SC
Hannah, SC

Fayetteville, NC
Carey, NC
Kalamazoo, MI
Ferris State Univ. Public Safety
Portage, MI
Traverse City, MI
Cadillac, MI
Mt. Clemens, MI
Plymouth, MI
Western MI University Public Safety
Vero Beach, FL
Dearborn Heights, MI
Taylor, MI
Howell, MI
West Bloomfield, MI
Canton, MI
Tecumsee, MI
Romulus, MI
San Diego, CA City jail
Tupelo, MS
Raleigh, NC Airport Police
Flint, MI
Northern MI Univ. Public Safety
Port Huron, MI
Mt. Airy, NC
Shelby, NC
Kings Mountain, NC
Nagshead, NC
Wrightsville Beach, NC
Goldsboro, NC
Ocean Springs, MS
City of North Charleston, SC

County Sheriff Departments
Pitt County; Greenville, NC
Kalamazoo County, Kalamazoo, MI
Oakland County; Pontiac, MI
Kent County; Grand Rapids, MI
Oceana County; Hart, MI
Grand Traverse County; Traverse City, MI
Sarpe Co., Omaha, NE.
Dare Co., NC
Allegan County; MI
Craven Co., Newbern, NC
Lee County Sheriff's Dept (Tupelo, MS)
Vance Co., Henderson, NC
Dallas County; Dallas, TX
Genesse County; Flint, MI
Beaufort Co. Washington, NC
Alpena County; Alpena, MI
Marquette County; Marquette, MI
Schoolcraft County; Escanaba, MI
Kalkaska County; Kalkaska, MI
Calhoun County; Marshall, MI
Berrien County; MI
Cass County; Cassopolis, MI
Mecosta County; Big Rapids, MI
Ingham County; Mason, MI
Indian River County; Vero Beach, Fl
Gogebic County; MI

Department of Corrections
Michigan
Colorado
North Dakota
Florida
Minnesota
U.S. Federal Bureau of Prisons
South Carolina
Hong Kong Corr. Services, Hong Kong
North Carolina
Corrections Corporation of America

Military & Other Agencies

USMC Provost Marshall's Office
US Army Rangers
NAVCON Brig, Miramar, CA
US Marine Corp Brig, Camp Pendelton, CA
US Marine Corp Military Police
US Air Force Military Police, Pope Air Force Base, NC
NAVCON Brig & Air Force, Charleston, SC
US Coast Guard, Yorktown, VA
US Air Force Military Police
Navy Seals Team (#2)
US Coast Guard Tactical Counter Narcotics Unit, Portsmouth, VA
US Army
NC Bureau of Alcohol Law Enforcement

Delta County; MI
Washtenaw County; Ann Arbor, MI
Wexford County; Cadillac, MI
Montmorency County; Montmorency, MI
Graham Co., Robinsville, NC
Lenoir Co., Kinston, NC
Cumberland Co., Fayetteville, NC
Carterett Co., Williamston, NC
Dorchester Co., St. George, SC
Charleston Co. Sheriff , SC
New Hanover Co. Sheriff, NC
San Diego, CA Co. Sheriff
Wilson Co. Sheriff, NC
McLean Co. Sheriff (Bloomington, IL)

UNC Hospital Police, Chapel Hill, NC
Henry Ford Hosp. Security, Detroit, MI
Pitt Memorial Hospital Police, Greenville, NC
Charleston, SC University Hospital Police
Cleveland Medical Center, Shelby, NC
Meijer Inc., Grand Rapids, MI
NC Wildlife LE Division
NC Marine & Fisheries LE Division
MI Dept. of Natural Resources
AL Marine Patrol
SC Wildlife LE Division
Private Police for Biltmore Estate, Asheville, NC

### Suicide Prevention for Jail/Lockup Personnel
### Agencies Trained Since 1987

| | | |
|---|---|---|
| Ypsilanti Police Department | Oceana Co. Sheriff | Troy Police Department |
| Washtenaw County Sheriff Department | Inkster city police | Canton Police Department |
| Mecosta County Sheriff Department | Taylor police | Oceana County Sheriff Dept. |
| Livingston County Sheriff Department | Woodhaven police | Beverly Hills Public Safety |
| Kalamazoo Department of Public Safety | Montcalm County Sheriff Department | Livonia Police Department |
| Roseville Police Department | Kalamazoo county Sheriff Department | Northville, MI Police Dept. |
| Milan Police Department | Berrien County Sheriff department | |
| Wayne County Sheriff Department | Garden City police department | |
| Farmington Hills Police Department | Pitt County Sheriff department | |
| Dearborn Heights Police Department | Kalkaska County Sheriff Department | |
| Sterling Heights Police Department | Newaygo County Sheriff Department | |
| Northville Police Department | Bay County Sheriff Department | |

*Darrell L. Ross, Ph.D.*

**FEE SCHEDULE EXPERT WITNESS/CONSULTANT SERVICES**

**CASE REVIEW:**

Includes authority to list as an expert witness, up to eight          **$3,000.00 retainer**
hours of case review and analysis, (retainer applied toward           **required**
first 8 hours of preliminary case review).

**HOURLY RATE**:

Additional case review (if over eight hours): site visit,             **$375.00/hour**
interviews, conferences, expert report of opinions, travel
time, preparation for deposition, preparation for trial,
and testimony (plus all expenses).

**DEPOSITION:**

Deposition fee of $1,800.00 per day **paid in advance**, plus all     **$1,800.00 fee/day**
expenses and travel time (flat rate).                                 **plus all expenses**

**TRAVEL:**

Airline travel billed at coach fare and must be paid in advance.
Overnight expenses at actual cost. Meals at $55.00/day. Full-size
rental car rate, if a vehicle is necessary. Private vehicle @ .58 cents
per mile.

**PAYMENT POLICY**

All bills are due thirty days from the invoice date. A finance charge of 1.5% per month (18% per
year) will be assessed on all past due invoices. **Deposition fees are payable in advance**.

46

47

Darrell L. Ross, Ph.D.
Cases Retained—2017--2021

| Case | Topic | Court | State |
|------|-------|-------|-------|
| 1. Lopez v. City of Chicago, et al.<br>No. 12-cv-5751 (15/17) | Use of CEW/Force | Fed. | IL |
| 2. Beard v. Southfield (16/17)<br>No. 214-cv-13465-NGE –EAS | Use of Force/CEW | Fed. | MI |
| 3. Dawson v. Southfield, et al. (16/17)<br>No. 215-cv-13269-SFC-MJH | Deadly Force | Fed. | MI |
| 4. Williams v. Snohomish County<br>No. 2:16-cv-00455 (17) | CEW Detainee Death | Fed. | WA |
| 5. McCue v. City of Bangor, ME et al.<br>No. 1:14-cv-0098-GZS (17) | CEW/Restraint Death | Fed. | ME |
| 6. Reynolds v. Unified Government (KS)<br>No. 15-cv-9130-JWL-JPO (17) | Arrest-Restraint Death | Fed. | KS |
| 7. Moore v. Mecosta County, et al.<br>No. 1:16-cv-00122 (17) | Detainee Suicide | Fed. | MI |
| 8. Nelson v. Rivera<br>No. 1:16-cv-00456 (17) | Deadly Force | Fed. | MI |
| 9. Ajibade v. Wilcher, et al. (18/19)<br>No. 4:16-CV-82-WTM-GRS<br>(D. Crt. SD Ga., Savannah, Div.) | Detainee Restraint Death<br>CEW | Fed. | GA |
| 10. Dunigan v. Nugent & Shaffer<br>No. 16-CV-01325 (18) | Arrestee Death | Fed. | MI |
| 11. Booker v. SCDOC (18)<br>No. 2:15-cv-04303-MGL-MGB | Failure to Protect &<br>Prisoner Assault | Fed. | SC |
| 12. Hull-Daniels v. Emmet Co. et al. (18)<br>No. 1:17-cv-00340-PLM | Jail Medical Care | Fed. | MI |
| 13. State of GA v. Robert Olsen<br>No. 16-CR1181-6 (18) Immunity Hearing | Deadly Force | Criminal | GA |
| 14. Fields v. Town of Walterboro, et al.<br>No. 2:17-cv-01741-DCM-BM (18) | Use of Force/CEW | Fed. | SC |
| 15. Lacy v. Snohomish Co, Pendergrass &<br>Trenary, No. 16-2-21526-2-SEA (17/18) | Arrestee Death/CEW | State | WA |
| 16. Albright v. WVRJCFA/Prime Care Med.<br>(18) | Detainee Suicide | WV | Fed. |
| 17. Rotzin v. Arapahoe County, et al.<br>& Sheridan PD; No. 16-cv-02820 (18) | Arrestee Death/CEW | Fed. | CO |
| 18. Clay v. Tunica CO, MS, Sheriff Hemp &<br>John Doe; 1-100, No.2017-0054 (18) | Detainee Suicide | State | MS |

Darrell L. Ross, Ph.D.
Cases Retained—2017--2021

| Case | Topic | Court | State |
|------|-------|-------|-------|
| 19. Kough et al. v. South Carolina Dept. of Corr.<br>No. 0:17-cv-02938-JFA-PJG (18) | Failure to Protect<br>Prisoner/Prisoner Assault | Fed. | SC |
| 20. Brax v. City of Grand Rapids, MI<br>742 Fed. Appx. 952 (6th Cir. 2018) | Use of Force | Fed. | MI |
| 21. Hughes v. Sagaman Co. et al. (19)<br>No. 2012-L-000160 | Use of Force--Detainee | State | IL |
| 22. Turner v. City of Champaign, et al.<br>No. 17-CV-226, EIL (D. Crt. CD ILL, 19) | Restraint Death | Fed. | IL |
| 23. Estate of Byrd v. Kalamazoo, Co, et al. (19)<br>No. 1:18-cv-00620-PLM-PJG | Detainee Drug Death | Fed. | MI |
| 24. Humberto Victornio v. Waseca Co. et. al<br>No. 18-cv-226 JNE/DTS (19) | Detainee Suicide | Fed. | MN |
| 25. Gordon v. Birenga & City of Royal Oak<br>No. 5:18-cv-13584 (19) | Deadly Force | Fed. | MI |
| 26. Deloney v. County of Fresno, et al.<br>No.1-cv-17-01336-LJO-EPG (19) | Detainee Suicide | Fed. | CA |
| 27. State of GA v. Copeland/Howell/Scott (19)<br>No. 18-CR-00046B/C: Immunity Hearing | Arrestee Death/CEW | Criminal | GA |
| 28. Hartger v. Kent County, & Marz<br>No. 1:18-cv-1221-RJJ-RSK (19) | Use of Force | Fed. | MI |
| 29. Zuress v. City of Newark, OH & Burris<br>No. 19:3945 (6th Cir. 19) | Use of Force/Canine | Fed. | OH |
| 30. Keller v. Chippewa Co. Brd. Comm.<br>No. 2:19-cv-00011 (WD Mich. 19/20) | Detainee Discrim/<br>Disability | Fed. | MI |
| 31. Reynolds v. Addis & City of Royal, MI<br>2:18-cv-13699 (20) | Deadly Force | Fed. | MI |
| 32. Lynas v. Stang et al.<br>No. 18-cv-2301 JRT/KMM (20) | Detainee Suicide | Fed. | MN |
| 33. Burghardt/Beard v. Ryan, et al. (20)<br>No. 5:19- cv-00325 | Deadly Force | Fed. | OH |
| 34. Stout v. Newaygo Co, et al. (20)<br>No. 1:19-cv-00400-JTN-STB | Use of Force | Fed. | MI |
| 35. Estate of Gray v. St. Clair Shores, et al.,<br>No. 2:19-cv-10383 (20) | Deadly Force | Fed. | MI |
| 36. Brenner v. Asfeld, et al., (21)<br>No. 18-cv-02383-NEB/ECW | Detainee Suicide | Fed. | MN |

Darrell L. Ross, Ph.D.
Cases Retained—2017--2021

| Case | Topic | Court | State |
|------|-------|-------|-------|
| 37. Estate of Zielke v. Roscommon Co. et al., No. 1:19-cv-13053-PDB-PJM (21) | Jail Death | Fed. | MI |
| 38. Brown v. Scaglione, et al. Westland, MI PD (21) | Use of Force/CEW | Fed. | MI |
| 39. Schnell v. Madison Co. Sheriff, et al. No. 3:19-cv-01326 (21) | Use of Force/CEW | Fed. | IL |
| 40. Peterson v. Washington Co. et. al. No. 18-cv-02640-DWF-ECW (21) | Use of Force | Fed. | MN |